UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

VALENCIA AG, LLC

                              Plaintiff,

v.

NEW YORK STATE
OFFICE OF CANNABIS MANAGEMENT;
CHRISTOPHER ALEXANDER, TREMAINE
WRIGHT; ADAM PERRY; JESSICA GARCIA;
JENNIFER JENKINS; HOPE KNIGHT;
AND DAMIAN FAGON,

                              Defendants.

**COMPLAINT FOR**

**1. 42 U.S.C. § 1983
   EQUAL PROTECTION
   CLAUSE**

**2. DECLARATORY
   JUDGMENT**

Civil Action No.:  5:24-cv-116 (GLS/DJS)

## INTRODUCTION

Plaintiff, Valencia Ag, LLC, ("Plaintiff") brings this action against Defendants New York State Office of Cannabis Management ("OCM"); Christopher Alexander, Tremaine Wright, Adam Perry, Jessica Garcia, Jennifer Jenkins, Hope Knight, and Damian Fagon (collectively, "Defendants").

## PARTIES

1.      Plaintiff, Valencia Ag, LLC, is a limited liability company organized under the laws of the State of New York having a place of business at 5204 Harvest Hill Drive, Jamesville, New York 13078.

2.      Defendant New York Office of Cannabis Management (hereinafter "OCM") is a government-created entity affiliated with the State of New York.

3.      Defendant Christopher Alexander is and all relevant times has been the Executive Director of Defendant OCM.  Plaintiff sues Alexander in his official capacity and in his individual capacity.

4.      Defendant Tremaine Wright (hereinafter "Wright") is and at all relevant times has been Chairman of Defendant OCM.  Plaintiff sues Wright in her official capacity and in her individual capacity.

5.      Defendant Adam Perry ("hereinafter "Perry") is and at all relevant times has been a Board member of Defendant OCM.  Plaintiff sues Perry in his official capacity and in his individual capacity.

6.      Defendant Jessica Garcia ("hereinafter "Garcia") is and at all relevant times has been a Board member of Defendant OCM.  Plaintiff sues Garcia in her official capacity and in her individual capacity.

7.      Defendant Jennifer Jenkins ("hereinafter "Jenkins") is and at all relevant times has been a Board member of Defendant OCM.  Plaintiff sues Jenkins in her official capacity and in her individual capacity.

8.      Defendant Hope Knight ("hereinafter "Knight") is and at all relevant times has been a Board member of Defendant OCM.  Plaintiff sues Knight in her official capacity and in her individual capacity.

9.      Defendant Damian Fagon ("hereinafter "Fagon") is and at all relevant time has been the Chief Equity Officer of Defendant OCM.   Plaintiff sues Fagon in his official capacity and in his individual capacity.

## JURISDICTION AND VENUE

10.     The Court has subject matter jurisdiction over the matters asserted herein under 28 U.S.C. § 1331 because the action involves questions arising under the United States Constitution and the laws of the United States.

11.     The Court has personal jurisdiction over OCM because it is a citizen of New York and a government-created entity created under the laws of New York State.

12.     The Court has personal jurisdiction over each of Alexander, Wright, Perry, Garcia, Jenkins, Wright, and Fagon because, on information and belief, each of them is a resident and domiciliary of New York, at least one of them resides in this district, and they each took the actions complained of herein while in this district.

13.     Venue is proper in this Judicial District under 28 U.S.C. § 1391(b)(1) because, on information and belief, OCM is an entity affiliated with New York State, the regulations and procedures challenged herein were created and implemented in Albany, New York, and Defendants performed the actions complained of herein while within this Judicial District.

## RELEVANT FACTS

### A. The OCM Application Program Illegally and Unconstitutionality Favors And Gives Preference to Applicants Owned by Persons of Selected Races/Ethnicity And Gender

14.     On March 31, 2021, the State of New York enacted the Marihuana Regulations & Taxation Act, with the short title of "Cannabis Law."  NY CANBS § 1.[1]

15.     Under the Section 10 of the Cannabis Law, OCM was authorized to have the "following functions, powers, and duties":

---

[1] The Cannabis Laws and Cannabis Regulations are different for nonprofit and tax-paying entities.  This Complaint focuses on the laws and regulations for tax-paying entities.

Sole discretion to limit, or not to limit, the number of registrations, licenses and permits of each class to be issued within the state or any political subdivision thereof, **in a manner that prioritizes social and economic equity applicants with the goal of fifty percent awarded to such applicants, ….** (emphasis added.)

16.    Under Section 11 of the Cannabis Law, OCM and the executive director have the power to prescribe the form of applications for cannabis licenses.  NY CANBS § 11(4).

17.    Thus, OCM, thought its Board members, was charged with figuring out and deciding how to achieve a quota of social and economic equity applicants (hereinafter "SEE Applicants").

18.    Under Section 13 of the Cannabis Law, OCM, through its Board members, was directed to (1) "perform such acts, prescribe such forms and propose such rules, regulations and orders as it may deem necessary or proper to fully effectuate the provisions of this chapter.", and (2) "in consultation with the executive director and the chief equity officer, have the authority to promulgate any and all necessary rules and regulations governing … adult-use cannabis, including, but not limited to  … the licensing and/or permitting of adult-use cannabis cultivators, processors, cooperatives, microbusiness, distributors, laboratories and retailers, … including, but not limited to: (a) prescribing forms and establishing application … fees; (b) the qualifications and selection criteria for registration, licensing, of permitting …."

19.    Under Section 87 of the Cannabis Law,

§ 87. Social and economic equity, minority and women-owned businesses, … 1. The board, in consultation with the chief equity officer and executive director, and after receiving public input shall create and implement a social and economic equity plan **and actively … promote racial, ethnic, and gender diversity** when

issuing licenses for adult-use cannabis related activities, including mentoring potential applicants, by prioritizing consideration of applications by applicants who … qualify as a minority or women-owned business, …. Such qualifications shall be determined by the board, with recommendations from the state cannabis advisory board, the chief equity officer and executive director, by regulation.

2. The board's social and economic equity plan shall also promote diversity in commerce, ownership and employment, and opportunities for social and economic equity in the adult-use cannabis industry. **A goal shall be established to award fifty percent of adult-use cannabis licenses to social and economic equity applicants and ensure inclusion of:**

(a) …;

(b) **minority-owned businesses;**

(c) **women-owned businesses;**

(d) **minority and women-owned businesses, as defined in paragraph (d) of subdivision five of this section;**

(e) …; and

(f) ….

3. …

4. …

5. For the purposes of this section, the following definitions shall apply:

(a) **"Minority-owned business" shall mean a business enterprise, including a sole proprietorship, partnership, limited liability company or corporation that is:**

(i) **at least fifty-one percent owned by one or more minority group members;**

(ii) an enterprise in which such minority ownership is real, substantial and continuing;

(iii) an enterprise in which such minority ownership has and exercises the authority to control independently the day-to-day business decisions of the enterprise;

(iv) an enterprise authorized to do business in this state and independently owned and operated; and

(v) an enterprise that is a small business.

(b) **"Minority group member" shall mean a United States citizen or permanent resident noncitizen who is and can demonstrate membership in one of the following groups:**

**(i) black persons having origins in any of the black African racial groups;**

**(ii) Hispanic persons of Mexican, Puerto Rican, Dominican, Cuban, Central or South American of either Indian or Hispanic origin, regardless of race;**

**(iii) Native American or Alaskan native persons having origins in any of the original peoples of North America; or**

**(iv) Asian and Pacific Islander persons having origins in any of the far east countries, south east Asia, the Indian subcontinent or the Pacific islands.**

**(c) "Women-owned business" shall mean a business enterprise, including a sole proprietorship, partnership, limited liability company or corporation that is:**

**(i) at least fifty-one percent owned by one or more United States citizens or permanent resident noncitizens who are women;**

(ii) an enterprise in which the ownership interest of such women is real, substantial and continuing;

(iii) an enterprise in which such women ownership has and exercises the authority to control independently the day-to-day business decisions of the enterprise;

(iv) an enterprise authorized to do business in this state and independently owned and operated; and

(v) an enterprise that is a small business.

(d) …

6. **The board shall actively promote applicants that foster racial, ethnic, and gender diversity in their workforce.**

(emphasis added.)

20.     Thus, the OCM Board, in consultation with the Executive Director and the Chief Equity Officer, was repeatedly directed to achieve a quota of SEE Applicants that include Minority-owned businesses and Women-owned businesses.  The definition of a Minority-owned business includes black persons, Hispanic persons, Native American or Alaska Native persons, and Asian and Pacific Islander persons, but does not include Caucasian or "white" persons. The definition of Women-owned business obviously does not include men.

21.     The SEE Applicants do not include either Caucasians or men.  Nor do SEE Applicants include persons of Jewish heritage, Palestinians, Armenians, Persians, … nor those persons considered to be hermaphrodites, androgyne, or gynandromorph.

**B. The Race And Gender of Each And All of The Individual Defendants Would Allow Them to be Accorded SEE Applicant Status**

22.     Plaintiff has attached hereto as Exhibit A copies of pages from the OCM website depicting each of the individual Defendants and their associated titles and roles with respect to the OCM.

23.     Defendant Christopher Alexander is, and at all relevant times has been, the Executive Director of OCM and is a man having dark pigmentation and would qualify as a "black person" according to Section 87.

24.     Defendant Tremaine Wright is, and at all relevant times has been, the Chairperson of the OCM Board and is a woman having dark pigmentation and would qualify as both a "black person" and a "woman" according to Section 87.

25.     Defendant Adam Perry is, and at all relevant times has been, a member of the OCM Board and is a man having moderately dark pigmentation and would qualify as a "black person" according to Section 87. While the photo of Defendant Perry attached as Exhibit A does not clearly show his pigmentation, Plaintiff has attached as Exhibit B a copy of his photograph and bio from the website of his law firm, HodgsonRuss, where he is listed as a partner and which shows him having a darker pigmentation. His law firm bio touts his experience in one case involving reverse race discrimination, another case involving African-Americans alleging discriminatory selection devices, and yet another case involving "employment discrimination and harassment based on gender, age, national origin, and ethnicity in violation of the U.S. Constitution's Equal Protection Clause …."

26.     At least due to Defendant Perry's intimate familiarity of race and gender discrimination law, and his implicit fiduciary duty as an OCM Board member to apprise each of

the Defendants of such law as applied to the OCM's actions, all of the Defendants are charged with knowledge of such law.

27.     Defendant Garcia is, and at all relevant times has been, a member of the OCM Board and is a woman having brown pigmentation and would qualify as both an "hispanic person" and a "woman" according to Section 87.

28.     Defendant Jenkins is, and at all relevant times has been, a member of the OCM Board and is a woman having light pigmentation and would qualify as a "woman" according to Section 87.

29.     Defendant hope Knight is, and at all relevant times has been, a member of the OCM Board and is a woman having dark pigmentation and would qualify as both a "black person" and a "woman" according to Section 87.

30.      Defendant Fagon is, and at all relevant times has been, the Chief Equity Officer of OCM and is a man having dark pigmentation and would qualify as a "black person" according to Section 87.

31.     Absent from the positions of OCM Board members, the Executive Director, and the Chief Equity Office is any person who could be described as a Caucasian or white man or who otherwise would fail to qualify as a minority or a woman according to Section 87 and to qualify for SEE Applicant status.

32.     The situation of having only minorities and women, and no white man, in the key positions associated with the OCM is statistically aberrant to such a degree as to lead to a reasonable, fair conclusion that the Defendants were selected to their aforementioned positions on the basis of race and gender.

33.     The Defendants thus have been in charge of implementing SEE standards and procedures that favor and give preference to their own race and gender.  The situation is akin to having such key positions held by only white men, and allowing those white men to create and implement regulations and procedures that favor white men.

**C.  The Defendants Designed And Implemented Regulations And Procedures That Have Favored And Given Preference to Selected Races and Genders And Have Discriminated Against Any Person Who is a White Man**

34.     The OCM published a brochure entitled "ADULT-USE SOCIAL & ECONOMIC EQUITY APPLICANT OVERVIEW, a copy of which is attached hereto as Exhibit C, (hereinafter "Brochure).

35.     The Brochure acknowledges, **"The Cannabis Law establishes a goal to award fifty percent (50%) of all adult-use licenses to SEE applicants."** (emphasis added.)

**36.     The Brochure states, "Priority shall be given to applications that demonstrate that an applicant is in one of the following SEE groups: …Minority-owned businesses Women-owned businesses".**  (emphasis added.)

37.     The Brochure further states, "SEE applicants will be asked to identify all SEE groups they qualify for during the application and will be pooled based on the license type sought, SEE certification, and provisional status. After the application window closes, applications will be randomly queued (ordered) in their distinct pools."

38.     **The Brochure further states that SEE applicants will enjoy a 50% reduction of the application fee and a 50% reduction of the annual license fee.**  That is, applicants who do not qualify or attain SEE applicant status, such as applicants owned by white men, will pay twice as much for those fees.

39.     The Brochure then states, "Qualified SEE applicants will receive priority in accessing adult-use licenses, with an extra prioritization for microbusiness, delivery, and nursery licenses."

40.     Plaintiff has attached hereto as Exhibit D a copy of an OCM publication updated December 5, 2023 entitled "General Licensing Application Frequently Asked Questions" (hereinafter "Publication").

41.     The Publication generally confirms what is stated in the Brochure, see especially pages numbered 3, 5-7, and 23-28.

42.     The Publication notably states (at page 6), **"After an application window closes, applications will be queued (ordered) in their distinct pools using a randomized process. …. Therefore, an applicant's queueing order is very important as those higher in the queue will be reviewed first, and it is possible not all applications will be reviewed before all licenses have been issued."**  (emphasis added.)

43.     The OCM and Defendant Fagon recently presented in mid-January 2024, after the application window closed, a slide presentation addressing the nature of the applications the OCM had received (hereinafter "Presentation").  Selected pages of the Presentation are attached hereto as Exhibit E.

44.     The Presentation indicates (1) approximately 6,800 applications were received for various types of cannabis licenses.  The Presentation also shows a pie graph showing that of all of the applications, 70% were claiming an SEE status.  The Presentation also presents a bar graph showing that of those claiming an SEE status, 46% were claiming such status on the basis of a Minority-owned business and 34% were claiming such status on the basis of a Woman-Owned business.

-11-

45.     During the Presentation, Defendant Fagon orally acknowledged that some applicants received "extra weight" in the queue, but failed to detail how any such "weight" was applied.

46.     Defendants have been opaque and secretive about the details of how priority was given, that is, how the priority was achieved other than through "pools". For example, Defendants have not explained how pools were prioritized with respect to other pools or with respect to applicants that were not a part of any particular pool. Moreover, Defendants have been mum and secretive about the weighting procedure implemented.

47.     One person has reported that SEE applicants were given extra weight, such as 3 times other applicants (see Exhibit F hereto). If that amount of weighting is accurate, then such preferred applicants would receive three times the chances of being "randomly" selected in the hierarchy of the queue as the chance of an applicant without SEE status.

48.     Regardless of the exact prioritization or weighting, it is clear that the Defendants gave favor and preference in the queueing process to applicants based on their race and gender, and that they gave disfavor to white men.

## D. **Plaintiff is And Has Been Owned by Caucasian or White Men And Was Otherwise Unable to Claim SEE Status in Connection With Its Application For a Cannabis License**

49.     Plaintiff is and has at all relevant times been owned by males of light pigmentation who might best be described as Caucasian or white men. Plaintiff filed an application with the OCM on October 12, 2023 seeking a microbusiness cannabis license. Plaintiff at all relevant times has been unable to claim SEE status, and did not claim SEE status in its application.

50.     The OCM advised applicants prior to filing an application that priority would be given to applicants that attested they either owned or rented space that was immediately ready to

conduct a licensed cannabis business (hereinafter "Operationally-Ready"). Accordingly, Plaintiff entered into a lease agreement prior to filing its application for the purpose of conducting such an Operationally-Ready business.

51.     Plaintiff's lease agreement requires Plaintiff to pay $2,000 per month plus utilities and premises insurance.  To date, Plaintiff has been unable to utilize the leased premises since its application has not been reviewed, much less any cannabis license granted.  Accordingly, Plaintiff has suffered damages and harm due to delays in obtaining a cannabis license.

52.     On about January 12, 2024 the OCM published its list of the hierarchy of applicants based on the "randomized", but prioritized and weighted, selection of applications, such as the SEE applicants.  See Exhibit G.  Of the about 6,800 applications, about 2,200 applicants, including Plaintiff were Operationally-Ready applicants.  The OCM ranked Plaintiff at number 2,042 in the hierarchy of applicants.  Approximately 1,800 SEE applicants are ranked above (i.e., given a higher priority than) Plaintiff.

53.     Defendants have determined and publicly advised that they are first reviewing a few hundred applications, with no definite date for reviewing a next batch of applicants, or the next batch, or the next batch….  Defendants have determined and advised that many applicants, especially those assigned a relatively high number (i.e., low priority) on the list, such as Plaintiff, might never have their applications reviewed or their licenses granted.

54.     SEE applicants, who were favored and preferred, are ranked higher on the list and thus will enjoy a "head start" in being granted a license, with its attendant quick earnings of revenues and profits, its encountering less competition, and its early establishment of customer loyalty.

-13-

55.     Because of the favor and preference given by Defendants to applicants based on race and gender, the review of Plaintiff's application has been seriously delayed, and Plaintiff will almost certainly not be granted a license in the foreseeable future.

**E.  Defendants Have Known, And Any Reasonable Person in Defendants' Respective Positions Would Have Known And Believed, That Their Actions Complained of Above Were Wrong And Violated Plaintiff's Rights Under The Equal Protection Clause of The U.S. Constitution**

56.     As mentioned above, due to the presence of Defendant Perry on the OCM Board, each and every Defendant knew or is charged with knowledge that the Defendants' actions were clearly wrong and unconstitutional.

57.     In addition, due to the decision in November of 2022 by the United States District Court for the Northern District of New York, in the case of *Variscite NY One, Inc. v. State of New York*, civil action no. 1:22-cv-01013, Defendants knew and a reasonable person in Defendants' respective positions would have known and believed that aspects of the Cannabis Law were unconstitutional and therefore other aspects of the Cannabis Law and the OCM's actions in connection with implementing that law were also Constitutionally suspect. In the *Variscite* case, Judge Sharpe issued on November 10, 2022 a preliminary injunction against OCM and Christopher Alexander from issuing any cannabis licenses for certain geographic areas due the illegality and unconstitutionality of a provision of the Cannabis Law respecting out-of-state residents under the dormant Commerce Clause of the U.S. Constitution.

58.     Moreover, the general public has known, and Defendants certainly knew, and any reasonable person in Defendants' respective positions would have known and believed, that giving special favor and preference in connection with university admissions to "minorities" that did not include white men, was illegal and unconstitutional as a violation of the Equal Protection Clause of the Fourteenth Amendment to the U. S. Constitution, as decided by the U.S. Supreme

Court on June 28, 1978 in the famous case of *Regents of the University of California v. Bakke*. In the *Bakke* case, the University had reserved 16 places out of a class of 100 medical school students for "minority" applicants – what the trial court deemed to be a "quota". Mr. Bakke was not a "minority, but rather, was a white male.

59.     In a more recent, famous U.S. Supreme Court case, which Defendants certainly knew, and any reasonable person in Defendants' respective positions would have known and believed, the admissions process at Harvard and at the University of North Carolina were deemed to violate the Equal Protection Clause of the Fourteenth Amendment by giving favor to applicants based on their race.  The case is styled *Students for fair Admission, Inc. v. President and Fellows of Harvard College*, and was decided on June 29, 2023.

60.     In yet another relatively recent U.S. Supreme Court case, the Court made it clear that an accusation of gender discrimination, if proven, violates the Equal Protection Clause of the Fourteenth Amendment and is actionable under 42 U.S.C. 1983. See, *Fitzgerald v. Barnstable School Comm*. decided in 2009. Again, Defendants knew, and any reasonable person in Defendants' respective positions would have known and believed, that gender discrimination is unlawful and unconstitutional.

61.     The right not to be discriminated against on the basis of either race or gender is so widely known, clearly established, and understood throughout the United States that Defendants knew or believed their conduct in arranging favor and preference to Minority-owned businesses and Women-owned businesses was unlawful and unconstitutional.  Such knowledge and belief is augmented, and irrefutable, given the experience, knowledge, and fiduciary duty of Defendant Perry mentioned above. Further, the preliminary injunction order of Judge Sharpe mentioned *supra*. put Defendants on alert that their actions were of suspect legality and constitutionality.

62.     The law regarding racial and gender discrimination was so widely known and clearly established, there is no way any reasonable official in Defendants' respective positions could have believed their conduct in favoring and preferring applicants for cannabis licensing based on race and gender was constitutionally permissible.

## FIRST CAUSE OF ACTION

### (Equal Protection Clause, 42 U.S.C. § 1983)

### (Plaintiff Against All Defendants)

63.     Plaintiff realleges and incorporates herein by reference each of the allegations set forth in the preceding paragraphs of the Complaint as though fully set forth herein.

64.     Defendants enacted regulations and procedures that provide favor and preference to persons of a selected race or gender to the exclusion of Caucasian or white men for applications for cannabis licenses. In doing so, Defendants violated the Equal Protection Clause of the United States Constitution and 42 U.S.C. § 1983.

65.     Defendants violated Plaintiff's rights by depriving Plaintiff of the opportunity to be fairly considered and to fairly compete for such a license in violation of the Equal Protection Clause.

66.     Preliminary and permanent injunctive relief is necessary and prudent to prevent Defendants from continuing to implement or enforce the regulations and procedures that favor persons of a selected races or gender and disfavor and discriminate against Plaintiff.

67.     Preliminary and permanent injunctive relief is necessary and prudent to prevent Defendants from processing any applications claiming SEE status based on a Minority-owned business or a Women-Owned business because the racial and gender preferences violate the

-16-

Case 5:24-cv-00116-GLS-DJS   Document 1   Filed 01/24/24   Page 17 of 20

United States Constitution and subject Plaintiff to serious, concrete, and injuries, both reparable and irreparable.

68.     Preliminary and permanent injunctive relief is necessary and prudent to ameliorate and undo the favors and preferences that have already been given to Minority-owned and Women-owned businesses by ordering Defendants to revoke and cancel any cannabis licenses granted to applicants that had claimed SEE status based on such Minority-owned or Women-owned business status.

69.     Preliminary and permanent injunctive relief is necessary and prudent to correct and provide amends for the lower, discriminatory governmental fees that have already been paid by applicants for a cannabis license that have claimed SEE status as a Minority-owned or Women-owned business by ordering Defendants to refund higher application filing fees and any other governmental fees paid by applicants that have not claimed such status.

70.     Preliminary and permanent injunctive relief is necessary and prudent to make amends for charging and from continuing to charge discriminatory governmental fees, such as application filing fees and licensing fees, that are lower for applicants claiming SEE status based on Minority-owned or Women-owned businesses and are higher for other applicants and to order that in the future such governmental fees not be disparate.

71.     Plaintiff has suffered harm and damages including, but not limited to, (1) paying a higher application filing fee, (2) paying rent, utilities, and insurance on a premises in order to obtain an Operationally-Ready establishment as induced and encouraged by Defendants, and (3) lost profits from delayed business operations, all because of the illegal and unconstitutional actions by Defendants.

-17-

72.     The foregoing illegal and unconstitutional actions of Defendants have been deliberate and willful, and have been knowingly designed and calculated, to illegally discriminate in favor of Minority-owned and Women-owned businesses and against Plaintiff – all during a time when Defendants knew about the illegality of their conduct challenged herein, intentionally discriminated against Plaintiff and other white men, and recklessly disregarded the consequences of their illegal and unconstitutional actions.  No reasonable official in Defendants' respective positions could have believed their conduct in favoring and preferring applicants based on race and gender was constitutional, thereby warranting an order awarding to Plaintiff and against Defendants not only its actual damages, but also, punitive damages and awarding to Plaintiff and against Defendants its attorney fees.

## SECOND CAUSE OF ACTION

### (Declaratory Relief, 28 U.S.C. § 2201)

### (Plaintiff Against All Defendants)

73.     Plaintiff realleges and incorporates herein by reference each of the allegations set forth in the preceding paragraphs of the Complaint as though fully set forth herein.

74.     Defendants complained of actions violate the Equal Protection Clause of the United States Constitution. An actual controversy exists between Plaintiff and Defendants as to whether Defendants may implement and enforce the complained of actions based on race or gender.

75.     Declaratory relief is necessary to resolve this dispute.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief as follows:

1.     For the first claim, a preliminary and permanent injunction:

a.      Prohibiting Defendants from continuing to implement or enforce the regulations and procedures respecting cannabis licensing that favor and prefer persons of a selected race or gender, including, but not limited to, the regulations and procedures giving favor and preferences to Minority-owned and Women-owned businesses.

b.      Prohibiting Defendants from processing any applications for any cannabis license claiming SEE status based on a Minority-owned business or a Women-owned business and from granting any licenses based thereon.

c.      Ordering Defendants to revoke and cancel any cannabis licenses granted to applicants that had claimed SEE status based on Minority-owned or Women-owned business status.

d.      Ordering Defendants to refund higher application filing fees and any other governmental fees paid by applicants for a cannabis license that have not claimed SEE status as a Minority-owned or Women-owned business.

e.      Ordering that in the future governmental fees for applicants claiming SEE status based on a Minority-owned business or a Woman-owned business not be disparate from those fees being charged to applicants that do not seek or qualify for such SEE status.

2.      For the first claim,

   a.   an award of Plaintiff's damages, including lost profits; and

   b.   an award to Plaintiff of punitive damages.

3.      For the second claim, a declaration that:

   a.   Favoring, preferring, or giving priority to a Minority-Owned Business or a Woman-Owned Business violates the Equal Protection Clause of the United States Constitution in connection with applications for a cannabis license.

-19-

    b.  Disfavoring and discriminating against Caucasian or white men violates the Equal Protection Clause of the United States Constitution in connection with applications for a cannabis license.

4.    An award to Plaintiff of its attorneys' fees and costs.

5.    For such other and further relief as this Court shall deem appropriate.

Respectfully submitted,

Dated: __1 / 2 4__, 2024   By: _____

Robert E. Purcell, Bar Roll No. 510,595
THE LAW OFFICE OF ROBERT E. PURCELL, PLLC
211 West Jefferson Street, Suite 24
Syracuse, New York 13202
Telephone: (315) 671-0710
E-mail: rpurcell@repurcelllaw.com
*Attorneys for the Plaintiff, Valencia Ag, LLC*

© Copyright 2024 Robert E. Purcell