SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ALBANY
_____

In the Matter of the Application of
CARMINE FIORE, WILLIAM NOGARD,
STEVE MEJIA, AND DOMINIC SPACCIO,

                                        Plaintiffs,              Index No. 907282-23


        -against-

NEW YORK STATE CANNABIS CONTROL
BOARD, NEW YORK STATE OFFICE OF
CANNABIS MANAGEMENT, TREMAINE
WRIGHT, in her official capacity as the Chairwoman
of the New York Cannabis Control Board, and CHRIS
ALEXANDER, in his official capacity as Executive of
the New York State Office of Cannabis Management,

                                        Defendants.
_____

STATE OF NEW YORK          )
                           ) ss:
COUNTY OF ALBANY           )

        Patrick Mckeage, being duly sworn, deposes and says:

1.      I am currently employed by the New York State Office of Cannabis Management (the

"Office") and my current position is First Deputy Director. In this position, my duties and

responsibilities include, but are not limited to, directing the day-to-day operations of the Office,

leading priority projects as directed by the Executive Director, who in turn is directed by the

Cannabis Control Board (the "Board"), reviewing and developing criteria for evaluating unit

performance, supervising staff and representing the Office in high-level meetings with the

Governor's Office and other State agencies.  My statements herein are based on my personal

knowledge, deriving from my position as First Deputy Director at the New York State Office

of Cannabis Management, and relevant materials consisting of the exhibits and authorities

cited herein.

Case 5:24-cv-00116-GTS-TWD    Document 30-3    Filed 03/05/24    Page 2 of 25

2.      I submit this affidavit in support of Defendants' opposition to Plaintiffs' application

pursuant to CPLR 63 for a Preliminary Injunction.

**Creation of the CAURD Program**

3.      On March 31, 2021, the Legislature passed the Marihuana Regulation Taxation Act

("MRTA").

4.      The MRTA enacted the Cannabis Law, which established the Board and the Office.

The Cannabis Law regulates, controls, and taxes cannabis. *See* Cannabis Law §§ 2, 7, and 8.

5.      On February 22, 2022, the Legislature amended the Cannabis Law to create

conditional licenses for growing and processing cannabis. *See* Chapter 18 of the Laws of 2022.

This legislation was intended to jumpstart the new cannabis industry by allowing existing hemp

farmers to apply for a conditional license to grow cannabis in the 2022 growing season. *See*

statements of Assembly Majority Leader Crystal Peoples-Stokes, Senator Michelle Hinchey,

and Assemblymember Donna Lupardo, *Governor Hochul Signs Conditional Cannabis*

*Cultivation Bill*, February 22, 2022, attached hereto as Exhibit A.[1]

6.      On April 21, 2022, the Governor signed the FY 2022-2023 Budget, pursuant to

which the Legislature amended, among other things, the State Finance Law and the Public

Authorities Law. *See* Chapter 58 of the Laws of 2022 at 26-31; Chapter 53 of the Laws of

2022 at 64 ("Budget Bills"). Through these legislative enactments, the Legislature

acknowledged the conditional adult-use retail dispensaries (CAURD) program which included the

creation of a new license under article 2 of the Cannabis Law for CAURD. Such CAURDs are

required by the Legislature to be operated by social equity licensees (not social *and*

*economic* equity licensees). These licensees, in turn, are eligible to receive state support by

---

[1] https://www.governor.ny.gov/news/governor-hochul-signs-conditional-cannabis-cultivation-bill

way of state funding, through a private fund referred to as the New York Social Equity Cannabis Investment Fund (the "Fund") which finances the leasing and equipping of dispensaries by the Dormitory Authority of the State of New York for these social equity licensees. *See Governor Hochul Announces Major Progress Toward Advancing Equity in Cannabis*, June 22, 2022, attached hereto as Exhibit B.[2]

7.    Section 99-ii of the State Finance Law, as amended, provides that moneys in the New York state cannabis revenue fund shall be expended to cover capital costs associated with:

> *establishing conditional adult-use cannabis retail dispensaries* for operation by *social equity licensees duly licensed pursuant to article two of the cannabis law.*

State Finance Law § 99-ii(3)(d) (emphasis added).

8.    Similarly, section 1678 of the Public Authorities Law, as amended, provides that the Dormitory Authority of the State of New York shall have power:

> (30) To enter into one or more agreements with the office of cannabis management, the cannabis control board, or the private debt or equity fund … in which the state …has invested and is formed for the limited purpose of funding the capital costs associated with establishing *conditional adult-use cannabis retail dispensaries for operation by social equity licensees duly licensed pursuant to article two of the cannabis law.*

Public Authorities Law § 1678(30) (emphasis added).

9.    Further, pursuant to section 1678(32) of the Public Authorities Law, the Fund was created to establish a $200 million social impact investment fund exclusively dedicated to financing the development, leasing, and initial build out of CAURD storefronts throughout the state. In order to ensure that the Fund meets the state's intended public policy goals, the statute also contemplated the creation of a Public Policy Committee comprised of state representatives to guide the Fund and to ensure compliance with the objectives of the

---

[2] https://www.governor.ny.gov/news/governor-hochul-announces-major-progress-toward-advancing-equity-cannabis

Cannabis Law and the MRTA.

10.    The CAURD program and the CAURD licenses were intended by the Legislature to be open in time to make sales of the product grown and processed by the newly licensed conditional cultivators and conditional processors by the end of 2022, so that such product could be sold in a timely manner rather than spoil and result in significant financial losses to the conditional cultivators and processors. The conditional cultivator bill was passed by the Legislature in February 2022, and the first licenses issued in April 2022, allowing the farmers enough time to have plants in the ground for the summer, harvested in the fall, and ready for sale by the end of 2022. With the MRTA two-tier market structure the farmers and processors could not make direct sales to cannabis consumers.

**Creation of the CAURD Criteria**

11.                                                                                                                    T

asked with creating the CAURD license and to do so expeditiously, the Office and the Board began their drafting process by turning to the provisions of the Cannabis Law that expressed the Legislature's policy and intent for the new industry. In that regard, the Legislature stated as follows:

> The legislature finds that existing marihuana laws have not been beneficial to the welfare of the general public. Existing laws have been ineffective in reducing or curbing marihuana use and have instead resulted in devastating collateral consequences including mass incarceration and other complex generational trauma, that inhibit an otherwise law-abiding citizen's ability to access housing, employment opportunities, and other vital services.... The intent of this act is to
> ...make *substantial investments in communities and people most impacted by cannabis criminalization.*

Cannabis Law § 2 (emphasis added).

12.    This priority for people impacted by cannabis prohibition is *extra* or in addition to the priority or benefits bestowed on other people and groups that are promoted in the

legislation, such as through the social and economic equity plan which identifies those who qualify as a minority or women- owned business, distressed farmer, or service-disabled veteran, for example.

13.    Specifically, section 87(3) of the Cannabis Law provides as follows:

*[E]xtra priority* shall be given to applications that demonstrate that an applicant:

(a) is a member of a community disproportionately impacted by the enforcement of cannabis prohibition;
(b) has an income lower than eighty percent of the median income of the county in which the applicant resides; and
(c) was convicted of a marihuana-related offense prior to the effective date of this chapter, or had a parent, guardian, child, spouse, or dependent, or was a dependent of an individual who, prior to the effective date of this chapter, was convicted of a marihuana-related offense.

Cannabis Law § 87(3) (emphasis added).

14.    The Legislature's focus on restorative justice is further buttressed by the Board being required to consider, when determining whether to issue a license to an applicant, if the applicant is from, or representative of, a community impacted by cannabis prohibition. *See* Cannabis Law §§ 35(9); 64(j) and 66(6).

15.    Further, the Board and the Office are required to substantiate, by way of an annual report, that they are achieving "other social justice goals including, but not limited to, *restorative justice*." Cannabis Law § 10(17)(c) (emphasis added).

16.    Consequently, the Board promulgated regulations for the CAURD program which required that a CAURD applicant be impacted by cannabis prohibition by (a) having been convicted or having had a family member be convicted of a marijuana-related offense; and (b) having lived at the time of the arrest in an area that had low median income.

17.    While these criteria for the CAURD program were informed by, and borrowed in part from, section 87 of the Cannabis Law, which provides for the promotions of certain groups, including minority and women-owned businesses, distressed farmers, service-disabled

veterans, and individuals who are from communities disproportionately impacted by the enforcement of cannabis prohibition (who are all referred to as social and economic equity applicants), section 87 also promotes, and provides extra priority, as discussed above, for justice involved individuals. This category, however, does not exclude the other groups referred to in section 87. In fact, a preliminary review of the data, based on information that was reported by applicants, suggests that a large portion of the CAURD licensees would fit within any of the other groups identified in section 87, and out of the provisional CAURD licenses issued there were at least 15 provisional licenses issued to individuals who are service-disabled veterans.

18.    The State Finance Law and Public Authorities Law requires that the license be operated by a *social equity* licensee. Section 87 which addresses the social and economic equity plan, however, applies to *social and economic equity* licensees.

19.    As such, the Board did not use section 87 wholesale as the basis for the CAURD license requirements. Nevertheless, the Board was informed by and the CAURD license requirements were inspired in part by section 87's promotion of individuals impacted by cannabis prohibition, as well as other sections of the Cannabis Law evidencing this same policy focus as directed by the Governor and Legislature.

20.    Indeed, the Fund was created by the Governor and the Legislature to ensure that those impacted by past drug policies had a real opportunity to participate in the new industry and to reinvest cannabis tax revenue in communities impacted by those policies. *See* Exhibit B. As numerous legislators expressed, the CAURD license fulfills the Legislature's equity and justice goals expressed in the MRTA and provides for the CAURD licensees to operate dispensaries. In that regard, Senator Liz Krueger confirmed that "The MRTA was designed not only to end the failed war on drugs in New York, but specifically to take positive action

to help rebuild those communities that were most harmed by prohibition. Offering the first retail licenses to people who have been convicted of marijuana-related offenses is a big step in the right direction…;" and Assembly Majority Leader Crystal Peoples-Stokes likewise stated that the CAURD licenses implemented "the Marijuana Regulation and Taxation Act in a manner consistent with the intent of the legislation." *Governor Hochul Announces The Office of Cannabis Management Seeding Opportunity Initiative*, March 10, 2022, attached hereto as <u>Exhibit C</u>;[3] *see also Cannabis Control Board Press Release*, July 14, 2022, attached hereto as <u>Exhibit D</u>;[4] *CCB Approves First CAURD Licensees*, November 21, 2022, attached hereto as <u>Exhibit E</u>.[5]

21.     Senator Liz Krueger further confirmed that:

> "Marihuana prohibition has thrust thousands of New Yorkers into the criminal justice system for nonviolent offenses, denying many the fundamental right to participate in the democratic process of voting and inhibiting otherwise law-abiding citizens' ability to access housing, student loans, employment opportunities, and other vital services. Additionally, rather than curtailing youth-marihuana usage, existing marihuana laws have led to an illicit market that has done little to address marihuana usage by minors. Existing marihuana laws have led to costly overuse of law enforcement resources and in some instances discriminatory police practices that have perpetuated systematic racism and discrimination increasing the prison population with non-violent offenders. Over the past two decades, New York has become the marihuana arrest capital of the country, with nearly 800,000 marihuana arrests and summons. These arrests disproportionately impact the lives

---

[3] https://www.governor.ny.gov/news/governor-hochul-announces-office-cannabis-management-seeding-opportunity-initiative
[4] https://cannabis.ny.gov/system/files/documents/2022/07/ccb-press-release-7-14-22_0.pdf
[5] https://cannabis.ny.gov/system/files/documents/2022/11/ccb-approves-first-caurd-licenses.pdf

of African-American and Latinx communities. Black and Brown New Yorkers are swept into the criminal justice system for marihuana use while white New Yorkers have generally been evaded prosecution. While government studies show that whites of all ages use marihuana at the same rate as People of Color, a stark difference in arrest rates remains. Across New York City, African-Americans are arrested on low-level marihuana charges at eight times the rate of white, non-Hispanic people and Latinxs are arrested at five times the rate of whites. Thus, one of the largest drivers of racial disparity in criminalization and incarceration rates' is the inequity of how the law is applied in marihuana arrests. The intent of this act is to regulate, control, and tax cannabis. The MRTA will generate millions of dollars in new revenue, prevent access to marihuana by those under the age of twenty-one, reduce the illegal drug market and violent crime, help transition otherwise law-abiding citizens engaged in the Legacy market to the legal market, and create new industries and increase employment. With the enactment of the MRTA, the New York State Legislature has an opportunity to end the racially disparate impact of existing marihuana policies and their enforcement." *The Marijuana Regulation and Taxation Act of 2021, Sponsor Justification*, 854-A, 2021-2022 Regular Sessions, Chapter 92, attached hereto as Exhibit F.

22.    The other requirement for a CAURD license is prior experience owning and running a business. Here again, the Board did not invent such criteria on its own. Rather this requirement is based on and related to the criteria that the Legislature required the Board to consider when issuing a license.

23.    The Cannabis Law requires the Board to develop regulations that the Office will use in determining whether or not an applicant should be granted a license. Such a determination must be based, among other criteria, on whether:

> (b) the applicant will be able to maintain effective control against the illegal diversion or inversion of cannabis

(c) the applicant will be able to comply with all applicable state laws and regulations
(d) the applicant and its officers are ready, willing, and able to properly carry on the activities for which a license is sought…
(e) where appropriate and applicable, the applicant possesses or has the right to use sufficient land, buildings, and equipment to properly carry on the activities described in the application…

Cannabis Law § 64. The Cannabis Law outlines similar criteria the Legislature wanted the Office to consider when licensing registered organizations for the medical program. *See* Cannabis Law § 35.

24.     An applicant who has prior business experience is likely able to show each of these criteria - that it has experience in maintaining inventory and control over such inventory, familiarity with the importance of complying with various applicable laws, and officers who are ready to carry on business activities. Moreover, an applicant who previously operated a business is more likely to possess the required assets, including real property, that would assist an applicant in being able to set up a dispensary and start operating it. As such, the Board included the prior business requirement for the CAURD license given its relation to the criteria outlined by the Legislature for considering license issuance.

25.     Nothing in the Cannabis Law precludes the Board from using certain criteria in section 64 or borrowing certain criteria from section 87 to fill in the gaps for the CAURD license. To the contrary, the Cannabis Law broadly authorized the Board to do this, and the Budget Bills specifically confirmed and further effectuated the CAURD program.

26.     Further, in crafting the CAURD license, which was based on the Legislature's policy, the Office relied on its technical competence. In that regard, the Office is comprised of staff that have experience in the cannabis industry, some of which came from Department of Health, who oversaw the medical marijuana program under the Compassionate Care Act and others who have worked as attorneys and consultants in the cannabis industry in other states.

Case 5:24-cv-00116-GTS-TWD    Document 30-3    Filed 03/05/24    Page 10 of 25

27.    In addition, the Office relied on staff who previously worked at Department of Corrections and Community Supervision and drug advocacy nonprofits, and thus had an understanding of the New York State criminal justice system and the nature of marihuana-related arrests and their consequences. These staff members used their technical skills in interpreting and identifying valid data sources and relationships between, for example, poverty and convictions.

28.    The Office also relied on staff with backgrounds in business, economics, corporate structures, data reporting and analytics, IT infrastructure, geocoding, labor data, census data, and statistical programming. These staff members used their specialties and skills to review, parse through and analyze the availability and reliability of historical data related to determining impacted areas that the Legislature stated it wanted to address in the MRTA. Staff reviewed and analyzed, among others, the National Historical Geographic Information Systems for available data on various topics. *See* IPUMS NHGIS Data Table Availability by Topic and Source, attached hereto as Exhibit G.

29.    With respect to the prior business experience criteria, the staff used their prior business, corporate, antitrust, and economics background to analyze the information and variables in numerous reports and guidance from Empire State Development that are considered by incubator organizations that help start new businesses when they are assessing small businesses.

30.    The Office opened the period for applications for CAURD licenses on August 25, 2022. The Office was not required to open the CAURD license application window at the same time as the window for adult-use retail dispensaries.

31.    As set forth in the State Finance Law and Public Authorities Law, the CAURD license is not a license issued pursuant to article 4 of the Cannabis Law, but rather a license

Case 5:24-cv-00116-GTS-TWD    Document 30-3    Filed 03/05/24    Page 11 of 25

issued pursuant to article 2 of the Cannabis Law. The adult-use retail dispensary license is a license under section 72 of the Cannabis Law, which is an article 4 license. *See* Cannabis Law §72 ("Adult-use retail dispensary license"). As such, section 10(19), which requires that the application period must be opened at the same time for any "adult-use cannabis retail dispensary license," does not apply to CAURD.

**Harm Caused by Imposition of Injunction**

32.    Enjoining Defendants from awarding or further processing any more CAURD licenses and/or conferring operational approval upon any more provisional or existing CAURD licensees until such time as the Court adjudicates the motion and cross-motion for summary judgment filed in *Coalition for Access to Regulated & Safe Cannabis v. New York State Cannabis Control Board*, Index No. 902390-23 (Sup. Ct. Albany County) will have devastating effects on New York State and the roll out of the entire adult-use cannabis program as a whole.

33.    In November 2022, the Board approved proposed adult-use regulations to be filed for public comment (the "Proposed AU Regulations"). *Resolution No. 2022-48 Directing the Office of Cannabis Management to File Certain Proposed Adult-Use Regulations* dated November 21, 2022, attached hereto as Exhibit H,[6] and *Proposed AU Regulations*, attached hereto as Exhibit I.[7]

34.    The Adult-Use Regulations address and govern the applications, attestations, eligibility, evaluation, denials, renewals or transitions, requirements and prohibitions on Article 4 adult-use cannabis licenses, including retail dispensary licenses under section 72 of

------

[6] https://cannabis.ny.gov/system/files/documents/2022/11/ccb-au-regulations-resolution-11-21-22.pdf
[7] https://cannabis.ny.gov/system/files/documents/2022/12/adult-use-cannabis-proposed-regulations.pdf

the Cannabis Law.

35.    The comment period for the Proposed AU Regulations expired on February 13, 2023. Following an assessment of public comment on the Proposed AU Regulations, the Board, on May 11, 2023, approved revised adult-use cannabis regulations ("Revised AU Regulations") to be filed for additional public comment. *Resolution No. 2023-16 Directing the Office of Cannabis Management to File Certain Revised Adult-Use Regulations*, attached hereto as Exhibit J;[8] *Revised AU Regulations*, attached hereto as Exhibit K.[9]

36.    The Revised AU Regulations are in the assessment of public comment period.

37.    The Office intends to present them to the Board for a vote on their adoption on September 12, 2023.

38.    The Office is working with the State Information Technology Services Office to build its adult-use license and application system and intends that the launch of the application period for these licenses will begin on October 4, 2023.

39.    If the CAURD program is enjoined, the Revised AU Regulations will need to be revised to add in provisions regarding justice-involved individuals. Revising the Revised AU Regulations would delay their presentation to the Board, and their adoption, by at least 2.5 months in order to allow for 45 days for public comment and 30 days for the Office to assess public comment. As such, the opening of the non-conditional adult-use retail dispensary license and all other adult-use licenses' application period would be delayed well into the winter of 2024 due to the fact that the application window cannot be opened without the regulations adopted. Thus, those applicants, including social and economic equity applicants, preparing to apply for non-conditional adult-use retail dispensary licenses, and all other

---

[8] https://cannabis.ny.gov/system/files/documents/2023/05/ccb-au-regulations-resolution-5-11-23.pdf

[9] https://cannabis.ny.gov/system/files/documents/2023/07/revised-adult-use-regulations.pdf

adult-use licenses, would be delayed significantly.

40.     In addition, there are currently 453 provisionally approved CAURD licensees (putting aside those that qualified under the non-profit track). Of these, at least 53% fall within one of the other groups identified in section 87 of the Cannabis Law including several service-disabled veteran businesses. Enjoining the CAURD program will prevent these individuals from obtaining the benefit of their hard effort and from obtaining the benefit that the MRTA intended to bestow on them. Further, many of these licensees have invested significant financial resources to try and operationalize their provisional license to find a retail dispensary location, build a team, and start their businesses.

41.     Moreover, there will be tremendous harm to existing licensed conditional cultivators and processors.

42.     There are currently 278 conditional cultivators and 40 conditional processors licensed. Each of the cultivators have one acre of capacity and have already produced a combined estimate of 300,000 pounds of cannabis, with a total production value of up to $1.5 billion. The upcoming harvest is anticipated to yield a similar amount of product, for a total of 600,000 pounds harvested since the inception of the program to the end of October 2023. Of that amount, on average, approximately 5 pounds per day is being sold per retailer per day, which amounts to approximately a maximum of 18,000 pounds sold since the inception of the CAURD program.

43.     While there are 453 provisionally approved CAURD licensees, only 24 of these have received a final license and are approved to sell cannabis product to consumers. Considering that there were 600,000 pounds harvested with 18,000 pounds sold up until now, current existing amounts available for sale is approximately 582,000 pounds. Assuming the same rate of sale until the end of the year, which would be approximately 18,000 pounds, the

remaining amount that will not be sold is approximately 564,000 pounds or about 96% of all currently unsold product. That remaining amount will have nowhere to be sold if the amount of retail dispensary licensees that are approved to sell cannabis product to consumers remains the same. If the conditional cultivators do not have sufficient retail dispensaries to sell their crop, they will likely lose their businesses or will otherwise be forced to sell their crops on the illicit market. The current 21 retail dispensaries that are open now, are insufficient to sell the thousands of pounds of product grown during the last grow season, much less the upcoming season. A further delay to the retail rollout will cause many farmers, many of which are small family farms representing almost every county in the state, to lose their businesses and the significant financial resources they have invested in growing their crop without an outlet to sell it.

44.     Additionally, the CAURD licensees are intended to displace illegal stores that have risen to take advantage of the absence of legal supply since decriminalization. New York State is already faced with an illicit market growing and thriving since the passage of the MRTA, with unlicensed businesses posing as licensed businesses.

45.     An injunction of the CAURD program - which serves as the end of the cannabis supply chain - would contribute to the flood of the illegal market with hundreds of thousands of pounds of untested and untaxed cannabis fueling more illicit activities, entrenching the criminal stores, driving down prices, harming public health and safety, and ultimately decreasing the effectiveness of New York's current enforcement actions against unlicensed cannabis businesses. *See Governor Hochul Announces Results of First Enforcement Actions Under New Law Against Unlicensed Cannabis Businesses,* attached hereto as Exhibit L.[10]

---

[10] https://www.governor.ny.gov/news/governor-hochul-announces-results-first-enforcement-actions-under-new-law-against-unlicensed

46.    The remaining 429 provisionally approved CAURD licensees are in various stages of the final licensure, including, looking for retail locations, providing required municipality notifications, obtaining certificates of occupancy for retail spaces, obtaining required insurance policies, entering labor peace agreements, planning for renovations and outfitting their retail dispensaries in compliance with the Office's rules, hiring staff, and submitting any additional required operating plans and disclosure statements.

47.    These provisionally approved CAURD licensees are incurring financial obligations in the hundreds of thousands of dollars each day on construction crews renovating their stores, various vendors installing point of sale systems and other items required to meet the regulatory specifications, suppliers preparing orders to ship product to the provisional licensees, meetings with compliance teams and local communities, and press schedules, among other things. An injunction of the CAURD program would cause delay in licensees opening for business, in turn resulting in tremendous financial harm to these licensees who have received a provisional license. The Office has been receiving a significant number of letters each day regarding the harm that the individuals are facing which are attached here as Exhibit M.

**Lack of Harm Sustained By Plaintiff**

48.    As set forth above, the non-conditional adult-use retail dispensary license, and other adult-use licenses' application period is currently projected to open on October 4, 2023. With no injunction to the CAURD program, and no revisions to the Revised AU Regulations which would otherwise be required if the CAURD program were enjoined, service-disabled veterans would be able to apply for a license as quickly as 2 months from now and receive the benefits contemplated by the social and economic equity plan and the Revised AU

Regulations.

49.     The social and economic equity plan, which has already been approved by the Board, provides a framework for how the Office proposes to achieve the robust social and economic equity goals in the MRTA, including the goal of awarding 50% of licenses to social and economic equity applicants. Using that framework for the launch of the non-conditional adult-use application window in October 2023 and pursuant to the Revised AU Regulations and the social and economic equity plan, service-disabled veteran owned businesses will be receiving prioritization in licensure where a certain portion of licenses will be reserved for service-disabled veteran-owned businesses that meet the requirements for licensure. The Office projects approximately 125 licenses being available for service-disabled veteran-owned businesses in the initial cohort of social and economic equity licenses and potentially hundreds more anticipated in 2024. Additionally, service-disabled veterans comprise approximately 10% of the participants in the Office's Cannabis Compliance Training and Mentorship program and will similarly receive prioritization in licensure. Upon being awarded an adult-use license, service-disabled veteran owned businesses will receive further support from the Office, from reduced annual license fees to additional technical training programs and comprehensive wrap around business development support services.

Dated:  August 9, 2023
Albany, New York

_____
Patrick Mckeage

Sworn to before me this
___9th___ day of August, 2023

_____
Notary Public

Diana Yang
Notary Public State of New York
Albany County
Lic. #02YA6174777
Commission Expires December 10, 20 23

Case 5:24-cv-00116-GTS-TWD    Document 30-3    Filed 03/05/24    Page 17 of 25

**STATEMENT PURSUANT TO 22 NYCRR 202.8-b**

I, Shannan C. Krasnokutski, affirm under penalty of perjury pursuant to CPLR 2106, that the total number of words in the foregoing Affidavit, inclusive of point headings and footnotes and exclusive of pages containing the caption, table of contents, table of authorities, and signature block, is 4465. The foregoing Affidavit complies with the word count limit set forth in 22 NYCRR 202.8-b. In determining the number of words in the foregoing Affidavit, I relied upon the word count of the word-processing system used to prepare the document.

s/ Shannan C. Krasnokutski
Shannan C. Krasnokutski

To whom it may concern,

My name is David Nicponski and I am writing to you as a CAURD provisional licensee who will <u>continue</u> to experience irreparable harm if the injunction of the CAURD program, as called for in the lawsuit filed by Mr. Fiore, et. al., is to be upheld.

I and my cofounders have already invested substantial time, energy, and resources to pursue the opening of our dispensary and delivery services, and we continue to do so.  As we approach our final approval, these investments have begun to require ongoing funding which cannot be delayed or recouped aside from actually beginning operations.  Signed leases do not stop requiring rental payments because of a court injunction preventing final approval for operations.

I have personally invested tremendous amounts of time and our family's life savings into launching our business, for months following the established roadmap for provisional licensees to gain final approval and begin operations.  Some of these highlights include:

- Eliding a seven-figure Managing Director job offer from a major investment firm which was incompatible with owning and operating a cannabis business.
- Entirely self-funding to date all business expenses.  This is rapidly approaching six-figure territory and will continue to grow by substantial amounts without any offsetting income if the injunction remains in force.
- Hired a slew of contractors and service providers, everything from attorneys to graphic designers to marketing agencies and imminently including general contractors and union construction workers.
- Established a lease for our OCM-approved delivery location and currently in lease negotiations for our OCM-approved retail location.
- Significant capital expenditures on space buildout, for instance DEA-level security cages for inventory storage, cameras, hardware, etc

**The harm that this injunction does to us personally, and to our families, cannot be overstated**. Ultimately, so long as this injunction exists and proscribes the completion of our site approvals and commencement of our operations, **we will be hemorrhaging our limited personal capital at an alarming rate, rapidly exhausting our resources and ultimately leading to personal bankruptcy and a complete inability to launch our retail store** in an industry context where every retailer matters. The ruinous consequences thereof would impoverish multiple generations of people rather than allow for the creation of a cross-generational business which supports our families, the state, and the community. This despite following all rules & regulations for the program to the letter in good faith.

While opening the general applications and allowing more Social and Economic Equity licensees is a very important step in creating the diverse, robust, and successful Adult Use market that we all want to see in NY, I urge you to recognize that it is not Mr. Fiore and the plaintiffs who are at risk of irreparable harm, it is the stakeholders who have already invested everything we have to stand this market up safely and sustainably based on the promises of the very program that the plaintiffs seek to destroy.

Sincerely,

David Nicponski
OCMCAURD-2022-000652

August 9th 2023

To whom it may concern,

My name is Christine Richardson and I am writing you as a Provisional CAURD licensee and justice involved (OCMCAURD-2022-000232) who will experience irreparable harm if the injunction of the CAURD program, as called for in the lawsuit filed by Mr. Fiore, et. al., is to be upheld.

So far, my partner and I have spent $50,000 related to opening our cannabis dispensary and receiving our provisional CAURD license. This cost includes attorney fees, a real estate lease, construction of the store, and bank fees. In addition, we have executed a lease with over $200,000 in lease rental obligations for the next 5 years, a location OCM has pre-approved, and have signed agreements with vendors for over $150,000 in expenses. Our team spent almost a year and hundreds of hours working and preparing the license application, real estate property, relationship building with cultivators and processors, and following Office of Cannabis Management (OCM) guidelines. If the injunction is upheld, we will become financially unstable and unable to pay the rent obligations and therefore go into bankruptcy and pay legal fees associated with that bankruptcy. Because of my conviction, it would be hard for me to find a job that could pay off these debts.

While opening the general applications and allowing more Social and Economic Equity licensees is a very important step in creating the diverse, robust, and successful Adult Use market that we all want to see in NY, I urge you to recognize that it is not Mr. Fiore and the plaintiffs who are at risk of irreparable harm, it is the stakeholders who have already invested everything, we have to stand this market up safely and sustainably based on the promises of the very program that the plaintiffs seek to destroy.

Sincerely,

Christine Richardson

To whom it may concern,

My name is Eyasser Noboa and I am writing to you as a CAURD licensee (OCMCAURD-2022-000516) who will experience irreparable harm if the injunction of the CAURD program, as called for in the lawsuit filed by Mr. Fiore, et. al., is to be upheld.

We have more than $100,000 invested so far into our store just for our lease & down payment for our build out which has already started & almost another $20000 into our security system , point of sale & e-commerce. It's of us who have put our lives on pause so that we can accomplish this goal and we have three workers that we've already hired for our delivery which we planned on starting at the end of this month.

If this injunction were to stay this would be the second time we've had to go through an injunction because we were part of the first injunction that held up the licensees that were supposed to be  awarded to mid-Hudson region when the licenses were first given out and even with that delay and numerous mins blowing interactions with landlords and capital venture companies trying to take advantage of us we were able to find a location that for our needs and had a landlord that was willing to work with us. It would be disastrous for us to have spent all this money and time just to have it all flushed away with this injunction. We have our families & staff that have been very supportive of us throughout this process and to tell them that it's been all for nothing would be devastating.

While opening the general applications and allowing more Social and Economic Equity licensees is a very important step in creating the diverse, robust, and successful Adult Use market that we all want to see in NY, I urge you to recognize that it is not Mr. Fiore and the plaintiffs who are at risk of irreparable harm, it is the stakeholders who have already invested everything we have to stand this market up safely and sustainably based on the promises of the very program that the plaintiffs seek to destroy.

Sincerely,

Eyasser Noboa
OCMCAURD-2022-000516

Get Outlook for iOS



Astro Management, Inc

OCMCAURD-2022-000168

August 9, 2023

To whom it may concern,

My name is Ryan Littman and I am writing to you on behalf of Astro Management, Inc, a CAURD licensee (OCMCAURD-2022-000168). Astro Management will experience irreparable harm if the injunction of the CAURD program, as called for in the lawsuit filed by Mr. Fiore, et. al., is to be upheld.

Astro Management have made a multitude of sacrifices, both in time and financial investments to get to the point of Phase 1 of the license.

Astro Management has engaged two law firms and consulting companies for a number of required services including; application preparation, compliance advisement, corporate governance, and preparing agreements for investment and to secure our location and negotiate the lease. Our legal vendors have accrued significant accounts payable and this debt has grown based on a good faith relationship with our vendors.

Our CAURD applicant, Jillian Dragutsky, has spent hundreds of hours and personal dollars traveling to and from Florida compiling the necessary tax documentation required. Her qualified previous business predated digital filing by the IRS and FLorida State Tax board. Our management team has dedicated months of time without compensation building relationships inside the industry to secure supply chain logistics prior to operations.

Additionally and perhaps the most important, we have significant momentum in securing investments into the company for operations and to pay our vendors their balances for their services. This positive momentum and legal work for agreement preparation is all at risk as a result of steering these investors away through their lack of confidence in the New York state cannabis industry. These delays significantly impact our ability to find investment in an extremely difficult environment to raise capital and will impact the overall value of cannabis

INDEX NO. 907282-23
RECEIVED NYSCEF: 08/09/2023

licenses for not just retail/delivery, but for the entire supply chain.

To pause or to eliminate the CAURD program sets the industry back, it will directly impact the hundreds of lives who are fully committed to the industry. Many groups up and down the supply chain will not be able to sustain a delay. You must take action to allow for the continuance of the program, the actual harm to too many does not outweigh the perceived harm to a small group.

This injunction will allow the illicit market to continue to thrive and continue to tke tax revenue away from the state and income from complaint operators. This will make enforcement all the more challenging for officials and allow for the illicit market to continue to build a robust infrastructure.

We urge you to recognize that it is not Mr. Fiore and the plaintiffs who are at risk of irreparable harm, it is the stakeholders who have already invested everything we have to stand this market up safely and sustainably based on the promises of the very program that the plaintiffs seek to destroy.

Sincerely,

Ryan Littman

Astro Management, Inc.

Chief Operating Officer

OCMCAURD-2022-000168

To whom it may concern,

My name is Sean McKenzie, and I am writing you as a CAURD licensee who will experience irreparable harm if the injunction of the CAURD program, as called for in the lawsuit filed by Mr. Fiore and company, is to be upheld.

I have deep concerns regarding the injunction placed on CAURD cannabis licenses. Over the past several months, I have invested tens of thousands of dollars, along with a significant amount of time, energy, and effort, away from various income-generating ventures with the sole aim of securing this license and opening up operations.

The journey has not been without its challenges, particularly in an industry deeply affected by the legacy of the war on drugs. As a minority, justice-impacted entrepreneur, navigating the intricacies of this cutthroat business has been both inspiring and daunting. I have personally experienced the detrimental impact of the war on drugs, and it is with a heavy heart that I witness a lack of empathy from those who have not borne witness to its devastating consequences.

The potential harm of upholding this injunction goes beyond financial losses. If the injunction is upheld, I stand to lose hundreds of thousands of dollars, jeopardizing potential investments that would have fueled the growth of my business. Moreover, I would be forced to deliver the heartbreaking news to individuals whom I had planned to hire that their employment opportunities are no longer viable.

The broader implications of this situation extend to the perpetuation of a system that has historically marginalized and disproportionately affected communities of color. The war on drugs has wreaked havoc on countless lives, and it is disheartening to witness obstacles that further perpetuate these disparities, making it even harder for minorities to thrive in a landscape where their experiences and perspectives should be celebrated.

Although initiating the acceptance of general applications and expanding opportunities for Social and Economic Equity licensees is a crucial stride towards establishing a diverse, thriving, and prosperous Adult Use market in New York, I implore you to acknowledge that the potential for irreparable harm does not lie with Mr. Fiore and the plaintiffs. Rather, it rests upon the shoulders of stakeholders who have invested their all in steadfastly and sustainably launching this market, underpinned by the assurances of a promising future.

I implore you to consider the far-reaching consequences of the decision regarding this injunction. The potential for progress and positive change within our community lies in creating opportunities for individuals like myself who have not only invested financially but have also poured their heart and soul into a venture that aims to promote equity and inclusion.

Thank you for taking the time to read this email and for your consideration.

Sincerely,

Sean McKenzie

917-723-0908

Sent from my iPhone