**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

VALENCIA AG, LLC

|  |  |  |
|---|---|---|
| | Plaintiff, | Docket No. 24-00116 |
| v. | | **DECLARATION OF DEPUTY DIRECTOR OF DATA AND RESEARCH IN OPPOSITION TO PLAINTIFF'S REQUEST FOR A PRELIMINARY INJUNCTION** |
| NEW YORK STATE CANNABIS CONTROL BOARD; NEW YORK STATE OFFICE OF CANNABIS MANAGEMENT; TREMAINE WRIGHT; CHRIS ALEXANDER; ADAM PERRY; JESSICA GARCIA; JENNIFER JENKINS; HOPE KNIGHT; AND DAMIAN FAGON, | | |
| | Defendants. | |

Jodi Bryon, on the date noted below and pursuant to § 1746 of Title 28 of the United States Code, declares the following to be true and correct under the penalty of perjury under the laws of the United States of America:

1.      I am currently employed by the New York State ("NYS") Office of Cannabis Management ("Office") and my position is Director of Data and Systems. In this position, my duties and responsibilities include, but are not limited to, leading the OCM team in the development of adult-use cannabis applications and agency systems, a data warehouse, and agency analytics.

2.      I have worked in New York City and New York State government for 19 years. Prior to OCM, I served as the Director of Performance Management and Analytics and the Director of Workforce Analytics at the NYC Department of Citywide Administrative Services, and as the Team Leader in the Housing, Economic, and Infrastructure Planning division at the NYC Department of City Planning. I have a baccalaureate and Master Degree in Urban Planning from SUNY Buffalo and a Master Degree of Quantitative Methods and Modeling from CUNY Baruch.

3. My statements herein are based on my personal knowledge, deriving from my position as Director of Data and Systems at the Office, and relevant materials consisting of the exhibits and authorities cited herein.

4. I submit this Declaration in support of the Defendants' opposition to Plaintiff's request for a Preliminary Injunction.

Application Review Lottery for Application Window October 4 – December 18

5. The application window for all license types (retail, microbusiness, cultivator, distributor, etc.) and for all applicant types (non-SEE, SEE, and extra priority) opened on October 4, 2023. The application window for applicants seeking a microbusiness or retail license with proof of control over a proposed premises from which they intend to operate closed on November 17, 2023 ("November Applications"). The application window for applicants who applied after November 17, 2023, or for a provisional license without proof of control over a premises closed on December 18, 2023 ("December Applications). As such, applicants that are part of the November Applications are only competing against one another, they are not competing against applicants that are part of the December Applications, and vice versa. In addition, licenses issued for a microbusiness are different from licenses issued for a retail dispensary. The number of licenses anticipated to be issued to microbusinesses is separate from the number of licenses anticipated to be issued for retail dispensary. As such November Applications for microbusiness license do not compete against November Applications for retail dispensary license.

6. On December 7, 2023, the Office used a computer program to randomly sequence the November Applications for microbusiness and retail dispensary licenses to create the order in which OCM reviews the application.

7.    The queueing program, or code, randomly sequenced all microbusiness applications regardless of whether they were SEE applications without Extra Priority or non-SEE applications. Said another way, applications for microbusiness license (or retail dispensary license) did not receive any particular treatment in the review order on the basis that such applications indicated that they were seeking SEE certification without Extra Priority.

8.    The queuing program did prefer applications for a microbusiness license, not based on an applicant being in a SEE applicant group, but on the basis of an application seeking extra priority certification or on the basis that the applicant was a graduate of the Cannabis Compliance Training and Mentorship Program ("CCTM"). The prioritization to such applicants was afforded by weighting these applications in a manner that would guarantee their positions were early in the review order.

9.    Random sequencing was done through the program's pseudo-random number generator, which is an algorithm that generates a sequence of numbers.

10.    A seed was also used to initialize the algorithm and to make the queuing reproducible. The afternoon NYS Lottery Win 4 Draw from that day was used as the program's seed. *See* Transcript of Meeting of Cannabis Control Board on December 8, 2023, attached hereto as **Exhibit A**.[1]

11.    The November Applications are reviewed in the order they were assigned in the queue until the number of licenses that the Office intends to issue is reached, which is currently anticipated to be one hundred ten licenses for microbusinesses. As such, the applications are not reviewed until after the lottery has been completed. Because there were more applications for microbusiness license than the number of licenses the Office intends to issue for the November

---

[1] https://cannabis.ny.gov/system/files/documents/2023/12/ocm-december-2023-transcript.pdf

Applications, it is possible that not all applications will be reviewed before all licenses are issued. *See* General Licensing Application Frequently Asked Questions ("FAQs"), Question 10, attached hereto as **Exhibit B.**[2]

12.     The queue does not classify applicants based on race and gender, nor does it treat them differently than other SEE applicants or non-SEE applicants. Except for the extra priority and CCTM applications for microbusiness license, ALL SEE and non-SEE microbusiness applications are randomly disbursed throughout the queue with each other.

13.     The November Applications included 401 microbusiness applications. Of the 401 microbusiness applications, 137 (34%) were applications that did not indicate any SEE group qualification (non-SEE applications), and 264 (66%) indicated one or more SEE group qualification (SEE applications). Of the 264 SEE applications, 224 applications indicated qualification as a minority or women-owned businesses ("MWOB"). These applicants, however, also indicated that they qualified for other SEE groups. Specifically, of the 224 applications, 65 applicants were also from communities disproportionately impacted by the enforcement of cannabis prohibition ("CDI"); 17 applicants were also service-disabled veterans ("SDVOB"); and 16 applicants were also distressed farmers ("DF"). These combinations are not mutually exclusive and there are multiple types of SEE applications.

Position of Plaintiff's Application in the November Queue

14.     Plaintiff's application was part of the November Applications and was submitted as a non-SEE microbusiness application.

15.     As a result, Plaintiff's application is not considered part of the December Applications.

_____

[2] https://cannabis.ny.gov/system/files/documents/2024/01/current-public-universal-app-faq-1-26.pdf

16.     Plaintiff's application position is 2042 in the November Queue. Because the November Queue includes microbusiness applications and retail applications, adjusting the queue to account for microbusiness applications only, results in Plaintiff being in position 373 in the November Queue.

17.     Of the microbusiness applications ahead of Plaintiff in the review order, 246 are SEE applicants. Of those applicants, 127 indicated that they qualify as MWOB only and no other SEE group. Even if all such 127 applications were removed, Plaintiff would advance to position 246 only.

18.     As such it is unlikely that Plaintiff's application would reach the review threshold even without the applications that Plaintiff finds objectionable appearing anywhere before Plaintiff's application in the review order given that the Office anticipates issuing only 110 licenses for microbusinesses from the November Applications. As such any alleged injury cannot be claimed to result from the existence of applications from applicants who happen to be MWOB.

19.     Indeed, of the first 110 microbusiness positions in the review queue, only 21 of those positions are applications in which the applicant indicated that they qualify as MWOB only.


Dated: New York, New York
       March 5, 2024

/s/ Jodi Bryon
Jodi Bryon