UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VALENCIA AG, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>CHRISTOPHER ALEXANDER, in his official capacity as Executive Director of the New York Office of Cannabis Management; TREMAINE WRIGHT, in her official capacity as Chairperson of the New York Cannabis Control Board,<br><br>        Defendants. | No. 5:24-cv-00116 (GTS/TWD)<br><br>**FIRST AMENDED COMPLAINT** |

## INTRODUCTION

1. New York is joining the growing number of states that allow the legal cultivation, sale, and consumption of cannabis. Near the end of 2023, New York cannabis regulatory authorities closed the first application window for individuals and businesses to obtain licenses to participate in this burgeoning market. The licenses granted will serve a special role in establishing this new industry in New York.

2. But licenses are not available on an equal basis. Instead, the State of New York gives significant race- and sex-based preference in both the application and review process for obtaining a license to operate a cannabis business.

3. Valencia Ag is a hopeful cannabis business that satisfies all the legitimate criteria to become a licensed cannabis business in New York. However, because the owners of the business do not identify as New York's preferred race or sex, Valencia is at a severe disadvantage in obtaining a license. Plaintiff brings this civil rights action to vindicate its equal protection rights under the Fourteenth Amendment to the United States Constitution.

1

## JURISDICTION AND VENUE

4. This action arises under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. The Court has jurisdiction over this federal claim under 28 U.S.C. §§ 1331 (federal question) and 1343(a) (redress for deprivation of civil rights). Declaratory relief is authorized by the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

5. Venue is proper in this District under 28 U.S.C. § 1391(b)(2). A substantial part of the events giving rise to this claim have occurred or will occur in the Northern District of New York.

## PARTIES

6. Plaintiff Valencia Ag, LLC, is a limited liability company organized under the laws of the State of New York. It has its place of business at 5204 Harvest Hill Drive, Jamesville, New York 13078. Plaintiff has applied for a microbusiness cannabis license in the past and is ready, willing, and able to apply for a cannabis license again in the future.

7. Defendant Christopher Alexander is the Executive Director of the New York Office of Cannabis Management (OCM). OCM exercises its authority through Defendant Alexander. N.Y. CANBS §§ 8–9. Defendant Alexander is sued solely in his official capacity.

8. Defendant Tremaine Wright is the Chairperson of the Cannabis Control Board (CCB or Board). CCB has authority over the issuance of cannabis business licenses. N.Y. CANBS § 10(1)–(2). Defendant Wright is sued solely in her official capacity.

## FACTUAL ALLEGATIONS

*New York's Cannabis Law*

9. On March 31, 2021, the State of New York enacted the Marihuana Regulations & Taxation Act, with the short title of "Cannabis Law." N.Y. CANBS § 1.

10.     New York law requires that any person who seeks to legally "cultivate, process, distribute, deliver or dispense cannabis within this state for sale" must apply for a license from the Board. *Id.* § 61.

11.     The Board has "sole discretion" to limit the number of licenses issued. In doing so, however, it must "prioritize[] social and economic equity applicants with the goal of fifty percent awarded to such applicants" and the issuance of licenses must "reflect[] the demographics of the state." *Id.* § 10(2).

12.     The Cannabis Law defines "[s]ocial and economic equity applicant[s]" (SEE applicants) as "an individual or an entity who is eligible for priority licensing pursuant to the criteria established in article four." *Id.* § 3(50).

13.     Article four establishes that one can qualify for priority licensing on the basis of the owner's race and/or sex. *Id.* § 87

14.     The Cannabis Law sets out selection criteria that the Board must consider when granting an "initial adult-use cannabis license." *Id.* § 64(1), *et seq.*

15.     The first criterion is that "the applicant is a social and economic equity applicant." *Id.* § 64(1)(a).

16.     As a separate criterion, the statute then repeats that the Board must consider whether "the applicant qualifies as a social and economic equity applicant." *Id.* § 64(1)(f).

17.     For microbusiness, delivery, and nursery licenses, the Cannabis Law mandates that "[t]he granting of such licenses shall promote social and economic equity applicants." *Id.* §§ 73–75.

18.     The Board must develop a "social and economic equity plan" (SEE Plan) that must "promote racial, ethnic, and gender diversity when issuing licenses for adult-use cannabis related

activities." *Id.* § 87(1). A copy of the current SEE Plan is attached to this First Amended Complaint as Exhibit A.

19. The SEE Plan states that "the promotion of racial, ethnic, and gender diversity when issuing licenses" is "a central mission of both the Board and the Office." Ex. A at 6.

20. The SEE Plan characterizes itself as "a living strategic document that will be adjusted and amended to reflect New York's evolving cannabis landscape." Ex. A at 6.

21. The statute mandates that the Board's plan must establish a goal that 50% of the adult-use licenses of all types be given to SEE applicants. *Id.* § 87(2).

22. The plan must "ensure inclusion" of "minority-owned" and "women-owned" businesses, *id.* § 87(2)(b)–(c), businesses which qualify for "priorit[y] consideration" as SEE applicants. *Id.* § 87(1).

23. A "minority-owned business" is defined along racial/ethnic lines. At least 51% of the business must be owned by "minority group members." *Id.* § 87(5)(a)(i). "Minority group members" is further defined and is based solely on race and ethnicity. *Id.* § 87(5)(b)(i)–(iv).

24. A "women-owned business" is defined on the basis of sex or gender. At least 51% of the business must be owned by women. *Id.* § 87(5)(c)(i).

25. The Board is required to collect demographic information on licensees in furtherance of its social and economic equity goal, *id.* § 88, a requirement that has been integrated into the SEE plan.

26. In addition to priority review and licensure, the Cannabis Law treats applicants differently on the basis of race and sex in a myriad of additional ways. Race and sex considerations determine whether an applicant must possess the land for the business or merely have a "plan to do so." *Id.* § 64(1)(e). Race and sex determine eligibility for special mentorship and incubator

programs. *Id.* §§ 10(17)(c), 87(1), 87(4). Even the registration and application fees vary depending on the race and sex of the applicant. *Id.* §§ 15(3), 63(3).

*Regulation by the Cannabis Control Board*

27. The Cannabis Law grants CCB rulemaking authority to "effectuate the provisions of" the Cannabis Law. *Id.* § 13.

28. CCB's regulations promulgated under this authority largely reflect the statutory requirements to discriminate on the basis of race and sex.

29. CCB regulation allows "the acceptance of licensing applications" to be limited according to "social and economic equity factors." N.Y. Comp. Codes R. & Regs. tit. 9, § 120.1(c).

30. CCB regulation states that "[a]n applicant . . . shall be reviewed and evaluated in an order and manner determined by the Board, based on . . . social and economic equity status." *Id.* § 120.7(b).

31. CCB regulation allows race and sex to be used when determining priority for "application submission, review, selection, and issuance." *Id.* § 120.7(c)(2).

32. CCB regulation confirms that applicants qualify for priority social and economic equity status on the basis of race and/or sex. *Id.* § 121.1(a)(1)(ii)–(iii), (b), (f)–(g).

33. "[P]rovisional licensing" is available for certain applicants who have their application denied, so long as they are of the preferred race or sex. *Id.* § 120.13(d).

34. The license fee can be reduced by 50%, waived, or deferred if the applicant is from a preferred race or sex. *Id.* § 120.4(c)(1).

35. CCB asserts and has exercised discretionary authority to determine how it "may approve licenses using mechanisms, including, but not limited to, scoring, compliance-based evaluation, qualified lottery, randomized ordering, or any combination thereof." *Id.* § 120.7(c).

CCB's rulemaking authority under N.Y. CANBS § 13, which must be exercised to "effectuate the provisions of" the Cannabis Law, does not extend to the implementation of a randomized queueing process that does not provide for priority ordering, review, and licensing of SEE applicants as mandated by the statute, *see* N.Y. CANBS §§ 3(50), 10(2), 64(1), 73–75, 87(1)–(2), and as otherwise embodied in the Board's regulations.

*OCM and CCB Licensing Procedures*

36. OCM recently published a brochure entitled "ADULT-USE SOCIAL & ECONOMIC EQUITY APPLICANT OVERVIEW." Plaintiff has attached a copy of this brochure to the First Amended Complaint as Exhibit B.

37. The brochure acknowledges OCM's goal that 50% of the licenses be given to social and economic equity applicants. Ex. B.

38. The brochure explains that license priority is given to "Minority-owned businesses" and "Women-owned businesses." Ex. B.

39. The brochure explains that SEE applicants are entitled to a 50% reduction of the application fee and a 50% reduction of the annual license fee. Ex. B.

40. Moreover, "Qualified SEE applicants will receive priority in accessing adult-use licenses, with an extra prioritization for microbusiness, delivery, and nursery licenses." Ex. B.

41. On December 5, 2023, OCM updated a publication titled "General Licensing Applications Frequently Asked Questions." Plaintiff has attached a copy of this publication to this First Amended Complaint as Exhibit C.

42. The FAQ document explains how applications are "pooled based on the license type sought, SEE certification and provisional status," and then "queued (ordered) in their distinct pools" once an application window closes. Ex. C.

43. Notably, "an applicant's queueing order is very important as those higher in the queue will be reviewed first, and it is possible that not all applications will be reviewed before all licenses have been issued." Ex. C.

44. In the section on Social and Economic Equity, the FAQ document states that SEE applicants receive "[l]icense review prioritization for adult-use cannabis licenses," and that "[q]ualifying as multiple SEE categories will increase an applicant's chances in the random order queueing process." Ex. C.

45. The FAQ document also explains that "[a]pplicants who are not issued a license in this application window must resubmit an application to be considered in a future application licensing window," where "the Board may create applications with competitive or scored elements." Ex. C.

46. The current SEE Plan summarizes approaches several states have taken to achieve "social equity." Some states set up lotteries that give social equity applicants more chances to win, or that are reserved exclusively for social equity applicants. It also recounts that some states have instituted "merit-based" scoring systems that award social equity applicants more points on their applications. Far from disavowing such measures as unauthorized by the Cannabis Law or unconstitutional discrimination when applied along race and gender lines, the SEE Plan states that these measures have "proven to be only part of the solution." Ex. A at 13.

47. OCM and its Chief Equity Officer recently gave a slide presentation addressing the nature of the applications the OCM had received after the application window closed. Plaintiff has attached a copy of select pages of this presentation to this First Amended Complaint as Exhibit D.

48. According to the presentation, approximately 6,800 applications were received for various types of cannabis licenses. Ex. D.

7

49. 70% of the applications sought preferential treatment as a "social and economic equity" applicant. Ex. D.

50. Of those applications, 46% claimed that status on the basis of being a "Minority-owned business," and 34% were claiming such status on the basis of being a "Women-owned business." Ex. D.

51. On about January 12, 2024, OCM published its list of the hierarchy of applicants based on the purportedly randomized placement of applications. Plaintiff has attached a copy of this list to this First Amended Complaint as Exhibit E.

52. While the precise weight and how queueing priority was set is unknowable at this time, it is clear from the statutory and regulatory text that OCM officials are mandated and authorized to give favor and preference in the application, queueing, review, and granting processes to applicants based on their race and sex.

53. After queueing is complete, CCB is mandated and authorized to consider race and/or gender when reviewing applications and granting licenses.

54. CCB regulation asserts that the method for queueing is left entirely to CCB's discretion. N.Y. Comp. Codes R. & Regs. tit. 9, § 120.7(c). Even assuming this to be true such that the Board could implement randomized queueing under its statutory authority, as the demographic makeup of licensees becomes known CCB must take race- and sex-based action to meet its mandated goal for 50% of licensees to be social and economic equity applicants.

55. CCB plans to open future license application windows as part of its "measured roll-out" and "methodical approach to licensing." Ex. A at 55–56.

8

56. CCB is mandated and authorized to take race- and sex-based action when receiving, queueing, reviewing, and granting license applications that will be submitted to these future application windows.

*Valencia Ag, LLC is at a severe disadvantage because of its ownership's race and sex*

57. Valencia Ag is owned by two brothers. Because they are men and cannot claim membership in one of the races favored by the Cannabis law, Valenica Ag cannot claim that it is a SEE applicant in its application on the basis of being a "minority-owned business" or "women-owned business."

58. Valencia Ag does not qualify for any SEE applicant status under any of the other factors.

59. Valencia Ag filed an application with OCM on October 12, 2023, seeking a microbusiness cannabis license.

60. OCM advised applicants prior to filing an application that priority would be given to applicants that attested they either owned or rented space that was immediately ready to conduct a licensed cannabis business. These are considered "Operationally-Ready" businesses.

61. Valencia Ag entered into a lease agreement prior to filing its application specifically for the sole purpose of being ready to conduct a licensed business at the leased premises. Accordingly, Valencia Ag is an Operationally-Ready business.

62. Its lease agreement requires it to pay $2,000 per month plus utilities and premises insurance. To date, Valencia Ag has been unable to utilize the leased premises since its application has not been reviewed, much less any cannabis license granted. Accordingly, Plaintiff has suffered damages and harm due to delays in obtaining a cannabis license.

9

63. Of the about 6,800 applications to the first recently closed application window, about 2,200 applicants, including Plaintiff, were Operationally-Ready applicants. OCM ranked Plaintiff at number 2,042 in the hierarchy of applicants.

64. Because the Board intends to issue only about 110 microbusiness licenses from this first round of applicants, Plaintiff's position in the purportedly randomized queue virtually ensures that it will not be granted a license any time soon despite its significant investments in building a qualified, Operationally-Ready business, as OCM officials have determined and advised that many applicants, especially those assigned a relatively high number on the list, may never have their applications reviewed.

65. Even if the queue released on January 12, 2024, was randomized, Valencia's relatively low ranking in the queue, making access to one of the first 110 microbusiness licenses a virtual impossibility, is in part attributable to the high number of race- and gender-based SEE applicants who filed applications after receiving preferential treatment in the application process because of their race and sex. The presence of this high number of SEE applicants that received preferential treatment made it more likely that Valencia would receive a relatively low ranking in the unlawfully randomized queue, and thus this discrimination will cause Valencia to almost certainly not be reviewed in this application round and will thus be granted a license much later, if ever.

66. Valencia's relatively low ranking in the queue is also attributable to OCM and the Board's repeated announcements promising favor, preference, and priority to SEE applicants pursuant to the Cannabis Law's mandates, which induced and incentivized such individuals to apply for licenses. Such announcements and promises were made with the intended effect of having more Minority-owned and Women-owned businesses apply for a license, which in turn

would result in more licenses being granted to such businesses, regardless of whether the promised favor, preference, and priority would ultimately be given. Without such inducement and incentive, fewer applicants would have applied, and Valencia would have more likely received a higher ranking in the queue. Such announcements and promises were intended and designed to help achieve the mandatory goal of granting at least 50% of licenses to SEE applicants.

67. Because of the favor and preference given by OCM officials to applicants based on race and sex, Plaintiff will almost certainly not be granted a license in the foreseeable future, if ever.

68. If Plaintiff does not receive a license upon the conclusion of review of the pending batch of applicants from the first application window, Plaintiff is qualified, ready, willing, able, and plans to reapply in subsequent application windows that OCM and the Board have publicly stated will be opened in the future.

69. Any future license application will be subjected to the Board's statutory mandate and regulatory authority to consider applicants' race and/or gender when accepting, queueing, and reviewing applications.

70. Any future license application will be subjected to the Board's statutory mandate and regulatory authority to consider applicants' race and/or gender when making licensing decisions.

71. CCB's mandate to award 50% of licenses to SEE applicants will require it to continuously make race- and sex-conscious decisions over time, as the agency gets a fuller picture of the demographic makeup of awarded licensees.

72. Plaintiff must make its future business decisions and plans, and file any future license application, under the specter of the Cannabis Law's mandated discrimination and the

CCB's authority to effectuate this discrimination through various means to be memorialized in future amendments to the SEE Plan, including but not limited to using race and/or gender considerations in setting quotas for future application windows, opening application windows only for SEE applicants, setting aside available licenses only for SEE applicants, providing queue priority or extra queue placement for SEE applicants, and awarding SEE applicants additional points in a "merit-based" application review process.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

**The Race-Based Licensing Classifications Violate the Equal Protection Clause of the Fourteenth Amendment**

73. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs of this First Amended Complaint.

74. Plaintiff is a person under 42 U.S.C. § 1983.

75. Defendants acted under the color of state law in developing, implementing, and administering laws, regulations, and procedures that discriminate and grant preferential treatment to cannabis license applicants based on their race and/or sex.

76. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution requires that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

77. The rights guaranteed by the Fourteenth Amendment are enforceable against Defendants through 42 U.S.C. § 1983.

78. Defendants have violated Plaintiff's right to equal protection of the laws by discriminating against Plaintiff in its application for a microbusiness cannabis license on the basis of race.

79. Defendants have violated Plaintiff's right to equal protection of the laws by subjecting Plaintiff's ability to receive a license to discrimination on the basis of race.

80. Because the Cannabis Law, CCB regulations, and OCM practices treat applicants differently based on their race, they must satisfy strict scrutiny.

81. Individuals who qualify for priority licensure based on their race are not required to prove that they have been specifically harmed by prior unconstitutionally or unlawfully discriminatory enforcement of cannabis prohibition laws, nor any other unconstitutionally or unlawfully discriminatory government action for that matter. Race alone is enough.

82. Defendants do not have a compelling interest that justifies these racial classifications.

83. The racial classifications are not necessary to remedy any violation of the Constitution or a statute.

84. The racial classifications are not designed to remedy specific, identified discrimination.

85. Even if the racial classification were enacted to further a compelling interest, they are not narrowly tailored to that purpose.

86. The racial classifications are woefully overinclusive. Individuals from certain racial groups are given preference for no identifiable purpose.

87. The racial classifications treat individuals according to racial stereotypes.

88. The racial classifications have no end date and will continue in perpetuity.

89. Because these racial classifications further no compelling interest, and are not narrowly tailored, they violate the Equal Protection Clause.

## SECOND CAUSE OF ACTION

**The sex-based classifications violate the Equal Protection Clause of the Fourteenth Amendment to the Constitution**

90. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs of this First Amended Complaint.

91. The Cannabis Law, CCB regulations, and OCM practices discriminate on the basis of sex in violation of the Equal Protection Clause.

92. The Cannabis Law, CCB regulations, and OCM practices facially discriminate on the basis of sex.

93. Sex-based classifications are subject to intermediate scrutiny. Under this standard, the government must show that the statute's gender classifications serve important governmental objectives and that the means employed are substantially related to those objectives.

94. Defendants do not have an important objective that justifies these sex-based classifications.

95. The sex-based classifications embedded in the Cannabis Law, CCB regulations, and OCM practices do not remedy past, identifiable discrimination against women.

96. Even if Defendants can identify an important objective for these sex-based classifications, the means chosen are not substantially related to it.

97. The sex-based classifications treat individuals differently according to gender stereotypes.

98. The sex-based classifications have no end date and will continue in perpetuity.

99. Because these gender classifications further no important interest, and are not substantially related to one, they violate the Equal Protection Clause.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1. A declaration that the use of race in the New York Cannabis Law, CCB regulations promulgated thereunder, and OCM policies and practices violates the Fourteenth Amendment to the United States Constitution;

2. A declaration that the sex-based classifications in the New York Cannabis Law, CCB regulations promulgated thereunder, and OCM policies and practices violates the Fourteenth Amendment to the United States Constitution;

3. A permanent injunction prohibiting Defendants from enforcing the race and sex preferences in the New York Cannabis Law, CCB regulations promulgated thereunder, and OCM policies and practices;

4. An award of attorneys' fees, costs, and expenses in the action pursuant to 42 U.S.C § 1988; and

5. Such other relief that the Court deems just and proper.

DATED: March 13, 2024.                                    Respectfully submitted,

|  |  |
|---|---|
| ROBERT E. PURCELL<br>N.Y.N.D. No. 510595<br>The Law Office of Robert E. Purcell, PLLC<br>211 West Jefferson Street, Suite 24<br>Syracuse, NY 13202<br>Telephone: (315) 671-0710<br>rpurcell@repurcelllaw.com | /s/ David J. Hoffa<br>DAVID J. HOFFA*<br>Ariz. Bar No. 038052<br>Pacific Legal Foundation<br>3241 E. Shea Blvd., Suite 108<br>Phoenix, AZ 85028<br>Telephone: (916) 419-7111<br>dhoffa@pacificlegal.org<br><br>JOSHUA P. THOMPSON*<br>Cal. Bar No. 250955<br>Pacific Legal Foundation<br>555 Capitol Mall, Suite 1290<br>Sacramento, CA 95814<br>Telephone: (916) 419-7111<br>jthompson@pacificlegal.org |

*Pro Hac Vice*

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 13, 2024, I electronically filed the foregoing First Amended Complaint (dated March 13, 2024), with the Clerk of the District Court using the CM/ECF system, which is understood to have sent notification of such filing electronically to the following:

**Aimee Cowan**
New York State Attorney General - Syracuse Regional Office
300 South State Street - Suite 300
Syracuse, NY 13202
315-448-4808
Fax: 315-448-4808
Email: aimee.cowan@ag.ny.gov
*Attorney for Defendants*

DATED: March 13, 2024.

/s/ David J. Hoffa
DAVID J. HOFFA*
Ariz. Bar No. 038052
Pacific Legal Foundation
3241 E. Shea Blvd., Suite 108
Phoenix, AZ 85028
Telephone: (916) 419-7111
dhoffa@pacificlegal.org
**Pro Hac Vice*

*Attorney for Plaintiff*