# Exhibit C

General Licensing Application Frequently Asked Questions



**Office of Cannabis Management**

**General Licensing Application**
**Frequently Asked Questions**

Contents

General Questions ............................................................................................................................. 1

A.   Eligibility Basics ..................................................................................................................... 11

B.   How to Complete the Application ......................................................................................... 14

C.   Social and Economic Equity ................................................................................................. 23

D.   Premises ................................................................................................................................. 38

E.   After Submitting the Application .......................................................................................... 45

F.   Final Licensure ...................................................................................................................... 46

## General Questions

### 1.  What Adult-Use Cannabis license applications will open in Fall 2023?

The applications for adult-use cultivator, processor, distributor, microbusiness, and retail dispensary license types will be available on New York Business Express (NYBE) starting Wednesday, October 4, 2023.

More information is available about each license type at the links below:

- Cultivator
- Processor
- Retail Dispensary
- Distributor
- Microbusiness

In addition, businesses with adult-use conditional cultivator (AUCC) and processor (AUCP) licenses will also be able to apply to transition to non-conditional adult-use cultivator and processor licenses through NYBE on this date. More information is available online at the AUCC and AUCP transition guidance.

More information will be made available by the Office of Cannabis Management (Office) regarding Registered Organization with Dispensing (ROD) and Registered Organization Non-Dispensing (ROND) licenses soon.

### 2.  How many of each license type will be available for this application window?


Pursuant to its powers under § 10 of Cannabis Law, the Cannabis Control Board (Board) has the discretion to limit the number of licenses for each type of license issued.

In addition to AUCC and AUCP licenses that are eligible for transition, the Office estimates that over 1,000 licenses in the licensing application window opening on Wednesday, October 4, 2023, including provisional and final licenses may be issued. These estimated allocations include:

- Retail Dispensary: 500 - 1000
- Microbusiness: 220
- Indoor Cultivation (Tier 1): 20
- Indoor Cultivation (Tier 2): 20
- Processor (Type 1: Extracting, plus all activities of Types 2 and 3): 55
- Processor (Type 2: Infusing and blending, plus all activities of Type 3): 100
- Processor (Type 3: Packaging, labeling, and branding, including for the performance of white labeling agreements only): no allocation limit, Office will review on a rolling basis
- Distributor: 30

Please note these numbers are only estimates, and the Board has the authority to determine the final number of licenses issued, as well as the timing for the issuance of such licenses. Additionally, the number of distributor licenses available, is specific to stand-alone distributors and does not include processors who wish to also obtain a distributor license to distribute their own cannabis products.

Please also note, that this is only the first application window for general adult-use cannabis licensing. There will be additional application windows in the future and licenses not included in this application window will be made available in future licensing application windows.

**IMPORTANT**: the issuance of licenses, especially provisional licenses for retail dispensaries does not mean that there will be 1000 stores open immediately. After an applicant receives a provisional license, they will need to work to find a compliant location for their retail dispensary, receive approval from the Office, and meet all required application requirements. Based on experience of operators in other states operationalizing a provisional license could take 6-12 months depending on the time to find a retail location and conduct renovations.

3. **How are the number of licenses available for this application window determined?**



Pursuant to its powers under § 10 of Cannabis Law, the Board has the discretion to determine the number of licenses issued. The proposed number of licenses available in this application window was determined to help facilitate a controlled adult-use market rollout to help ensure small businesses can compete and thrive. Further, the proposed license allocation also reflects the current needs of the market, such as prioritizing the licensing of additional retail dispensaries.  Future application windows will conduct a similar market analysis and will make available additional licenses to continue to adjust and adapt to the needs of the market, among other factors consistent with the findings of the Office and Board in its reports.

**4. What are the components of the cannabis license applications?**

The cannabis license applications contain general questions about your business, ownership, participation in workforce or training programs offered by the Office, premises, and operating activities.

If you are applying as a Social and Economic Equity (SEE) applicant, you will have additional questions and documentation to upload. The SEE application section collects information from applicants seeking to determine whether the applicant is SEE-qualified. More information about the SEE program is available on the Office's website, and additional information on the SEE application section is available in the "Social and Economic Equity" section below. .

Information about your True Parties of Interest (TPI) will be collected via your applicant entity disclosure in the TPI Portal. This is a separate process that can only be completed once your cannabis license application has been submitted. After submitting your application, you will receive an email with a link to the TPI Portal to complete this step. More information about TPI and the TPI disclosures is available in the "How to Complete the Application" section below and at the TPI Guidance.

All applicants must submit proof of control over a proposed premises to complete the application and be considered for a final license, except applicants for retail dispensary and microbusiness licenses. More information is available in the "Premises" section below.

If more time is needed to secure a premises, an applicant for a retail dispensary or microbusiness license can apply without premises details. If deemed eligible and selected for a license, they will become provisionally approved and have twelve (12) months to secure a premises and submit documentation before being licensed on a final basis and operational.

**5. Can I apply if I do not have a premises for my business?**



**Office of Cannabis Management**

**General Licensing Application**
**Frequently Asked Questions**

All applicants, except those seeking retail dispensary and microbusiness licenses, must submit proof of control of their proposed premises to complete an application.

*PLEASE NOTE: Do not apply for a cultivator, processor, or distributor license if you do not have control over the proposed licensed property. The application system may allow cultivators, processors, and distributors to apply without premises information, however, only applications submitted with proof of premises will be considered as eligible for a license. Be aware the application fee is non-refundable.*

**6. How do I prove that I have control over a premises?**

You can prove that you have control over a premises by uploading an executed deed if you own the property, or by uploading an executed lease agreement if you are leasing the property. These documents must outline all common terms associated with a lease agreement and must show that the applicant possesses or has the right to use sufficient land, buildings, and other premises as specified in the application to properly carry out the activities for which a license is sought. More information is available in the "Premises" section below.

**7. How is the premises requirement different for retail dispensary and microbusiness (with retail authorization) applicants?**

There are two paths for retail dispensary and microbusinesses (with retail authorization) to complete the application:

a) *Provisional License:* If you do not have control over a premises at the time of application, you may submit the application without these details and obtain a provisional license. After receiving a provisional license, you may take up to twelve (12) months to submit proof of control over a premises. Once the Office reviews the additional information, a final license may be issued. Only after a final license is issued with a license certificate can adult-use cannabis operations begin.

b) *Final License:* If you already have control over the premises at the time of your application, whether by lease agreement, or ownership (as shown through a deed), you may identify the premises on your application and submit a complete application for the Office's review. A premises cannot be used for licensed cannabis activities without prior Office approval. More information is available in the "Premises" section below.

**8. What is a provisional license?**



Provisional licenses are for retail dispensary and microbusiness applicants without control over a premises. A provisional license does not authorize operating activities under the Cannabis Law, but it provides assurances to stakeholders, like investors, landlords, and lenders, that the application satisfies certain conditions necessary and relevant to the license type sought, subject to completion of outstanding items required to obtain a final license. In this way, the provisional license may help applicants secure a premises or funding for their cannabis operation before a final license is issued.

Provisional licensees have twelve (12) months from the date of provisional license to complete their licensing application by providing updated information on their TPI and premises details in order to obtain a final license.

### 9. What are the application windows for each license type?

The application window for the cultivator, processor, distributor, retail dispensary and microbusiness licenses will open on Wednesday, October 4th, 2023.  The application window will close on Monday, December 18, 2023, at 5:00PM Eastern Time.  To be considered, all applications must be submitted before 5:00PM on December 18, 2023.

For retail dispensary and microbusiness applicants that are applying **with proof of control over the proposed licensed premises**, there will be an expedited application window that will close on Friday, November 17, 2023, at 5:00PM Eastern Time. The Office will begin the review of applications submitted during this window to expedite the review of retail dispensary and microbusiness applications.  The retail dispensary and microbusiness application window will remain open after November 17, 2023, until December 18, 2023, for applicants that apply after November 17, or are applying for a provisional license (without proof of control over the proposed licensed premises). You can submit a provisional license retail dispensary or microbusiness application anytime during the open application window.

Applicants who are not issued a license in this application window, must resubmit an application to be considered in a future application licensing window.

### 10. How will applications be selected for licensure?

Applications for each license type will be collected during the application windows and pooled based on the license type sought, SEE certification and provisional status. Applications for retail dispensary licenses, both provisional and final, will be further split evenly between New York City and the rest of the state. More information on the SEE criteria is available below and at the Office's SEE guidance.



After an application window closes, applications will be queued (ordered) in their distinct pools using a randomized process. Adult-use cultivators, certain processors, distributors, microbusiness, and retail dispensary license types will have a limited number of licenses available for this application window. The number of licenses available is determined by the Board with estimates of such number of licenses provided above in *Question 2*. Applications will be reviewed until t the number of licenses allocated for this application window have been issued. Therefore, an applicant's queuing order is very important as those higher in the queue will be reviewed first, and it is possible not all applications will be reviewed before all licenses have been issued. Applicants who are not issued a license in this application window must resubmit an application to be considered in a future application licensing window.

AUCCs and AUCPs will be reviewed outside of the queuing process. More information is available at the Conditional Licensee Transition FAQ.

### 11. How will scoring be used in application review?

The application window opening on Wednesday, October 4, 2023 will **not** be using a scoring process to determine which applicants are issued a license but rather a random order "queuing" process. More information on this random order queuing process is available in *Question 10* above. Applicants must meet all eligibility criteria and submit a complete application to be issued a license.

Please note, the Board may create applications with competitive or scored elements in future application windows.

### 12. Can I apply for two licenses at the same time?

Yes, you may submit applications for several license types. However, pursuant to regulations, **you may not apply for more licenses than those for which you are authorized as a True Party of Interest (TPI)**. For example, an individual cannot be a TPI (own and control) more than three adult-use retail dispensary licenses. Further, final licensing by the Cannabis Control Board must comply with TPI regulations. More information is available at the  TPI Guidance.

Additionally, you will have to pay the $1,000 non-refundable application fee for each application submitted and must pay the associated license-specific fees upon final licensure.

### 13. What are the fees to apply for a license?

Applications require payment of a non-refundable $1,000 application fee, except for applicants applying as SEE, which require payment of a non-refundable $500 application fee. Per the regulations, SEE applicants receive a 50% reduction in



application and licensing fees. If an applicant applies as a SEE but is unable to provide the required documentation to prove SEE status, the applicant will not be considered for licensure in this application window.

## 14. What are the licensing fees?

The licensing fee schedule is available on the Office's website. Licensing fees are only collected from applicants issued a license by the Board. License fees must be paid prior to receiving your license number and license certificate. Those who qualify as a SEE applicant will receive a 50% discount on cannabis license fees.

All licensees who are awarded a provisional retail dispensary or microbusiness license may defer payment of license fees until final licensure.

## 15. How long will each license be valid?

An adult-use cannabis license is valid for two years after the date it is issued and can be renewed every two years.

## 16. If I'm issued a license, do I need to be ready to begin operating right away?

No, however, if you have obtained all the necessary documentation and have control over premises, you may commence operations as soon as a final license has been issued and you receive approval from the Office to commence sales. Applicants for retail dispensary and microbusiness licenses may also pursue a provisional license, giving them twelve (12) months to submit all outstanding TPI and premise-related information required for final licensure. A provisional licensee cannot begin adult-use cannabis operations until a final license is issued.

## 17. Is a provisional license available for all Adult-Use licenses types?

At this time, a provisional license is only available to retail dispensary and microbusiness applications. This allows those applicants to apply without proof of location.

## 18. What types of cultivation does an adult-use cultivator license allow?

There are four cultivation types: indoor, outdoor, mixed light, and combination. For each type, there are five cultivation canopy tiers, ranging from Tier 1 (the smallest) to Tier 5 (the largest).

**Please note:** The Board will only be licensing indoor Tier 1 and Tier 2 cultivators in the application window opening on Wednesday, October 4, 2023, for non-AUCC licensee applicants. Future application windows will include a greater



variety of cultivator licenses, as well as an application for the cooperative and collective license type.

Mixed light is cultivation of mature cannabis in a greenhouse, hoop-house with cannabis cultivation lights, glasshouse, conservatory, hothouse, or similar structure, using a combination of sunlight and lighting with all lighting requirements meeting the photosynthetic photo efficacy (PPE) standards for the mixed-light tier set out in section 125.1 of the adult-use regulations.

The combination tier is a combination of outdoor and mixed light canopy. No license allows the cultivation of cannabis both indoors and outdoors. The adult-use regulations provide a pathway for licensed cultivators to change their canopy tier, canopy type, or maximum cultivation canopy. The Office will provide more guidance on the process to request such a change in the future.

### 19. What are the canopy tier sizes?

Pursuant to regulations, indoor, outdoor, and mixed light cultivation tier canopy sizes are:

- Tier 5. Greater than 50,000 square feet and up to but not exceeding 100,000 square feet;
- Tier 4. Greater than 25,000 square feet and up to but not exceeding 50,000 square feet;
- Tier 3. Greater than 12,500 square feet and up to but not exceeding 25,000 square feet;
- Tier 2. Greater than 5,000 square feet and up to but not exceeding 12,500 square feet; or
- Tier 1. Up to but not exceeding 5,000 square feet.

Combination licenses include an outdoor license of the same canopy size limits stated above, and an additional allocation of mixed-light cultivation canopy equal to the following:

- Tier 5. Greater than 15,000 and up to, but not exceeding, 30,000 square feet;
- Tier 4. Greater than 12,500 and up to, but not exceeding, 15,000 square feet;
- Tier 3. Greater than 6,250 and up to, but not exceeding, 12,5000 square feet;
- Tier 2. Greater than 2,500 and up to, but not exceeding, 6,250 square feet; or
- Tier 1. Up to, but not exceeding, 2,500 square feet.



### 20. What transition options do AUCC and AUCPs have?

More information is available at the AUCC and AUCP Transition Guidance document.

### 21. Should provisional CAURD licensees apply for an adult-use retail dispensary license?

Due to the pending litigation challenging the validity of the CAURD program, provisional CAURD licensees may want to apply for an adult-use retail dispensary license during this application window. Applicants should apply with the business entity that will operate the license.  If this business entity is different than the entity that applied for under the CAURD program, the Office will request additional information to support the change from the CAURD entity on file with the Office.

Applicants must submit their CAURD application number as supplied by the Office in their complete format, with all dashes, letters, and numbers for proper identification. Please note, a provisional CAURD licensee will not be issued two licenses if they are selected and able to move forward under the CAURD program and the general licensing process.

Additionally, such applicants will have to pay the $1,000 non-refundable application fee to complete submission. Applicants who qualify for SEE will be eligible for a 50% reduction in application and licensing fees. The Office is actively exploring options for waiving future licensing fees for eligible CAURD licensees.

### 22. How many applications can one applicant submit?

A licensee, or a TPI of a retail dispensary licensee, can have a direct or indirect financial or controlling interest in up to three (3) adult-use retail dispensary licenses. As such, pursuant to regulations, an applicant may apply for no more than 3 retail dispensary licenses. The Board, however, will not be issuing more than one license per applicant during the application window opening Wednesday, October 4, 2023.  Further, final licensing by the Board must comply with TPI regulations. More information on TPI rules is available at the Office's TPI Guidance.

Please note, you will have to pay the $1,000 non-refundable application fee for each application submitted.

### 23. What cultivation license types will be available for applicants who are not AUCC?



The Board will only be issuing indoor Tier 1 and Tier 2 cultivator and microbusiness licenses for non-AUCC applicants in the application window opening Wednesday, October 4, 2023. Future application windows will include greater variety of cultivator licenses, as well as an application for the cooperative and collective license type.

### 24. What does an adult-use processor license authorize?

Based on the authorizations requested during the application process, the adult-use processor license will allow the processor to conduct some, or all, of the following activities:

- Type 1: Extracting, plus activities under Type 2 and 3;
- Type 2: Infusing and blending, plus activities under Type 3; and
- Type 3: Packaging, labeling, and branding, including entering into white labeling agreements only.

Please note that applicants that can demonstrate that they operate an existing processing facility, at which they plan to process cannabis product, including demonstrating existing full GMP certification, may be pooled and queued separately from other applicants for a select number of available processor license types at the discretion of the Board, in accordance with SEE prioritization.

**Applicants applying for a Type 3 Processor licensing for *branding purposes only* may enter their entity address as their "facility location address" in the application.  All other Type 3 Processor applicants (for any and all packaging and labeling that will be handling cannabis in New York State) must apply with a suitable facility location.**

### 25. What license can I apply for if I currently have an AUCP license?

More information is available at the Conditional Cultivator and Processor Transition Guidance.

### 26. I completed a workforce or training program offered by the Office. Does that make my application eligible for any specific consideration?

A person who completed a workforce or training program offered by the Office, will be prioritized for certain licenses in the application window opening Wednesday, October 4, 2023, and in future application windows as well. To receive the prioritization, the person who completed the workforce or training program must be the majority owner of an applicant entity via direct ownership. Such applicants may apply to all available adult-use licenses but will be pooled



and queued separately from other applicants for a select number of the full and provisional microbusiness license types and processor license types.

Such applicants who also qualify for SEE certification will receive a 50% reduction in application and licensing fees. Additionally, all qualified SEE licensees will be eligible for incubator technical training from the Office.

## A. Eligibility Basics

### 27. Am I eligible for an Adult-Use license?

In addition to the premises requirements stated above, you must be over the age of 21 to be eligible for a cannabis license. Individuals or entities who have convictions outlined in Section 137 of the Cannabis Law may be ineligible for licensure. Those specific offenses include individuals with any of the felony convictions listed below within the past five years:

- Fraud
- Money laundering
- Forgery or other unlawful conduct related to owning and operating a business; or
- Hiring, employing, or using a minor in transporting, carrying selling, giving away, preparing for sale, or peddling any controlled substance to a minor; or selling, offering to sell, furnishing offering to furnish, administering, or giving any controlled substance to a minor.

Pursuant to Cannabis Law, you are also not eligible for a license if you:

- Have been found to have engaged in unlawful business practices relating to cannabis pursuant to Cannabis Law Section 138-a, since May 3, 2023; or
- Are a chief of police, police officer, or subordinate of any police department in New York State.

Additional eligibility restrictions apply to AUCC and AUCP licenses, as well as ROD and ROND licenses. The eligibility requirements for ROD and ROND are in regulations as follows:

- A ROND applicant must be an existing Registered Organization (RO) in good standing with the Office and complete a transition process with the Office.
- A ROD applicant must be an existing RO in good standing with the Office with four medical dispensing facilities open and operational in New York State,



complete the required transition process, and pay the special fee outlined in the Cannabis Law and corresponding regulations.

Further, all license types have restrictions on ownership and control. More information is available at the TPI Guidance.

### 28. What types of businesses are eligible to apply?

Any business – regardless of its business structure, can apply for a license or provisional license.  Applicants are strongly advised to apply as the business entity they intend to hold the license.  Pursuant to Cannabis Law section 128, except under limited circumstances, licenses are not transferrable, and once issued they are tied to the entity issued the license.  **Please note, applicants cannot update their FEIN ( or business entity after a license is issued.**

### 29. Is there an age requirement to be issued a cannabis license?

According to Section 137 of the Cannabis Law, no one under the age of 21 can be issued or be TPI to a cannabis license.

### 30. Do you have to be a US citizen to be issued a cannabis license?

You must be a US citizen or a lawfully permitted resident (green card holder) for permanent residence in the United States to be issued a cannabis license or become a TPI in a license.

If you are a corporation, then each of the principal officers and more than one-half of its directors must be citizens of the United States or personal lawfully admitted for permanent residence in the United States.

For purposes of citizenship, the Office interprets the citizenship requirement to extend eligibility to any individual who is:

- A citizen of the United States;

- An alien lawfully admitted for permanent residence in the United States;

- Foreign nationals from reciprocal treaty countries set forth in a list maintained by the U.S Department of State.

- Foreign nationals from any other country who can satisfy the Authority that his/her country has a treaty with the United States that permits citizens of both countries to engage in trade with and/or work in each other's country on a reciprocal basis.

Please note that a citizen of another nation that qualifies under this section is not required to be physically present in the United States to obtain a license.



However, if such an individual intends to work at the licensed premises, it will be necessary for the person to demonstrate that they have the appropriate visa to enter and work in the United States. True Parties of Interest must meet all other requirements to be eligible to hold the license being sought.

### 31. Am I eligible for an Adult-Use license if I own a business that has a liquor license?

Yes. You may apply for a cannabis license if you own a business that holds a liquor license. However, please note that if your application is successful and you are selected for licensure, **you cannot hold a license or permit to sell alcoholic beverages on the same premises as a retail dispensary**. Additionally, the Office encourages you to check with the New York State Liquor Authority to ensure there are no applicable prohibitions to your liquor license.

### 32. If I have a conditional cultivator or processor license, how will I know whether I am eligible to transition to a non-conditional license?

Good standing with the Office is required to transition from an AUCC or AUCP license to a non-conditional adult-use license. More information on good standing is available in the Conditional Cultivator and Processor Transition Guidance.

### 33. How do I know if I qualify as a SEE applicant?

Applicants are required to complete questions about SEE qualifications on the general licensing application. More information is available in the "Social and Economic Equity" section below and at the Office's SEE guidance.

### 34. What is a Labor Peace Agreement and when must I complete one?

All licensees must enter into a Labor Peace Agreement (LPA) with a bona fide labor organization prior to final license issuance. An LPA is an agreement between an employer and a union where the employer agrees not to oppose unionization and the union (that is attempting to organize the workforce) agrees not to strike or otherwise stop work. An LPA is not a collective bargaining agreement (union contract).

As defined in the Adult-Use Regulations, a bona fide labor organization means a local labor union:

i. That represents employees in this state with regard to wages, hours and working conditions.
ii. In which officers have been elected by secret ballot or otherwise in a manner consistent with federal law; and
iii. That is free of domination or interference by any employer and has received no improper assistance or support from any employer.



**35. I was previously delinquent filing my taxes or paying an amount owed to a local, state, or federal government and I am repaying the debt through a payment plan. Will my application be denied because of this?**

No. An individual would not be considered delinquent if they are, at the time of application, still repaying the debt pursuant to a payment plan or other installment agreement with the government to which the amount is owed. Despite this, it is possible that the circumstances of the delinquency may mean your application would be denied for a different reason, such as if the circumstances of the delinquency would also make the individual a person forbidden to traffic cannabis as set forth in Section 137 of Cannabis Law.

**36. I received an email asking for personal information from the Office and I'm not sure if I can trust it. How do I know if a communication that says it's from the Office or the Board is legitimate?**

The Office or Board will never ask licensees or applicants for sensitive personal information over e-mail, and the Office or Board will never provide your e-mail address to other parties for the collection of that information.

However, you will receive e-mails from the Office asking you to submit personal information through New York Business Express (NYBE), New York State's secure platform. E-mail addresses from the Office end in "@ocm.ny.gov" and e-mails automatically generated from our system end in "@its.ny.gov".

If you're uncertain if an e-mail you received is valid, please forward to info@ocm.ny.gov. You can also go to cannabis.ny.gov/phishing-awareness and compare it with known phishing or scam attempts.

## B. How to Complete the Application

**37. Where can I apply for a license?**

The Office's website licensing page will provide links to the online application located within New York Business Express (NYBE). If you already have a NYBE Business Profile linked to the applicant, then you will need to apply using the NY.Gov login that is linked to the existing NYBE profile. If you do not have a NYBE Business Profile linked to the applicant, then you will need to create a NYBE Business Profile using a NY.Gov login to start your application.

**38. What do I need to do before applying?**



The first step before applying for a cannabis license is to form the business that you intend to use for the licensed activity. This requires registering with New York State as a New York or non-New York company and the IRS to obtain your formation documents and Federal Employer Identification Number (FEIN aka EIN). **Please note, applicants cannot update their FEIN after applying.**

See New York State's official guide on starting a business for more information.

### 39. Who should submit the application?

The online application must be submitted by you, the applicant, (if an individual sole proprietorship); by a managing member (if a limited liability company); by an officer (if a corporation, including a non-profit); or by a partner (if a partnership).

If you obtain help in completing your application, such as a consultant or lawyer, this will require additional reporting on your application. Please note, certain TPI will also be required to complete personal or entity history disclosures. More information is available at the Office's TPI guidance.

### 40. I'm creating a NYBE Business Profile for the applicant, and I'm being asked to provide an address for the applicant. I don't have an address for the applicant at this time. What address do I enter in NYBE?

If you do not have a permanent place of business, you must enter the home address of the owner or one of the partners, members, or officers of the business. Please note, the Office will not notify you if sending official communications related to your application to this address, but generally communications will be sent by email to the individual listed as the primary contact for the application. You will identify your application's primary contact when completing your application, not in your NYBE Business Profile.

### 41. Can I change my Federal Employment Identification Number after applying?

No. You cannot change your FEIN on an application you have already submitted. You must reapply with a brand-new application if you need to change your FEIN associated with the license as it is linked with other New York State agencies in NYBE. For this reason, all applicants are advised to apply with the business entity that they intend to be issued the license.

### 42. Will I need to pay a lawyer or other professional to help me complete the application?

You are not required to work with anyone who is not an owner or true party of interest to the applicant to complete your application. You may complete this



application without outside assistance. However, there is nothing prohibiting you from getting help from any source in completing your application. If you obtain help in completing your application, please note that this may require additional reporting on your application.

### 43. Can I save my partially completed application to continue later?

Yes, an application can be completed over multiple sessions. Be sure to save your progress as you go and pay close attention to submission deadlines outlined by the Office.

### 44. How is the application fee paid?

The non-refundable application fee is paid online via credit card or ACH before submitting the application to the office. Please keep a copy of the confirmation page for you records. You will also receive a confirmation email that your application was submitted.

### 45. If I do not get a license on this application, can the application fee be credited towards a future application?

No. Payment will be required for each application submission**.** Per the regulations, SEE applicants will receive a 50% reduction in the cost of all application and license fees.

### 46. If I need help completing the application, who can I contact?

If you have questions about license eligibility, license authorizations and conditions, the application process, and the application itself that is not answered in the Office's guidance, please email us at info@ocm.ny.gov or call us at 1-888-OCM-5151 (1-888-626-5151).

SEE applicants are eligible for reduced application and licensing fees and other technical support and assistance. More information on the SEE components of the application is available in the "Social and Economic Equity" section below and at the SEE guidance.

Please note, the Office is not able to provide business or legal advice to applicants regarding license eligibility. While the Office can confirm whether certain types of documents are examples of acceptable documentation, the Office is unable to determine whether an applicant is eligible or whether specific documents are acceptable proof of a specific individual's eligibility. If you believe you require business or legal advice, you may need to consult a professional to advise you personally.



For technical assistance with NYBE contact the New York State Business Information Center.

### 47. What documents do I need to prepare to upload in the application?

While completing your application, you will be asked to upload multiple documents. Please be aware you can only upload in PDF or png. (picture) format.

**All applicants will be required to upload:**

- A valid photo ID issued by a local, state, or federal government
- Up-to-date business formation and organizational documents such as:
  - Certificate of incorporation, certificate of limited partnerships, certificates of authority, articles of organizations, charters, bylaws, partnership agreements, operating agreements, agreements between any two or more persons of the applicant that relate in any manner to the assets, property or profit of the applicant
- The entity's Capitalization Table listing specific holders of ownership above 10% of interest if the applicant is a private entity, and 5% of interest for applicants who are publicly traded entities.
- Documentation supporting the applicant's SEE eligibility, including but not limited to proof of address and residency, proof of conviction, and proof of income, if applicable.
- Subsidiary Company Information (if applicable, please refer to the Office's regulation related to naming convention of subsidiary companies):
  - Name
  - FEIN
  - Date Created
- Documentation explaining a continuity plan in case the applicant, owners, or TPIs decide to leave the business, there is a material change in the applicant's ability to operate the business, or the applicant becomes otherwise unable to operate the business.
- Copy of all agreements with statewide or local bona-fide building and construction trades organizations for construction work on its licensed facilities if the applicant has twenty-five or more employees and has entered into such agreements.
- A copy of a signed labor peace agreement with a bona fide labor trade organization.
- If the applicant is incorporated or otherwise authorized to do business as a foreign (non-New York incorporated) company in the State of New York, the Department of State ID issued on the certificate and a copy of the certificate.



- A vendor contract or purchase order for the licensees' electronic inventory tracking system that can integrate with the Office's seed-to-sale inventory tracking system pursuant to Section 125.7(a)(3) of Title 9 (cultivator and processor applicants will be required to email this information, as instructed by the Office, prior to final licensure).
- Documentation explaining the circumstances of a conviction of a felony within the past five years involving fraud, money laundering, forgery or other unlawful conduct related to owning and operating a business, if applicable.
- Documentation explaining the circumstances of a conviction of a felony within the past five years for hiring, employing, or using a minor in transporting, carrying, selling, giving away, preparing for sale, or peddling, any controlled substance to a minor, or selling, offering to sell, furnishing, offering to furnish, administering, or giving any controlled substance to a minor (if applicable)
- The basic contact information of any law firm, counsel, or consultant that assisted you with the application.
- A copy of the certification of completion if you have completed any workforce or training programs offered by the Office (if applicable)
- **If you are seeking an adult-use processor license,** other than for applicants that are applying with an existing compliance facility, proof of a qualified third-party Good Manufacturing Practices (GMP)  audit is required within twelve (12) months of commencing licensed operations, and if you are planning to perform extraction using a volatile or hydrocarbon extraction method, before commencing operations, you must submit:
  - o A final certification letter from a licensed professional engineer or registered architect which certifies the completed installation of a professionally designed, commercially manufactured extraction system, that is compliant with applicable state or local fire, safety or building codes;
  - o A letter from the municipal jurisdiction's fire marshal, or their designee, stating that a final inspection of the facility has been conducted and that the processor has demonstrated compliance with applicable fire codes and/or regulations; and
  - o A certification of occupancy, or equivalent document, from local building official that permits for extraction related rooms or areas have been closed as applicable.
- **For all final licenses :**
  - o Executed Deed or Lease Agreements for the proposed premises that shows that the applicant possesses or has the right to use



sufficient land, buildings, and other premises as specified in the application to properly carry on the activities for which licensure is sought.

- o A copy of any other license(s) issued by state or federal authorities related to operations of the premises. A Certificate of Occupancy or its equivalent, demonstrating compliance with all local building.

- **If applying for a final Retail Dispensary, Microbusiness, or ROD license**, the following must be collected before a final license is issued (these materials are not required to apply for a provisional license):
  - o If you are selling non-cannabis products, a Certificate of Authority issued by the New York State Department of Taxation and Finance for the premises.
  - o A copy of your Notice to Municipality submitted to the appropriate party, available on the Office's website. A copy of this Notice will be requested when you submit information regarding the retail premises.
  - o A list of all management staff, including first name, last name, and title, and indicating the employee in charge.

### 48. Will I be required to provide a Community Impact Plan?

A Community Impact Plan is not required at the time of application so as not to create additional barriers to accessing licensure and overburdening small businesses seeking to get established. However, upon renewal, licensees will be required to provide their Community Impact Plan and proof of compliance with such plan, demonstrating how the licensee has benefitted communities and individuals from communities that were disproportionately impacted by the enforcement of cannabis prohibition, in accordance with the Cannabis Law.

### 49. Will the Office collect and review information about TPI?

Yes. Applicants will be required to disclose certain TPI, who must submit a personal or entity history disclosure to the Office for review. All required TPI disclosures must be received and reviewed before a license may be issued. More information is available about TPI rules at the TPI guidance..

The Office will only consider for a final license an applicant whose ownership structure does not violate any of the rules under the Cannabis Law or regulations and that otherwise meets all eligibility requirements.

### 50. Which of an applicant's TPI are required to be disclosed?

An applicant must disclose the following TPI:



- Any TPI with a non-ownership interest in the applicant or the disclosed entities in its ownership structure, such as executive officers and other persons with control over the business; and
- If the applicant is a privately held entity, any owner TPI with a proportional ownership stake over 10%;
- If the applicant is a publicly traded entity, any owner TPI with a proportional ownership stake over 5%; and
- any owner who contributes to the applicant's SEE certification; and
- any other TPI as determined by the Office.

If a TPI qualifies as both a non-owner TPI and an owner TPI (for example, a company President who owns 12% of the company's shares), they must be disclosed per the non-ownership disclosure rules.

## 51. How will my True Parties of Interest (TPI) submit their required history disclosures?

On your application, you will designate a "responsible party" to submit the applicant's own TPI disclosure. On this disclosure, in addition to the other items required for a TPI disclosure, you will provide the following information for all owners, managers, and other TPI, which includes:

- Individual or entity name
- Contact phone number and email address
- Title and role in their associated entity
- Ownership stake in their associated entity.

Every individual or entity listed as a TPI on the applicant's own TPI disclosure will be emailed and asked to submit their own history disclosures through a secure portal. You will not be required to collect or submit any personal information from TPI beyond their contact information and ownership stake. Be sure to include an accurate, active email address for each TPI. Be advised that a delay in your TPIs submitting their disclosures will delay your application's review.

Any TPI deemed to have a financial and controlling interest will also be required to obtain a **fingerprint-based background check** and to undergo a New York State Department of Taxation and Finance tax clearance check.

Applications will not be reviewed by the Office until **all** TPI disclosures have been submitted. The applicant is responsible to make sure all their identified TPIs submit this disclosure.

## 52. What information do I need to prepare for my TPI disclosure?

If you are submitting a personal history disclosure, you will be asked to provide the following information:



- Personal identification information, including a valid photo ID
- Residence and employment history for the last five years
- Convictions, sanctions, and other disciplinary actions, including documentation
- Cannabis licenses or applications in other states, including documentation
- All goods and services agreements that you are party to, including documentation
- Disclosure of all cash or loans that you have with an applicant or licensee, including documentation.

If you are a submitting an entity history disclosure, you will be asked to provide the following information :

- Business identification information
- Business structure, formation, and history, including documentation
- Business finances
- Litigations and violations involving the business, including documentation
- Cannabis licenses or applications in other states, including documentation
- All goods and services agreements that the business is party to, including documentation
- Disclosure of all cash or loans that the business has with an applicant or licensee, including documentation.

### 53. What specific documents do I need to prepare for my TPI disclosure?

Individuals that are TPI must upload the following documents in PDF or png (picture) format:

- Valid Photo ID
- Documents related to any convictions, including an affidavit, certificate of disposition, and/or certificate of relief from disabilities (if applicable)
- Documents related to any pending charges, including the accusatory instrument (if applicable)
- Cannabis licenses from outside New York State (if applicable)
- Documents describing the nature of all cash or loans given to a cannabis licensee or applicant (if applicable)

Entities that are TPI must upload the following documents in PDF or png. (picture) format:

- Certificate(s) of Good Standing for all states where the entity is authorized or approved to do business



- Agreements, contracts, mergers, consolidation, other financial arrangements with other New York State cannabis businesses (if applicable)
- Formation documents, such as:
  - o Articles of Organization, Certificate of Incorporation, or similar documentation
  - o Charter
  - o Operating agreement, bylaws, or partnership agreement
- Any goods and service agreements entered into by the TPI (if applicable)
- Bonds, loans, trust deeds, notes, debentures, or other forms of indebtedness
- Court documents, including a list of all parties involved in legal actions, for (if applicable):
  - o Litigation within the last three years;
  - o Violations of state or federal regulations, statutes, or codes; and
  - o Judgment, orders, consent decrees, or consent orders.
- Cannabis licenses from outside New York State (if applicable)
- Documents describing the nature of all cash or loans given to a cannabis license applicant (if appliable)

## 54. How will the Office calculate the percentage of shares that a TPI holds in a license?

The Office will consider a person's share in a license to be the greatest of that person's percentage share of:

- Current voting shares;
- Future voting shares;
- Current equity shares; or
- Future equity shares.

Ownership will be evaluated based on proportional stake in the applicant or licensee. Proportional ownership interest means the share that the party has in the applicant or licensee considering all intermediary levels of ownership between the party and the applicant. For example, a party that is a 100% owner of the Intermediary Business, which is a 51% owner of the Licensed Business (the entity receiving the cannabis license), would be considered to have 51% proportional ownership in the Licensed Business.

For the purposes of determining the total shares outstanding for future ownership, the Office will use a modified definition of fully diluted share count, calculating a TPI's future ownership interest based on the entity's fully diluted share count (inclusive of all restricted stock units, options, warrants, or any other



units of ownership that can be converted into a share of voting stock or equity), LESS contingent or future shares owned by persons whose financial or controlling interest in an entity is active.

More information is available at the TPI guidance and FAQs for retailer and supplier licensees.

### 55. Can I change my TPI?

Applicants can change their TPI prior to receiving their final license. The Office will make guidance available on the process to submit and request a change to the TPI, and the associated fees, after a license has been issued. SEE applicants may only modify their TPI prior to receiving their final license in accordance with the sole control requirements; more information is available about these requirements in *Question 66* below.

### 56. How can I talk with someone about my application?

Send an email to AUlicensing@ocm.ny.gov with your application number, applicant entity name, and specific questions, and we will respond as soon as we are able. Note, sending additional emails will add to the volume of inquiries already being received. Please allow the Office time to respond to your email before sending a follow up.

More information is available on application technical assistance and support available to SEE applicants in the "Social and Economic Equity" section below and at the SEE guidance.

## C. Social and Economic Equity

### 57. What does it mean to be a SEE applicant?

Pursuant to §87 of Cannabis Law, SEE applicants include individuals who have lived in communities disproportionally impacted by the enforcement of cannabis prohibition (CDI) and other underrepresented groups including minority and women owned businesses, distressed farmers, and service-disabled veteran-owned businesses, as defined under the Cannabis Law.

More information is available at the SEE guidance.

### 58. How will qualified SEE applicants receive prioritization in access to adult-use cannabis business licenses?

License review prioritization for adult-use cannabis licenses will be afforded to SEE applicants qualifying as Extra Priority, individuals from communities



disproportionately impacted, distressed farmers, minority-owned business, or women-owned-businesses, and service-disabled veterans in accordance with all applicable laws.

SEE applicants will be asked to identify all SEE groups they qualify for during the application and will be pooled based on the license type sought, SEE certification, and provisional status. After an application window closes, applications will be queued (ordered) in their distinct pools using a randomized process.

Adult-use cultivators, certain processors, distributors, microbusinesses, and retail dispensaries will have a limited number of licenses available during this application window. The number of licenses available will be determined by the Board with estimates of such number of licenses provided above in *Question 2*.

SEE applications will be reviewed until the Board has issued the number of licenses allocated for this application window. Therefore, an applicant's queuing order is very important as those higher in the queue will be reviewed first, and it is possible not all applications will be reviewed before all licenses have been issued. Applicants who are not issued a license in this application window must resubmit an application to be considered in a future application licensing window.

All SEE applicants will receive 50% reduction in application fees and will be eligible for application support provided by the Office. All qualified SEE licensees will be eligible for a 50% reduction in annual licensing fees and incubator technical training from the Office. Additionally, SEE licensees who are issued a provisional retail dispensary or microbusiness license may defer payment of licensing fees until they transition to a final license.

AUCCs and AUCPs applying for non-conditional licenses are also eligible to apply for SEE certification but will be reviewed outside of the SEE queuing process. More information is available at the Conditional Licensee Transition FAQ.

### 59. Can SEE applicants apply for multiple SEE categories on the application?

Yes, a SEE applicant can apply on the application for multiple SEE categories to ensure that the applicant has an opportunity to participate in the application process as part of each such category for which they qualify.  Qualifying as multiple SEE categories will increase an applicant's chances in the random order queuing process described in *Question 10.*

### 60. Are fees different for SEE applicants?



Yes, qualified SEE applicants who have been approved by the Office will receive a 50% reduction for application and licensing fees.

### 61. Is there application support available for SEE applicants?

Yes, SEE applicants are eligible for application support, in accordance with the Office's New York Social and Economic Equity Plan and the Cannabis Law. More information will be made available soon on how to access this support.

### 62. When will my SEE eligibility be reviewed and certified?

SEE applications will not be reviewed and certified until after the application window has closed and the randomized ordering of the pools has taken place. Applications are reviewed based on the order of the queue resulting from the randomized ordering process.

### 63. How will my SEE status as an applicant be certified? What if I am deemed ineligible?

At the close of the application window, the Office will begin the process of certifying SEE status for SEE applicants according to the queuing order of their pool. If an applicant fails to prove qualification for SEE status, the Office will initiate a 30-day cure period in which applicants must submit additional documentation required by the Office to correct any deficiencies in their SEE status. If the applicant fails to provide necessary documentation within this cure period, the application will not be considered, and the license slot will be backfilled by the next SEE applicant in the queue of that pool.

### 64. What are the ownership and control requirements for SEE certification?

To qualify for SEE status, sole control of the applicant must be held by an individual or individuals from a community disproportionately impacted by the enforcement of cannabis prohibition, a minority-owned business, a women-owned business, a distressed farmer, or a service-disabled veteran. The person or persons having sole control must match the SEE category the applicant wishes to be qualified as. For example, if the applicant wishes to qualify for SEE status on the basis of being a distressed farmer, then sole control must be held by a distressed farmer(s).

### 65. What does sole control of a business mean?

A person or persons with sole control of a business must satisfy all of the following conditions:

- (i) has real, substantial, and continuing ownership of 51% equity share in the business;



- (ii) has the right to execute any material contracts;
- (iii) has the ability to exercise the authority to materially influence the day-to-day business decisions, operations, strategic priorities, capital allocations, acquisitions and divestments of the business;
- (iv) has no timed or triggered recusal provisions or side letters or side agreements related to their recusal, and
- (v) has an ability to direct decisions, voting or otherwise, such that no other person may exercise or have the ability to control the majority of voting rights or appoint or remove the majority of directors seats or their equivalent or corporate officers or their equivalent on the governing body.

If, at any time after a SEE applicant has been issued a license, the Office determines that the sole control requirement is violated, the Office may institute an action to suspend, cancel, or revoke such license in accordance with Part 133 of the adult-use regulations.

### 66. My SEE applicant has multiple individuals involved. Do we all need to meet the ownership and control requirements?

Yes, sole control must be held by the person or persons applying for the SEE status and must match the SEE category the applicant wishes to be qualified as. Any person seeking to contribute to sole control of the applicant must hold at least 1% equity share in the business.

### 67. Do I need to own a Minority-Owned Business Enterprise (MWBE) certified business in order to qualify as a Minority-Owned Business?

No. For example, New York State Empire State Development certifies MWBEs in this state. Proving you own a certified MWBE is one way to qualify as a Minority-Owned Business, but it is not the only way.

To qualify for SEE status as a Minority-Owned Business, an applicant is required to submit the following:

- Proof of ownership and sole control by one or more minority group members who have an ownership interest in the business;
- Proof that the applicant is a small business; and
- At least one of the following:
    - Proof of a state MWBE certification, on the basis of being a minority-owned business; or
    - Both
        - (i) A sworn declaration that reports the applicant's qualifications to be true and accurate and made under the



penalties provided by law that one or more members are minority group members, as defined in the Cannabis Law, who are citizens or permanent resident aliens of the United States of America have ownership interest in the business and that the business seeking licensure qualifies as a minority-owned business as defined in the Cannabis Law; and

- (ii) A statement that providing false information shall be grounds for action against the applicant or licensee including, but not limited to, the denial, suspension, cancellation or revocation of a license.

"Minority group member" as defined in Cannabis Law § 87(4)(b) shall mean a United States citizen or permanent resident alien who is and can demonstrate membership in one of the following groups:

- (i) black persons having origins in any of the black African racial groups;
- (ii) Hispanic persons of Mexican, Puerto Rican, Dominican, Cuban, Central or South American of either Indian or Hispanic origin, regard- less of race;
- (iii) Native American or Alaskan native persons having origins in any of the original peoples of North America; or
- (iv) Asian and Pacific Islander persons having origins in any of the far east countries

### 68. Do I need to own a Women-Owned Business Enterprise (MWBE) certified business to qualify as a Woman-Owned Business?

No. For example, New York State Empire State Development certifies MWBEs in this state. Proving you own a certified MWBE is one way to qualify as a Women-Owned Business, but it is not the only way.

To qualify for SEE status as a Women-Owned Business, an applicant is required to submit the following:

- Proof of ownership and sole control by one or more minority group members who have an ownership interest in the business;
- Proof that the applicant is a small business; and
- At least one of the following:
  - Proof of a state MWBE certification, on the basis of being a women-owned business; or
  - Both



- (i) A sworn declaration that reports the applicant's qualifications to be true and accurate and made under the penalties provided by law that one or more members are women who are citizens or permanent resident aliens of the United States of America have ownership interest in the business and that the business seeking licensure qualifies as a women-owned business as defined in the Cannabis Law; and
- (ii) A statement that providing false information shall be grounds for action against the applicant or licensee including, but not limited to, the denial, suspension, cancellation or revocation of a license.

### 69. Do I need to own a certified Service-Disabled Veteran Owned Business (SVDOB) to qualify as a SVDOB?

No, to qualify for SEE status as a SVDOB, an applicant is required to submit the following:

- Proof of ownership and sole control by one or more service-disabled veterans who have an ownership interest in the business; and
- Proof of a state SVDOB certification, on the basis of being a service-disabled veteran.
  - However, if the business does not receive proof of a state SVDOB certification prior to the filing of an application, the Office may temporarily accept as a conditional certification 135 (i) DD214(s) and/or NG214(s) with Line of Duty Report U.S. Veterans Administration documentation of service-connected disability rating. The business must have a service-connected disability rating of at least 10%. This conditional certification will last for 60 days pending full certification, although the Office has the discretion to extend that conditional certification while waiting for the State SDVOB certification.

### 70. What are the qualifications to be considered a Distressed Farmer?

To qualify for SEE status as a distressed farmer, an applicant is required to submit the following:

- Proof of ownership and sole control by one or more distressed farmers who have an ownership interest in the business, and
- One of the following:

- ▪ (i) Proof of that the applicant:
  - operates a farm operation as defined in section 301 of the Agriculture and Markets law. Such proof may be provided in an attestation or other means.
  - filed a Schedule F tax returns documenting operating losses during the last three (3) years.
  - filed other tax form(s) demonstrating gross cash farm income below $350,000; and
  - qualifies for an agricultural assessment by providing completed NY Tax and Finance Form RP-305; and
  - has been disproportionately impacted by incurring operating losses by
    - ○ low commodity prices
      - ▪ Proof to be demonstrated through documentation showing the decline of commodity prices over time; AND
    - ○ facing the loss of farmland through development or suburban sprawl
      - ▪ Proof can be demonstrated through providing town/zoning board meeting minutes, press and news related articles, reports, or other.

OR

- ▪ (ii) Both proof that the applicant:
  - is a small farm operator, which means they are a producer who is involved in making decisions for the farm operation involving planting, harvesting, livestock management, and marketing; or may be the owner, a member of the owner's household, a hired manager, a tenant, a renter, or a sharecropper. Proof can be demonstrated through one of the following:
    - ○ local, state, and federal tax documents;
    - ○ paystubs or proof of payroll;
    - ○ an employment agreement;
    - ○ a contracting agreement;
    - ○ a rental or sharecropping agreement; or
    - ○ any other documentation demonstrating such relationship; and
  - Has one or more members who is a minority group member, as provided by a sworn declaration that



- o reports the applicant's qualifications to be true and accurate and made under the penalties provided by law that one or more members are minority group members, as defined in the Cannabis Law, who are citizens or permanent resident aliens of the United States of America have ownership interest in the business; and
- o providing false information shall be grounds for action against the applicant or licensee including, but not limited to, the denial, suspension, cancellation or revocation of a license.

"Minority group member" shall mean a United States citizen or permanent resident alien who is and can demonstrate membership in one of the following groups:

- (i) black persons having origins in any of the black African racial groups;
- (ii) Hispanic persons of Mexican, Puerto Rican, Dominican, Cuban, Central or South American of either Indian or Hispanic origin, regard- less of race;
- (iii) Native American or Alaskan native persons having origins in any of the original peoples of North America; or
- (iv) Asian and Pacific Islander persons having origins in any of the far east countries

### 71. What is considered a small business? Does it matter for my SEE eligibility whether I am applying as a small business?

It depends. Applicants seeking to qualify for SEE status as a minority-owned business or women-owned business must prove they are a small business. SDVOBs will also have to prove they are a small business in order to qualify for their certification.

A small business must not employ more than 300 individuals. Applicants can prove they are a small business in 3 ways:

- If it has been in operation for at least three years, by showing:
  - quarterly payroll reports from the last three years and
  - any other information as requested by the Office.

  OR

- If it has been in operation for less than three years, by showing:



- - a sworn declaration that reports the submitted information relating to its business enterprise to be true and accurate, and made under penalties provided by law, that:
    - it is a small business and
    - providing false information shall be grounds for action, including, but not limited to, the denial, suspension, cancelation or revocation of a license.

  OR

- Documentation of small business operations, including:
  - any and all gross quarterly receipts;
  - by-laws; and,
  - any other information as requested by the Office.

### 72. What is a Community Disproportionately Impacted by the enforcement of cannabis prohibition or a CDI?

The Cannabis Law §87 establishes a robust social and economic equity program to prioritize and provide resources to members of communities who have been disproportionally impacted by the policies of cannabis prohibition. Communities disproportionately impacted (CDIs) refers to census tracts that have a disparate enforcement of cannabis prohibition during a certain time period, when compared to the rest of the state. Census tracts must use the same methodology and meet the same criteria established by the Office in order to identify CDIs. Residents of any state are eligible to apply.

The Census tracts identified as communities disproportionately impacted are posted on the Office's website here.

### 73. How do I demonstrate that I meet the CDI requirement?

Applicants seeking to qualify for SEE status as an individual from a CDI are required to submit the following:

- Proof of ownership and sole control by one or more individuals from a CDI who have an ownership interest in the business; and
- Proof of residence documentation demonstrating that you lived in a CDI as defined by the census tract, for at least:
  - Five years when you were below the age of 18, or
  - Seven years throughout your life



If you submit proof of address in the first year and then proof of the same address in the fifth year or the seventh year, then the Office will assume you lived in that same location for the years in between and no additional proof is needed. However, if your address is different between the first and the last year, then you must submit at least one dated document for each of the five or seven years you lived in a CDI.

Applicants can meet the aggregate seven-year requirement with years the applicant resided in a CDI below the age of 18. The five or seven years can be non-consecutive. Some examples of proof of residence documentation are:

- Education Records
- Mortgage or Lease Documents
- Property Deeds
- Government Housing or Assistance Records
- Utility bills
- Employment Records
- Government issued ID with address on it
- DMV address history/lifetime abstract
- Vehicle Registrations
- State, Federal and Local Tax returns

For more information on proof of residence documentation, you can visit How to Prove Address to Qualify as a Member of Community Disproportionally Impacted. Census tracts identified as communities disproportionately impacted are available here.

### 74. If I am an out-of-state applicant, can I establish SEE status if I lived in a community that was the equivalent of a New York CDI?

Residents of any state are eligible to apply for SEE status if they lived in a community in a state other than New York that experienced disproportionate law enforcement cannabis practices during cannabis prohibition for the requisite time period as described in *Question 73*. If the applicant's out-of-state community meets the abovementioned requirements, the Office will recognize such out-of-state community as an "Out-of-State CDI." Note that where the individual resides in a state that legalized cannabis for medical, adult use, or both, the Office will only consider disproportionate impacts of cannabis enforcement practices from a time prior to the date when that state ended prohibition, but no later than March 31, 2021.

If you are an Out-of-State CDI applicant, you must submit documentation that demonstrates the census tract you resided in out of state was disproportionately


impacted under prohibition as compared to the rest of that state. More specifically, you must establish the census tract you resided in out of state was disproportionately impacted under prohibition as compared to the rest of your state by demonstrating that the local arrest rate substantially exceeded the state's arrest rate.  You can use decennial census population data and the number of arrests within your census tract during requisite time periods (1980 – 1985, 1986 – 1995, 1996 – 2005, 2006 – 2015, and 2016 – 2021) to establish arrest rates for each time period. If necessary data is unattainable by census track, you can provide data that correspond to similar geographic areas along with an explanation why census track data is unattainable.

Applicants are encouraged to review *Question 73,* which includes some examples of acceptable documentation to prove residential address.

If the Office evaluates your application and finds you have submitted insufficient documentation to establish that your out-of-state community qualifies as a an Out-of-State CDI , the Office will give you an opportunity to cure your application as further explained in *Question 113*.

### 75. What is an Extra Priority applicant?

Per Cannabis Law § 87(3), extra priority shall be given to SEE applicants that demonstrate that an applicant:

- Is a member of a community disproportionately impacted by the enforcement of cannabis prohibition;
- Has an income lower than eighty percent of the median income of the county in which the applicant resides; and
- Was convicted of a marihuana-related offense prior to the effective date of the MRTA (March 31, 2021), or had a parent, guardian, child, spouse, or dependent, or was a dependent of an individual who, prior to March 31, 2021, was convicted of a marihuana-related offense.

To determine whether your most recent income allows you to qualify for extra priority, SEE applicants can visit What Income Do I Show to Receive Extra Priority

### 76. What is a marihuana-related offense?

Unless otherwise prohibited under Section 137 of Cannabis Law, a marihuana-related offense is defined as:

- An offense described under article 221 of the New York State Penal Law (Offenses Involving Marihuana) prior to its repeal on March 31, 2021; or


- An offense described under article 220 or section 240.36 of the Penal Law where the substance involved was Marihuana, that occurred prior to the creation of article 221 in 1977;
- An offense described under section 3382 of the New York State Public Health Law (Growing of the Plant Known as Cannabis by Unlicensed Persons) prior to its repeal on March 31, 2021;
- An offense described under article 105 of the New York State Penal Law where the conduct involved is an offense as described above; or
- An arrest for an offense as described above that ultimately led to a conviction for another offense, such as non-drug offense or lesser offense by means of a plea deal or other mechanism.

Applicants must submit documentation as proof of the marihuana-related offense. For more information on where you can find such proof, you can visit [How to Get Proof of Conviction Documents](#)

### 77. I was arrested for a marihuana-related offense, but I was convicted of a different offense. Is this an eligible offense for receiving Extra Priority?

Individuals who can provide evidence they (or their parent, legal guardian, child, spouse, or dependent; or someone that they were a dependent of) were arrested for a marihuana-related offense before March 31, 2021, may be considered to have an eligible marihuana-related offense even if they were ultimately convicted of a different offense. This marihuana-related offense may be used along with the other criteria to qualify for Extra Priority.

### 78. I was arrested for a marihuana-related offense and was granted an adjournment in contemplation of dismissal (commonly referred to as an ACD or ACoD). The arrest did not lead to a conviction and the charge was ultimately dismissed. Is this an eligible offense for receiving Extra Priority?

No, an adjournment in contemplation of dismissal is not a conviction (See Criminal Procedure Law § 170.55(8)). It is not an eligible offense for receiving Extra Priority.

### 79. I was convicted of a marihuana-related offense and my conviction was conditionally sealed or conditionally discharged. Is this an eligible offense for receiving Extra Priority?

Possibly. All convictions of a marihuana-related offense before March 31, 2021 can make an applicant eligible for Extra Priority. Convictions that were conditionally discharged or sealed can still mean an individual is justice involved as long as the person can provide sufficient information of the conditionally



sealed or discharged conviction. If you had a conviction that was sealed, you can request verification from the Division of Criminal Justice Services that your conviction has been sealed by completing this form.

### 80. I was convicted of crimes other than a marihuana-related offenses, does that make me ineligible for an adult-use license?

It depends on the nature of the crimes. Under Section 137 of the Cannabis Law, certain felony convictions trigger a review process by the Board to determine eligibility. These are not automatic disqualifications, however. Offenses specifically mentioned in Section 137 include individuals with any of the felony convictions listed below within the past three years:

- Fraud
- Money laundering
- Forgery or other unlawful conduct related to owning and operating a business
- Hiring, employing, or using a minor in transporting, carrying selling, giving away, preparing for sale, or peddling any controlled substance to a minor; or selling, offering to sell, furnishing offering to furnish, administering, or giving any controlled substance to a minor (NYS PL 221.50).

### 81. I believe I am eligible for Extra Priority because a family member of mine was convicted of a marihuana-related offense. What kind of family relationships are eligible?

If any of the following family members were convicted of a marihuana-related offense before March 31, 2021 then you may qualify for Extra Priority:

- Parent
- Spouse
- Child
- Legal guardian
- Dependents
- Someone that you were the dependent of

If you wish to use a conviction of one of the above family members to qualify for Extra Priority, you must also provide documentation of your relationship to them.

### 82. My family member who was convicted of a marihuana-related offense was deported because of their conviction, am I still eligible for Extra Priority?

Yes. If your parent, legal guardian, child, spouse, or dependent was deported due to being convicted of a marihuana-related offense, or you were the dependent of someone who was deported due to being convicted of a marihuana-related offense, then the conviction may help you qualify for Extra Priority if you can provide documentation of the conviction.

### 83. My family member was convicted of a marihuana-related offense, but they have passed away. Am I still eligible for Extra Priority? Can I request my family member's proof of conviction?

Yes, you are still justice involved if your parent, legal guardian, child, spouse, or dependent, or an individual you were a dependent of, was convicted of a marihuana-related offense but is now deceased.

Obtaining your deceased family member's proof of conviction is possible, but may require you to obtain a Certified Death Certificate from the state, city, or town where your family member died before you can request their certificate of disposition or other acceptable documentation.

The New York State Unified Court System has more information on navigating this process on their website here.

### 84. My family member was convicted of a marihuana-related offense but is not able to request their own records because they are disabled or otherwise impaired. Can I request my family member's proof of conviction for them?

That depends. It's unlikely that you can unless you have the legal authority to act on their behalf (e.g., through a Power of Attorney or Guardianship).

The New York State Unified Court System has more information on Guardianships on their website here.

### 85. I was in a same sex domestic partnership when my spouse was convicted of a marihuana-related offense before same sex marriage was legal in NYS – does this make me eligible for Extra Priority?

An individual whose domestic partner was convicted of a marihuana-related offense in New York State before March 31, 2021, can be eligible for Extra Priority if they were in a legal, registered domestic partnership at that time because they were not legally permitted to marry in New York State prior to the enactment of the Marriage Equality Act (June 24, 2011).

### 86. What documentation can I provide to prove someone's conviction of a marihuana-related offense?

Documentation can be obtained from many sources. Some examples include:

- A Certificate of Disposition;



- Results from a criminal history background check (rap sheet)
- DMV Driving Abstract;
- Record of judgment and conviction;
- Record of plea, verdict, and sentence;
- Acknowledgement of Application to Destroy Expunged Marihuana Conviction Record (DCJS);
- A docket entry from court records that indicates the existence of a conviction;
- Minutes of a court proceeding or a transcript of a hearing that indicates the existence of a conviction;
- An abstract of a record of conviction prepared by the court in which the conviction was entered, or by a state official associated with the state's repository of criminal justice records, that indicates the following: The charge or section of law violated, the disposition of the case, the existence and date of conviction, and the sentence;
- Any document or record prepared by, or under the direction of, the court in which the conviction was entered that indicates the existence of a conviction;
- Affirmation from an attorney that indicates the existence of a conviction;
- A post-conviction Criminal Procedure Law (CPL) Article 440 Post-Judgment Motion, including, but not limited to a motion to vacate a criminal conviction or to re-open a criminal case;
- A Governor's Commutation letter;
- Records that may be maintained by local or state correctional facilities (e.g., DOCCS inmate or parolee files);
- Health Records that indicate the existence of a conviction;
- An arrest record that indicates the existence of a conviction;
- A police file that indicates the existence of a conviction; or
- Any other information verifying a marihuana-related offense as approved by the Office.

An individual that is seeking Extra Priority, or their convicted family member, can have multiple convictions, but at least one conviction must be a marihuana-related offense.

If you have questions about a specific document that is not on the above list, please contact the Office of Cannabis Management at AUlicensing@ocm.ny.gov.

For more detailed information on how to obtain documents from the list below, see the Office's guidance on obtaining proof of For more information on where to obtain such documentation, you can visit How to Get Proof of Conviction Documents.

Case 5:24-cv-00116-GTS-TWD   Document 33-3   Filed 03/13/24   Page 39 of 50

NEW
YORK
STATE | **Office of Cannabis**
**Management**

General Licensing Application
Frequently Asked Questions

### 87. What documents can I provide to prove an individual's relationship to their convicted family member?

Acceptable documentation will depend on the nature of the relationship you are trying to prove. The name of the convicted guardian or dependent name must be on the document you provide.

If the individual's parent or child was the convicted family member, a birth certificate is the most common document the Office will accept. A paternity or maternity test would also prove the relationship.

If the individual's spouse was the convicted family member, a marriage certificate is the most common document the Office will accept.

If the individual's spouse was the convicted family member, but they were in a domestic partnership at the time of their arrest or conviction and the person is now the individual's spouse because Marriage Equality made the marriage legal, the Office will require proof of the marriage. A marriage certificate is the most common document the Office will accept.

If the individual's legal guardian was the convicted family member, the Office will accept documentation evidencing the guardianship, such as an authorization letter or court records.

If the individual's dependent was the convicted family member, or if the individual was the dependent of the convicted family member, the Office will accept tax returns evidencing the dependent relationship or other financial paperwork evidencing the dependent relationship.

### 88. I have appropriate documentation, but an individual's name has changed since the documentation was issued. Do I need to provide evidence of the name change?

If the change in name is not evidenced in your application, the Office may request additional information to substantiate the name change, such as a marriage certificate, divorce documents, or other appropriate documentation.

### 89. What do I do if I cannot prove where I lived at the time of arrest?

The Board may provide alternative forms of evidence that may be accepted for proof of residency if an applicant is unable to provide documentation.

## D. Premises

**Please note:** On application forms, the premises may sometimes be referred to as a "location."



### 90. Do I need to apply with a premises for my licensed adult-use cannabis business?

All applicants, except those seeking retail dispensary and microbusiness licenses, must submit proof of control of their proposed licensed location premises to complete an application.

*PLEASE NOTE: The application system may allow cultivators, processors, and distributors to submit an application without the premises information, however, only applications submitted with proof of premises will be considered as eligible for a license. Be aware the application fee is non-refundable.*

Retail dispensary and microbusiness applicants who do not have control over a retail premises at the time of initial application, may submit the application without premises details and gain provisional approval . Provisional licensees twelve (12) month period to complete their licensing application by providing updated information on their TPI and premises details in order to obtain a final license . A premises cannot be used for licensed activities without prior explicit Office approval.

Please note, there are restrictions on where a licensed retail dispensary can be located, including within 200 feet of house of worship, 500 feet of a school building or school grounds, or within 1,000 or 2,000 feet of a licensed retail premises, depending on the population of the municipality where the proposed address is located.  More information is available about these distance requirements at the Office's [Retail Dispensary Guidance](#).

### 91. How does the premises selection process work for retail premises?

Applications for a retail dispensary or microbusiness (with retail) license, that include proof of control over the premises and are submitted by 5:00 PM EST on Friday, November 17, 2023, will be reviewed before the application window closing at 5:00 PM EST on Monday, December 18, 2023. If a proposed retail dispensary premises is deemed in accordance with Cannabis Law and regulations, then the applicant will be granted proximity protection over that proposed premises while the applicant works towards a final license being issued.

### 92. What is proximity protection over a proposed retail premises?

Proximity protection grants either a 1,000- or 2,000-foot radius around an approved retail dispensary or microbusiness retail premises, based on the population of the municipality in which the proposed premises is located. If the municipality where the retail premises will be located has a population of over



20,000 people, there is a 1,000-foot radius around the proposed premises where proximity protection applies. If the municipality where the retail premises will be located has a population less than 20,000 people, there is a 2,000-foot radius around the proposed premises where proximity protection applies.

Licensees will be required to demonstrate progress towards beginning operations at the proposed premises to retain their proximity protection. If evidence of such progress cannot be produced after twenty (20) business days, proximity protection will be voided.

### 93. What happens if two applicants have applied with the same proposed premises? What if two applicants apply with different locations that are within the proximity protection area?

If two applicants in the same pool (as described in *Question 10)* propose the same retail premises, or propose separate retail premises that would be within the same shared proximity protection area (i.e. within a 1,000 or 2,000 ft distance of one another), then those two applicant's positions in the queueing order will determine which applicant has priority. While the higher queued application is being reviewed, all applications proposing a premises nearby that would violate the proximity distances between retail dispensaries will not be permitted to move forward with the proposed premises if the higher queued applicant's location is receiving proximity protection.

If an applicant with proximity protection over a premises loses proximity protection, exhausts their deficiency cure period, or is otherwise deemed ineligible for licensure at that premises, and another applicant has proposed the same or a different premises within the proximity protection area of the first applicant, then the Office would review the second, lower queued application (including the proposed premises that was originally within the proximity protection area of the higher queued applicant's premises) upon reaching that lower queued applicant's place in the queue order.

### 94. I am applying for a retail dispensary license. How do I know if my proposed premises meets the zoning requirements set forth in Cannabis Law?

The Office has published guidance for applicants to do a self-assessment of the viability of their proposed retail premises (coming soon). Please note, applicant premises self-assessments are not binding on the Office. Prior to final licensure, the Office must verify proposed retail dispensary premises and microbusiness retail premises to ensure compliance with the distance requirements set forth in regulation.



Applicants should be aware that other applicants may be pursuing the same or nearby premises. Receiving a license for a proposed premises is not guaranteed.

**95. I am applying for a microbusiness with retail authorization, can I locate my retail premises in a municipality that has opted-out of allowing retail dispensary licenses?**

No. Microbusiness who are authorized to conduct sales of cannabis products to consumers are unable to operate the retail component of their license in a municipality that has opted out of allowing retail dispensaries in their jurisdiction in accordance with the Cannabis Law. Please view the Offices website for a list of municipalities that have opted out.

**96. The application asks for GPS coordinates. How do I obtain the GPS coordinates?**

You can utilize a mapping solution such as Google Maps. Search the street address and right click on the map pin. The first menu option will show you the GPS coordinates in the following format: (latitude, longitude).  Copy and paste the results into your application.

**97. How do I prove that I have control over a premises?**

You can prove that you have control over a premises by uploading an executed deed if you own it, or by uploading an executed lease agreement if you are leasing it. These documents must provide all customary terms of a lease or deed and show that the applicant possesses or has the right to use sufficient land, buildings, and other premises as specified in the application to properly carry out the activities for which licensure is sought.

**98. What if my proposed retail premises is not eligible due to the distance requirements in Cannabis Law or the Office's regulations?**

Applicants who apply with a proposed premises, and are reviewed in the queuing process, will be told by the Office whether their location is in accordance with distance requirements set forth Cannabis Law and regulations. If a proposed premises on an application is out of compliance with these distance requirements for proximity to another dispensary that the applicant was unaware of, the applicant will be considered for provisional licensure instead.

**99. What if I apply with a retail dispensary premises and the Board grants all available licenses before the Office reaches my place in the queue?**



Applicants who are not issued a license in this application window must reapply during a future licensing application window. Applicants are not guaranteed licensure.

## 100. Do I have to notify the municipality in which I intend to open?

Only applicants seeking an adult-use retail dispensary, microbusiness (with retail authorization), ROD, or on-site consumption license, are required to notify the municipality, or in New York City, the appropriate community board in which the premises is located. Notification must be made between thirty (30) and two hundred and seventy (270) days prior to filing an application for licensure. Proof of this notification will be requested in the application.

## 101. Where can I obtain the Notice to Municipalities form?

More information about this requirement, including a copy of the form applicants must submit, is available at the [Notice to Municipalities page](#) of the Office's website.

## 102. I am applying with a location for my retail dispensary or microbusiness (with retail authorization), when do I have to notify the municipality?

You would have had to notify the municipality 30 days before your application is filed with the Office. The Office does not consider an application for a retail dispensary or microbusiness (with retail authorization) filed with the Office until:

1) the applicant provides proof of control over the proposed retail location;
2) the applicant provides proof of notification to the municipality; and
3) the applicant receives a location determination from the Office as to whether the retail location meets the proximity requirements in the Cannabis Law and corresponding regulations.

The Office is clarifying that the Office will not make any location determinations on proposed retail dispensary locations until 30 days following the closing of the application window on November 17, 2023, at 5:00PM.  Accordingly, any applicant that applies with proof of control of a retail location (for a proposed retail dispensary or microbusiness with retail authorization) can upload their application on or prior to November 17, 2023, at 5:00PM, and still meet the notice to municipality requirement established by Section 76.

If the Office receives an application with a proposed retail location, issues a location determination but determines that there was no evidence of notification



to the municipality, the Office will deem the application incomplete and will be unable to move forward processing the application.

### 103. If I am applying for a provisional retail dispensary or microbusiness license (with retail authorization) and do not have a premises for my business, when do I have to notify the municipality?

Applicants applying for a provisional license (without proof of control over the proposed retail location) do not need to complete the notification to municipality at the time of initial application upload, since no location is associated with the application. Once a provisional licensee finds a location, they must complete the notification to municipality requirement in the same manner as an applicant applying with proof of control of a retail location. A notice to municipality form must be sent to the municipality in which the premise is located 30 days prior to the Office considering the application filed, which will not happen until all of the following have occurred:

1) the applicant provides proof of notification to the municipality;

2) the applicant submits proof of control over the proposed retail dispensary location; and

3) the proposed retail dispensary location receives a location determination from the Office as to whether the location meets the proximity requirements in the Cannabis Law and corresponding regulations.

### 104. I notified the municipality for my premises when I applied for CAURD, but my CAURD application is still pending. I want to use that property for an adult-use license. If so, do I have to notify the municipality again?

You are only required to provide notification to a municipality if you are applying for a retail dispensary, or microbusiness license (with retail authorization). If you would like to use the premises you had in a pending CAURD application for an adult-use license, you would be permitted to. You would have to make sure that you are not over the 270-day notification requirement, which requires that you cannot notify the municipality of your premises more than 270 days before applying for a license. You will need to make sure that your notification happened within the 30-day minimum and 270-day maximum period prior to filing your application.



A new notification to municipality is not required as long as the proposed retail location has not changed, notification was served no more than 270 days before filing and contact information has not changed.

### 105. Does it matter what form I use for the Notification to Municipalities?

The Notification to Municipalities form has been recently updated. If, however, you used the older Notification to Municipalities form, prior to the recent update, then your older Notification to Municipalities form is also acceptable to the Office. They are both standard forms that were available on our website. Now that the new form is out, however, the Office would prefer you use the new Notification to Municipalities form available on our website.

### 106. I did send in a notification to the municipality, but it was not accepted. Is that allowed?

The Notification to Municipalities form has to be accurately filled out. If a notification form is missing any of the following information – then the notification is not a valid notification, and the notification 30-day window will not be considered to have started until the notification form is completely filled out:

1) The address of the proposed retail location, which cannot be in an opt-out jurisdiction
2) The Applicant Name, phone number or email address
3) The indication of the type of application for licensure the applicant is applying for (i.e., the checkbox )
4) The county of the proposed retail location
5) Signature
6) Date

### 107. My location is in New York City, how do I know which community board to go to?

The New York City Mayor's Community Affairs Unit is a useful resource to for identifying which community board to contact.

### 108. How do I obtain my municipal clerk's contact information?

You can look up your municipal clerk's contact information on the New York State Office of Real Property and Tax Services website.

To find your municipal clerk follow these steps:



1) Choose county from the "Listing of Counties in New York State" section
2) Choose municipality from listing provided
3) Click on the "Local Officials Addresses" section of the municipal page

There you will find the name, address, phone number and email address (if applicable) of the municipal clerk.

### 109. Can a local government stop my adult-use cannabis business?

Local governments were able to opt-out of allowing retail dispensaries or on-site consumption adult-use cannabis licenses from operating within their jurisdictions if the municipality opted out before December 31, 2021. Local municipalities also have certain local authority related to the time, place, and manner of retail dispensaries and on-site consumption businesses. Such authority must clearly be set out in a local law or ordinance to be binding. If you feel that local ordinances are unreasonably impracticable, please contact the Office at municipalities@ocm.ny.gov with a description of the issue.

## E. After Submitting the Application

### 110. What happens after I submit my application?

After the application window is closed, all applications will be queued in their distinct pools based on social equity status, provisional status, and license type, using a randomized process. Applications will be reviewed in their queuing order and the Board will decide how many licenses to grant from those available in each pool. Due to the time it takes to fix applicants deficiencies, the Office does not guarantee applicants will be licensed in their queuing order.

### 111. How long should I expect to wait before hearing about my application?

The Office plans to initiate the queuing process within two to four (2-4) weeks of an application window closing. Once applicants have been placed into a queuing order, results of queuing will be shared with applicants, and the Office will begin reaching out to top queued applicants in each pool to begin review and initiating the correction process to clear up any application deficiencies.

### 112. How do I check the status of my application?

Your New York Business Express dashboard will reflect the status of your application. In addition, the primary contact for the application will be notified via email if any action is required or when the application is approved or denied.

### 113.What happens if I receive an application deficiency notice from the Office?



Application deficiencies must be corrected within thirty (30) days after notification or your application will be void. Follow the instructions in the deficiency notice carefully to amend the deficiency on the application and submit the required information to the Office. Applicants are strongly encouraged to cure application deficiencies as quickly as possible to ensure the timely processing of their application and avoid having their application void.

### 114. While I am waiting for my application to be reviewed and approved, can I change the ownership structure of the applicant entity?

Applicants should apply with the ownership structure they intend to keep through the application period. Ownership changes can only be made on an extremely limited basis once your application is selected for review and the NYBE status is changed to "in process". All ownership corrections must be made before final approval of your license. The entity that applies for the license needs to be the entity that holds the license.

### 115. Can I change my Federal Employment Identification Number after submitting an application?

No. You cannot change your FEIN on an application you have already submitted. You must reapply with a brand-new application if you need to change your FEIN associated with the license as it is linked with other New York State agencies in NYBE.

### 116. I received an email stating my application is provisionally approved.  Can I now start licensed cannabis activities?

No, provisional licensees are not authorized for licensed cannabis activities. Only after your application is deemed complete by the Office with the required premises information, and the Board has issued you a license, will you be prompted to pay your licensing fee online. After your fee has been processed, you will become officially licensed and issued a license certificate by the Office. You cannot begin operations until you are fully licensed.

## F. Final Licensure

### 117. What is a final license?

A final license is issued by the Board after all required application materials have been submitted and the Office formally recommends the application for approval. Once your application is approved by the Board for final licensure, you will be prompted by the Office to pay your licensing fee. Once paid, the Office will issue


a license certificate with a license number. You cannot begin licensed cannabis activities until a final license has been issued.

**118. Is a separate fee required for a final license?**

Yes, you will be required to pay a licensing fee prior to your license being issued. You will receive notice from the Office with instructions on how to pay once your license application has been approved. Please review the Office's licensing fee schedule for more information.

**119. What documents do I need to be issued a final license?**

If not previously submitted, the following documents must be provided before final licensure:

- Any updated initial application materials or TPI information;
- A signed labor peace agreement with a bona fide labor trade organization;
- A vendor contract or purchase order for the licensees' electronic inventory tracking system (cultivator and processor applicants will be required to email this information prior to final licensure, as instructed by the Office).
- Proof of required insurance, as outlined below;
- For all licensed locations:
  - Executed Deed or Lease Agreements related to the applicant's real property interests, that shows that the applicant possesses or has the right to use sufficient land, buildings, and other premises as specified in the application to properly carry on the activities for which licensure is sought.
  - A Certificate of Occupancy or its equivalent, demonstrating compliance with all local building codes.
  - A copy of any other license(s) issued by state or federal authorities related to operations of the location.
- For Retail Dispensary, Microbusiness, and ROD licensed locations:
  - If you are selling non-cannabis products, a Certificate of Authority issued by the New York State Department of Taxation and finance for that particular retail location.
  - For retail dispensary and ROD licensed locations: A copy of your Notice to Municipality submitted to the appropriate party, available on the Office's website.
  - A list of all management staff, including first name, last name, and title, indicating the employee(s) in charge.

Please note, additional requirements for licensure and ongoing compliance requirements set forth in regulations apply and may be not included on the licensing application. In accordance with the regulations, the Board and Office



reserve the right to request additional information from applicants before granting licensure.

Prospective applicants are strongly encouraged to familiarize themselves with the licensing requirements before applying for a license. The Office's regulations and guidance for licensees are available online.

### 120. What insurance must I get?

All licensees must obtain:

- Unemployment Insurance;
- Worker's Compensation;
- Disability Insurance;
- Paid Family Leave; and
- any other insurance required under applicable state or local law.

Additionally, in all insurance documentation the applicant MUST indemnify:

- The Office of Cannabis Management
- The Cannabis Control Board
- The State of New York; and
- Any related parties, including officers or employees.

### 121. How do I register with the Department of Taxation and Finance?

If you plan to sell items that are subject to New York State Sales and Use Tax, which includes merchandise and cannabis paraphernalia but does not include cannabis products themselves, then you must submit proof of a Sales Tax Certificate of Authority DTF-17. Examples include clothing, keychains, mugs, pens, water bottles, pipes, bongs, or cannabis storage containers. A Sales Tax Certificate of Authority must be obtained before a final license is issued. You can find out more information about obtaining this certificate, including the application, at New York Business Express.

If applicable for the license type you applied for, after your application has been approved and a final license has been issued, you must register with the New York State Department of Taxation and Finance to receive an Adult-Use Cannabis Certificate of Registration to collect and remit applicable adult-use cannabis taxes. You can begin the Certification of Adult-Use Registration process by visiting the Depart of Tax and Finance website. Any licensee that is a retailer of adult-use cannabis needs a registration to collect the adult-use cannabis products tax. Any licensee that is a distributor of adult-use cannabis needs a registration to collect the THC mg tax.



A licensee may not begin operations without registration from the Department of Taxation and Finance.

### 122. If I'm issued a final license, do I need to be ready to begin operating right away?

You may commence operations as soon as you have received your final license and submitted to the Office a Certificate of Occupancy or its equivalent for the licensed location.

### 123. I have a State of New York Cannabis license. Can I apply for another license?

Before applying for or otherwise obtaining an interest in a license, you should review the Office's guidance on TPI to ensure compliance with the Office's guidance. Guidance regarding TPI is available on the Office's website.