# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF NEW YORK

VALENCIA AG, LLC,

                Plaintiff,

        v.

CHRISTOPHER ALEXANDER, in his
official capacity as Executive Director of the
New York Office of Cannabis Management;
TREMAINE WRIGHT, in her official
capacity as Chairperson of the New York
Cannabis Control Board,

                Defendants.

No. 5:24-cv-00116 (GTS/TWD)


## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ................................................................................................ 1

I. Standard of Review ...................................................................................... 2

    A. Rule 12(b)(1) ........................................................................................ 2

    B. Rule 12(b)(6) ........................................................................................ 3

II. Framework for Equal Protection Challenges Seeking Prospective Relief ................................ 4

    A. Racial Classifications ............................................................................. 4

    B. Sex-based Classifications ........................................................................ 6

III. Argument .................................................................................................... 6

    A. Valencia Has Standing ........................................................................... 7

        1. Valencia Is Injured by the Differential Treatment on the Basis of Race and Sex ........... 8

        2. Defendants Arguments Challenging Valencia's Standing Are Meritless ..................... 10

            a. Valencia's Position in the November Queue Has No Bearing on Its Future Injury .............................................................................. 10

            b. Valencia's Future Injury Is Sufficiently Imminent for Article III ............................11

            c. Valencia May Seek Declaratory and Injuctive Relief ............................................. 14

    B. Valencia Has Stated Claims That the Cannabis Law Violates the Constitution ................. 14

        1. Valencia States a Claim That the Cannabis Law Unconstitutionally Discriminates on the Basis of Race ........................................................................... 17

        2. Valencia States a Claim That the Cannabis Law Unconstitutionally Discriminates on the Basis of Sex ............................................................................ 20

CONCLUSION ................................................................................................ 21

CERTIFICATE OF SERVICE .............................................................................. 22

## INTRODUCTION

Plaintiff Valencia Ag, LLC (Valencia) is a hopeful cannabis microbusiness that spent considerable time and money applying for a license to join New York's burgeoning legal cannabis market. First Am. Compl., ECF No. 33 (FAC) ¶¶ 3, 59–64. It met all the legal requirements to lawfully apply but has not been selected for a license. FAC ¶¶ 3, 59–64. Its current placement in the queue means it will almost certainly not receive a license in the current licensing round. FAC ¶¶ 64–67. While Valencia has likely lost out on the lottery, it remains ready, willing, and able to apply for a license in the future. FAC ¶¶ 6, 68. However, Valencia is at a severe disadvantage in receiving a license in the future. New York's cannabis licensing regime gives preferential treatment to "social and economic equity applicants" (SEE Applicants) based on their race or sex, and Valencia is on the wrong side of those preferences. FAC ¶¶ 2–3, 11–19, 21–26, 28–35, 37–40, 44, 46, 52–54, 56–59, 69–72. Because of the uneven playing field, Valencia filed its First Amended Complaint, seeking prospective declaratory and injunctive relief. FAC Prayer for Relief ¶¶ 1–3. It seeks the right to be treated equally in the future with respect to race and sex when applying for a cannabis license.

Defendants Christopher Alexander, Executive Director of the Office of Cannabis Management (OCM), and Tremaine Wright, Chair of the Cannabis Control Board (CCB), filed the present Motion to Dismiss, ECF Doc. 42. They argue that Valencia lacks standing to maintain its suit and that it fails to state a claim that the challenged statutes and regulations violate the Fourteenth Amendment. Mem. of L. in Supp. of Defs.' Mot. to Dismiss, ECF No. 42-2 (MTD) at 1–3, 14–34.

Defendants' motion should be denied. It misconstrues Valencia's claim as one seeking to remedy the past unconstitutional discrimination Valencia suffered in its pending application. That

1

argument cannot be squared with the Complaint, which only seeks *prospective* declaratory and injunctive relief. FAC Prayer for Relief ¶¶ 1–3. The challenged statutes and regulations facially mandate discrimination, and they will thus necessarily burden future consideration of Valencia's pending application and any future application by Valencia. Defendants' repeated invocation of factual evidence outside the pleadings—including evidence that purports to show how Defendants ignored the plain language of the statute—ought not distract from Valencia's forward-looking case challenging the Cannabis Law's and regulations' plain language. The Motion to Dismiss should be denied.

## I.     Standard of Review

### A.  Rule 12(b)(1)

Where a suit challenges the legality of government action, and the plaintiff is an object of the action, there is "ordinarily little question" that the plaintiff has standing to seek to prevent the action. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62 (1992). A motion to dismiss under Rule 12(b)(1) may be either a facial attack or based on material indisputable facts. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). For a facial challenge, the plaintiff has no evidentiary burden and the Court must accept as true all the complaint's material factual allegations, drawing all reasonable inferences in plaintiff's favor. *Id.* at 56–57.

Conversely, a fact-based challenge permits the defendant to offer jurisdictional evidence. *Id.* at 57. In response to a fact-based challenge, a plaintiff is "entitled to rely on the allegations in the Pleading" where the evidence is immaterial and thus "does not contradict plausible allegations that are themselves sufficient to show standing." *Id. See also Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172, 184 n.6 (S.D.N.Y. 2017) ("As the Second Circuit made clear in *Carter*, the [evidentiary] burden shifts to Plaintiff only 'if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction."). Accordingly, for a fact-

based challenge, the court may consider extrinsic evidence only "[t]o the extent a Rule 12(b)(1) motion places jurisdictional facts in dispute," *Mid-New York Envtl. & Sustainability Promotion Comm., Inc. v. Dragon Springs Buddhist, Inc.*, 647 F. Supp. 3d 286, 290 (S.D.N.Y. 2022) (citing *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)), and the court will refuse to draw reasonable factual inferences in plaintiff's favor only to the extent a 12(b)(1) motion raises relevant extrinsic evidence. *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 737 (2d Cir. 2017); *see also Aikens v. Portfolio Recovery Assocs., LLC*, 716 Fed. App'x 37, 39 n.2 (2d Cir. 2017) (when 12(b)(1) challenge rests on immaterial evidence, it is treated like a facial challenge).[1]

## B. Rule 12(b)(6)

FRCP 8(a)(2) requires a short and plain statement of a claim showing entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss under 12(b)(6), a complaint must allege sufficient facts, accepted as true, that state a facially plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations need not be detailed, but just more than mere accusations that defendant acted unlawfully. *Id.* Determining plausibility is "a

---

[1] Defendants argue that because Valencia filed—and then withdrew—its Motion for Preliminary Injunction, ECF No. 9, it must satisfy standing under a summary judgment standard. MTD at 16 (citing *Do No Harm v. Pfizer Inc.*, 96 F.4th 106, 120–21 (2d Cir. 2024)). But *Do No Harm* is not applicable. A heightened showing of standing was required there because there was a *pending* preliminary injunction motion. *Do No Harm*, 96 F.4th at 120. But here, unlike *Do No Harm*, Valencia is not trying to "revers[e] the case to a prior stage" of litigation. *Id.* at 121. There is no preliminary injunction motion before the Court, and there never was. The filing of Valencia's FAC "completely replace[d] the prior complaint in the action, and thus . . . 'render[ed] any prior complaint of no legal effect.'" *Stumpf v. Cooley*, 678 F. Supp. 3d 395, 404 (W.D.N.Y. 2023) (internal backets omitted) (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)). Further, the *Do No Harm* decision has been petitioned for en banc review (Pet. for Reh'g En Banc on behalf of Appellant Do No Harm, *Do No Harm v. Pfizer, Inc.*, No. 23-15 (2d Cir. Mar. 20, 2024)), and the Second Circuit called for a response from the Defendant (Order for Resp't Pfizer Inc. to Respond to Appellant Do No Harm's Pet. for Reh'g En Banc, *Do No Harm v. Pfizer, Inc.*, No. 23-15 (2d Cir. May 2, 2024)). Now is not the time to extend that holding.

context-specific task," *id.* at 679, where the Court must construe the complaint liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. *Mazzei v. The Money Store*, 62 F.4th 88, 92 (2d Cir. 2023). Dismissal is "inappropriate" unless it is "beyond doubt" that the plaintiff can prove no set of facts which would justify relief. *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000).

## II.     Framework for Equal Protection Challenges Seeking Prospective Relief

An equal protection claim that alleges intentional discrimination by a government actor on the basis of race or gender can be demonstrated where a law or policy "expressly classifies persons on the basis of race or gender"—that is, where it is "discriminatory on its face." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999) (citing *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 213, 227–29 (1995)). The injury-in-fact in such a case is the unequal treatment from the imposition of a barrier that "makes it more difficult for members of one group to obtain a benefit than it is for members of another group[.]" *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993). The injury is "not the ultimate inability to obtain the benefit." *Id.*

### A.  Racial Classifications

Because "racial discrimination is invidious in all contexts," *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 214 (2023) (quotation and brackets omitted), racial classifications are all reviewed under strict scrutiny. A racial classification is upheld only where it is narrowly tailored to further a compelling governmental interest. *Adarand*, 515 U.S. at 227. Racial classifications are presumed unconstitutional and the government bears the burden of proving constitutionality. *United States v. Bannister*, 786 F. Supp. 2d 617, 664 (E.D.N.Y. 2011) (citing *Washington v. Davis*, 426 U.S. 229, 242 (1976)).

The only compelling interest that can potentially justify the Cannabis Law's racial classifications is to remedy "specific, identified instances" of prior unconstitutional or unlawful discrimination. *Students for Fair Admissions*, 600 U.S. at 207. This remedial interest must be the actual purpose for the law as determined upon "close examination," and it must be "clearly identified" and "unquestionably legitimate." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 495, 505 (1989). Moreover, the goal of the racial classification must be "sufficiently measurable" to permit strict scrutiny review. *Students for Fair Admissions*, 600 U.S. at 214 (quotation and brackets omitted). In the context of race-based preferences in licensure, the government must have compelling evidence of prior discrimination in the specific industry to which the racial classifications apply. *See Croson*, 488 U.S. at 500, 505. Proof of prior discrimination in one area cannot support remedial discrimination in another. *Id.* at 505.

In addition to furthering a compelling goal, racial classifications must be narrowly tailored to achieve that goal. *Adarand*, 515 U.S. at 227. That means they cannot be "imprecise," "overbroad," "arbitrary," "undefined," or "underinclusive." *Students for Fair Admissions*, 600 U.S. at 216. The government must show that there are no sufficient race-neutral alternatives available to achieve the remedial goal. *Fisher v. Univ. of Tex. at Austin*, 570 U.S. 297, 312 (2013). Race cannot be used as a "negative," such as where numerically limited benefits are afforded to members of certain races more readily or in greater number than for others. *Students for Fair Admissions*, 600 U.S. at 218–19. Nor can race operate as a "stereotype," *id.* at 218, such that preference is given to individual members of a racial group who have little in common other than race. *Id.* at 220. Lastly, any racial classifications must have a "logical end point," *Grutter v. Bollinger*, 539 U.S. 306, 342 (2003), meaning the remedial discrimination is "temporary" and ends when "equality itself" has been achieved. *Croson*, 488 U.S. at 510 (plurality). There is no logical end point when

the goal is to achieve "some rough percentage of various racial groups" within the class receiving a government benefit, because attempting to maintain this rough percentage "assure[s] that race will always be relevant." *Students for Fair Admissions*, 600 U.S. at 223–24.

## B. Sex-based Classifications

Sex-based classifications are subject to intermediate scrutiny review; they must be substantially related to achieve an important governmental objective. *Craig v. Boren*, 429 U.S. 190, 197 (1976). There is a "strong presumption" that they are invalid, *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 152 (1994), and the government must demonstrate an "exceedingly persuasive justification" for a sex-based classification. *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 724 (1982). A court must closely examine sex-based classifications to determine their true purpose. *Croson*, 488 U.S. at 495. The government's justification must be "genuine, not hypothesized or invented *post hoc* in response to litigation[,]" and cannot rely on gender stereotypes, *United States v. Virginia*, 518 U.S. 515, 533 (1996), even if they have statistical support. *Sessions v. Morales-Santana*, 582 U.S. 47, 63 n.13 (2017). Remedying prior discrimination against women constitutes an important governmental objective, but this can be justified only if women "actually suffer[ed] a disadvantage related to the classification" that now benefits them. *Hogan*, 458 U.S. at 728. Lastly, although a sex-based classification need not be the "least restrictive" means to achieve an important governmental objective, *Mastrovincenzo v. City of New York*, 435 F.3d 78, 98 (2d Cir. 2006), the viability of less discriminatory alternatives is a factor in determining whether a sex-based classification is substantially related to its objective. *See, e.g.*, *Craig*, 429 U.S. at 201.

## III.    Argument

The Cannabis Law and regulations challenged by Valencia facially discriminate on the basis of race and sex by categorizing license applicants as either "priority" or "non-priority." N.Y.

CANBS §§ 3(50), 10(2), 87(1), 87(2)(b)–(d), 87(5)(a)–(d); N.Y. Comp. Codes R. & Regs. tit. 9, § 121.1(a)–(b), (f)–(g). Because of the race and sex of Valencia's owners, it is categorized as "non-priority" and placed at a significant disadvantage in obtaining a cannabis license. FAC ¶¶ 3, 57–59, 68–72, 73–89 (race-based allegations), 90–99 (sex-based allegations). This equal protection injury is caused by the challenged laws and would be remedied by a Court order declaring the discriminatory provisions unconstitutional and enjoining future enforcement of the categorization of applicants as either "priority" or "non-priority" on the basis of race or sex. FAC Prayer for Relief ¶¶ 1–3. Accordingly, Valencia has standing and states a claim challenging the constitutionality of the Cannabis Law.

### A. Valencia Has Standing

Standing requires three elements. (1) Injury in fact, "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. (2) Causation, "a causal connection between the injury and the conduct complained of" such that the injury is "fairly traceable" to defendants' actions. *Id.* (3) Redressability—it must be "likely," not "speculative," that the injury will be redressed by a favorable decision. *Id.* at 561 (quotations omitted). The plaintiff bears the burden of establishing standing at the pleading stage through "general factual allegations," *id.*, but where a suit challenges the legality of government action, and the plaintiff is an object of the action, then there is "ordinarily little question" that the plaintiff has standing to seek to prevent the action. *Id.* at 561–62. Valencia easily meets all three requirements for standing.

As explained below, Valencia's injury is not its failure to receive a microbusiness license this cycle, but being placed at a competitive disadvantage for licensure now and in the future on the basis of race and sex. *See Ne. Florida*, 508 U.S. at 666. Valencia alleges this injury at multiple

points in its First Amended Complaint, FAC ¶¶ 2–3, 57–59, 68–72, 75, 78–79, 91–92, and cites to numerous statutory and regulatory provisions that clearly affect Valencia as a current and future license applicant. FAC ¶¶ 11–18, 21–26, 28–35, 52–56. Moreover, Valencia's First Amended Complaint cites multiple exhibits that confirm the discriminatory effect of the challenged provisions in the Cannabis Law and regulations that cause Valencia's injury. FAC ¶¶ 19, 37–40, 42–46. This injury, caused by these statutory and regulatory provisions, is clearly redressable by a declaration that they are unconstitutional and an injunction preventing their enforcement. Such a ruling would remove the unequal footing between priority and non-priority applicants on the basis of race and sex.

1. **Valencia Is Injured by the Differential Treatment on the Basis of Race and Sex**

Because of the race and sex of Valencia's owners, it is considered a non-priority applicant and is placed at a significant competitive disadvantage in the licensure process. FAC ¶¶ 2–3, 11–19, 21–26, 28–35, 37–40, 44, 46, 52–54, 56–59, 68–72; *see also Ne. Florida*, 508 U.S. at 666 (injury in equal protection case is the differential treatment, not the inability to obtain the benefit). The cause of this injury is not dependent on any implementing actions that Defendants have taken or will take in the future. Instead, Valencia's Complaint alleges the Cannabis Law mandates differential treatment on the basis of race and sex. FAC ¶¶ 2–3, 11–18, 21–35, 52–54, 56, 75, 78–80, 91–92, 95. Valencia's Complaint does not turn on how Defendants have implemented the law in the past, but rather how the statute mandates differential treatment going forward. *Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*, 915 F. Supp. 2d 574, 610–11 (S.D.N.Y. 2013) (facial discrimination determined by looking solely at the language of the law) (citing *Washington v. Glucksberg*, 521 U.S. 701, 739–40 (Stevens, J., concurring)), *aff'd Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*, 945 F.3d 83 (2d Cir. 2019).

Defendants are simply wrong that Valencia's alleged injury is "not receiving a microbusiness cannabis license." MTD at 16. *See also* MTD at 15, 17–18.[2] Defendants spend considerable portions of their Memorandum of Law detailing how New York's cannabis regulators have: (a) ordered the November Queue, MTD at 9–11, 14–19, 26–34; (b) taken "front-end measures" to increase access to the application process, MTD at 6–9, 23–24, 31–32; and, (c) decided when or whether to open future license application windows or amend cannabis regulations and policies. MTD at 19–23, 25. But wherefore this attention to its past behavior? The injury Valencia alleges does not turn on how the law was implemented in November or any other time in the past—even assuming that the Defendants' self-serving evidence is accurate. Valencia alleges the statutes are discriminatory on their face, and that injury turns on the text of those laws, not the Defendants' past behavior—whether laudable or not.

In evaluating Valencia's injury based on facial discrimination, the Court must consider only the statutory and regulatory text, not how Defendants may or may not have interpreted or applied the text. *See Tartikov*, 915 F. Supp. 2d at 611–12 (a "facial challenge" to a statute considers only the text of the statute itself, not its application to the particular circumstances). Defendants' extrinsic evidence only shows that they can skirt the plain language of the challenged laws. But whether they have correctly—or incorrectly—applied the laws in the past misses the point.

---

[2] Other than a few paragraphs detailing Valencia's pending application and the pending licensing window, FAC ¶¶ 42–43, 45, 47–51, 59–67, there is nary a backward-looking allegation in the Complaint. Valencia's pending application simply demonstrates that Valencia is currently subject to the Cannabis Law and regulations, FAC ¶¶ 57–59, and that it is earnest and ready, willing, and able to apply again in the future, FAC ¶ 68, and the details of the past application window show that Valencia will likely need to apply again. FAC ¶¶ 43, 45, 47–51, 63–67. Indeed, right after detailing its pending application, Valencia describes how it will be subject to discriminatory statutory mandates and regulatory authority in its planned future license application(s). FAC ¶¶ 68–72. Defendants' efforts to seize on Valencia's allegations describing its pending application to try to frame what is plainly a prospective claim into a retrospective one—so it can introduce extrinsic evidence about their past actions—ring quite hollow. MTD at 16–18, 23–31, 33–34.

Valencia alleges the statute and regulations mandate race- and sex-conscious actions going forward. And on that score, the Court can read the statute for itself and draw its own conclusions.

Valencia's allegations of injury are clear: the statutes mandate discrimination, and Valencia will be affected negatively on that basis in any future consideration of its pending application and any future application. FAC ¶¶ 2–3, 11–18, 21–35, 45, 52–59, 68–72. That is a quintessential equal protection injury. *Adarand*, 515 U.S. at 210–12. Because the extrinsic evidence Defendants rely upon does not question the validity of Valencia's claims, the Court must evaluate whether Valencia has standing on the basis of the allegations in the First Amended Complaint, drawing all reasonable factual inferences in Valencia's favor. *Carter*, 822 F.3d at 57; *Boelter*, 269 F. Supp. 3d at 184 n.6; *Mid-New York*, 647 F. Supp. 3d at 290 (citing *Amidax*, 671 F.3d at 145 (per curiam)); *John*, 858 F.3d at 737; *Aikens*, 716 Fed. App'x at 39 n.2.

### 2. Defendants' Arguments Challenging Valencia's Standing Are Meritless

In response to Valencia's clear allegation of future injury, Defendants make three arguments: (1) Because of Valencia's placement in the November queue, it would have been too low to be considered for a license even in the absence of the statute's discriminatory provisions; (2) Valencia has failed to allege that future licensing rounds are imminent; and (3) Valencia cannot seek "the broad declaratory and injunctive relief it has requested." MTD at 14. None of these arguments have merit.

### a. Valencia's Position in the November Queue Has No Bearing on Its Future Injury

Defendants argue that Valencia has not suffered any injury-in-fact because even in the absence of race- and sex-based preferential treatment, it would not have been considered for one of the available licenses in the current license application pool. MTD at 15. But again, these arguments misconstrue Valencia's injury. If anything, the fact that Valencia's placement in the

queue is so low that it will not receive a license suggests that it must apply for future rounds. Regardless, Valencia's injury is that the Cannabis Law and regulations categorize it as a non-priority applicant on the basis of race and sex. It is the unequal treatment, not the ultimate inability to receive a license. FAC ¶¶ 2–3, 52–54, 56–58, 68–72, 75, 78–79, 91–92; *see also Ne. Florida*, 508 U.S. at 666. Because Valencia's future injury is "the denial of equal treatment resulting from the imposition of the barrier," it is of no moment that Valencia was previously discriminated against in its pending application. *Id.*

### b. Valencia's Future Injury Is Sufficiently Imminent for Article III

Defendants are both factually and legally wrong that Valencia's injury is not sufficiently imminent to satisfy Article III with regard to future application windows. As a factual matter, Defendants' own public statements unequivocally demonstrate that OCM is going to engage in future licensing rounds. Indeed, Exhibit C to Valencia's First Amended Complaint—a Frequently Asked Question page from OCM's website—expressly states that the October application window is "only the first application window for general adult-use cannabis licensing. There will be additional application windows in the future[.]" FAC, Ex. C at 2. Defendants point to a subsequent statement in Exhibit C that "[f]uture application windows will conduct a . . . market analysis and will make available additional licenses to continue to adjust and adapt to the needs of the market[.]" FAC, Ex. C at 3; MTD at 20. But this statement at most shows that the particular number and type of licenses that will be available in future rounds is not yet determined, not that future licensing rounds are speculative. And to the extent this is a factual dispute, it must be resolved in Valencia's favor on this Motion to Dismiss. *Carter*, 822 F.3d at 57.

Valencia has spent considerable time and money building a viable, "operationally-ready" microbusiness applicant. FAC ¶¶ 3, 59–62. A microbusiness licensee is authorized to perform

"cultivation, processing, distribution, delivery, and dispensing," N.Y. CANBS § 73(1), activities that are allowed singularly under different license types. *See id.* §§ 68, 69, 71, 72, 74. And OCM's website currently states that "[t]he Office is set to reopen the Processor Type 3 Brand license application . . . soon." Licensing, https://cannabis.ny.gov/licensing (last visited May 29, 2024). Valencia is ready, willing, and able to apply for this license as well. FAC ¶¶ 6, 68, 72.[3]

Defendants are also wrong legally. Legally, imminence is a question of probability, not time. *Connecticut v. Am. Elec. Power Co., Inc.*, 582 F.3d 309, 343 (2d Cir. 2009) (decision on standing aff'd by equally divided court in *Am. Elec. Power Co., Inc. v. Connecticut*, 564 U.S. 410, 420 (2011)). And it is undeniably true that Defendants will engage in future licensing rounds. Whether that is next month or next year, does not change that it is definitely coming, and that is enough to satisfy the imminence requirement. *See Thomas More Law Ctr. v. Obama*, 651 F.3d 529, 537 (6th Cir. 2011), *abrogated as to other issues by Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012) (noting that the Supreme Court "has allowed challenges to go forward even though the complaints were filed almost six years and roughly three years before the laws went into effect" (citing cases)); *see also Roman Cath. Archdiocese of New York v. Sebelius*, 907 F. Supp. 2d 310, 324–25 (E.D.N.Y. 2012) (over a year) (citing *Thomas More Law Ctr.*, 651 F.3d at 537, 538); *Mead v. Holder*, 766 F. Supp. 2d 16, 26 (D.D.C. 2011) (about three years); *Vill. of Bensenville v. FAA*, 376 F.3d 1114, 1119 (D.C. Cir. 2004) (over thirteen years); *Am. Elec. Power Co.*, 582 F.3d at 342–

---

[3] In any event, as Defendants admit, "the Office is in the midst of reviewing and processing applications and awarding cannabis licenses from the November and December Queues" while only "79 of 220 microbusiness licenses have been awarded" as of April 24, 2024. MTD at 20. Until Defendants can demonstrate this review has concluded, and no future application windows will open at all, Valencia has standing to challenge the laws that currently apply to it and will continue to apply in the immediate future.

44 (imminent injury in 10 to 100 years caused by defendants' current $CO_2$ emissions' contributions to global warming).

Nor does the indeterminacy of the number and type of licenses that may be available in future application windows defeat Valencia's injury. Here, there is an evergreen statutory mandate that Defendants must consider race and sex throughout the cannabis licensing process, including application windows that OCM has publicly stated will open in the near future. Moreover, unlike the challenged laws in *Thomas More Law Center* or *Roman Catholic Archdiocese*, and more like the imminent injury in *American Electric*, Defendants are *currently* engaging in activity that will imminently injure Valencia—that is, they are *currently* empowered to enforce the Cannabis Law's race- and sex-based preferences. Valencia alleges that this will cause it injury in connection to its pending application and when it applies for licensure in a future application window that Defendants have publicly stated will occur soon. FAC ¶¶ 2–3, 6, 52–59, 68–72, 78–79, 91–92. This is all that the imminency element requires.[4]

---

[4] Defendants also curiously argue that Valencia does not have standing because the Cannabis Law, regulations, and OCM licensing policies are theoretically subject to amendment and thus might not be in force by the time a future licensing window opens. MTD at 21–23. This argument finds no support in the law. If future legislative and regulatory changes moot Plaintiff's claim, Defendants can certainly move to dismiss on mootness grounds at that time. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 184–88 (2000) (standing judged by state of facts at the time complaint was filed); *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733–36 (2008) (plaintiff had standing to seek prospective relief to remedy injury that existed at the time the complaint was filed; mootness analyzed separately). But just because a suit may become moot with future legislative changes, this does not mean the case is not live today. Defendants' argument, if accepted, would mark a radical sea change in civil rights. It would preclude all prospective relief against all government action forever, as any statute, regulation, or policy can theoretically be changed at any time now or in the future. In any event, the evidence Defendants point to shows no basis to reasonably believe that the facial race- and sex-based classifications under the Cannabis Law's SEE provisions are likely to be amended.

### c. Valencia May Seek Declaratory and Injunctive Relief

Valencia has also requested the proper relief for the facially unconstitutional statutes it will be subjected to. Defendants disagree. They strawman that Valencia has failed to allege "that *all* consideration of race or gender by defendants in any form is unconstitutional[.]" MTD at 23. Of course that is true: sufficiently tailored race- and sex-based classifications may survive constitutional scrutiny. But Valencia's claim is that the Cannabis Law's facially discriminatory provisions fail such constitutional scrutiny. FAC ¶¶ 73–99. And if the challenged statutory provisions are unconstitutional, then <u>all</u> implementing actions taken pursuant to these unconstitutional statutory provisions are also unconstitutional.[5] *See E.E.O.C. v. CBS, Inc.*, 743 F.2d 969, 975 (2d Cir. 1984) (administrative reorganization plan held unconstitutional where it was promulgated pursuant to an unconstitutional statute). The proper remedy for such unconstitutional action is a declaration from the Court that the challenged provisions are unconstitutional, and an injunction preventing Defendants from enforcing those unconstitutional provisions.

### B. Valencia Has Stated Claims That the Cannabis Law Violates the Constitution

The provisions of the Cannabis Law and regulations that Valencia challenges are facially discriminatory on the basis of race and sex, triggering strict and intermediate scrutiny respectively. *Hayden*, 180 F.3d at 48 (equal protection claims can be based on laws' facial discrimination on race or gender grounds); *Adarand*, 515 U.S. at 227 (strict scrutiny for racial classifications); *Craig*, 429 U.S. at 197 (intermediate scrutiny for sex-based classifications). Such classifications are presumed unconstitutional, and it is the government's burden to show that they meet the applicable scrutiny. *Bannister*, 786 F. Supp. 2d at 664 (citing *Davis*, 426 U.S. at 242) (strict scrutiny); *J.E.B.*,

---

[5] Defendants concede that their regulations and implementing actions "were taken pursuant to provisions of the Cannabis Law and Board regulations related to the Law's focus on social equity and providing priority to SEE applicants." MTD at 24

511 U.S. at 152 (intermediate scrutiny for sex-based discrimination); *Hogan*, 458 U.S. at 724 (same). Valencia's allegations in its First Amended Complaint, taken as true with reasonable inferences drawn in Valencia's favor, plausibly establish that the Cannabis Law's and regulations' race- and sex-based classifications are facially discriminatory and do not satisfy strict and intermediate scrutiny, respectively. FAC ¶¶ 2–3, 11–18, 21–26, 28–35, 52–54, 56, 69–72, 74–89, 91–99.

The closest Defendants come to addressing Valencia's actual forward-looking claims is the assertion that the discriminatory language in the Cannabis Law, regulations, and guidance documents is "ambiguous," MTD at 3, 26, 31, 33, and that the terms "actively promote" and "prioritize" are not defined when they are used in categorizing applicants based on race and sex. MTD at 5, 31. But when words or terms are undefined in a statute or regulation, courts interpret them "in accord with [their] ordinary or natural meaning." *Smith v. United States*, 508 U.S. 223, 228 (1993); *Lozano v. Alvarez*, 697 F.3d 41, 56 (2d Cir. 2012). When read with this principle in mind, the facially discriminatory effect of the Cannabis Law and regulations is apparent, supporting the adequacy of Valencia's stated claims.

The Cannabis Law is facially discriminatory when it states that "minority-owned businesses" and "women-owned businesses," which qualify for SEE status, N.Y. CANBS §§ 87(2)(b)–(c), 87(5)(a)–(c), are: "eligible for priority licensing," *id.* § 3(50); must be "prioritize[d]" when the Board decides how many licenses to issue, *id.* § 10(2); must receive "prioritize[ed] consideration" "when issuing licenses" in order to "promote racial, ethnic, and gender diversity," *id.* § 87(1); have their SEE status considered when the Board determines whether they receive a license, *id.* § 64(1)(a), (f), particularly for microbusiness, delivery, and nursery licenses which must be granted in order to "promote" SEE applicants, *id.* §§ 73–75; receive the

benefit of a special Board-crafted SEE plan to "promote racial, ethnic, and gender diversity when issuing licenses," *id.* § 87(1); and must be "ensured inclusion" among licensees, *id.* § 87(2), all through perpetual demographic analysis, *id.* § 88, lessened burdens regarding possession of land for their proposed business, *id.* § 64(1)(e), lessened fees, *id.* §§ 15(3), 63(3), and special incubator programs to elevate their applications above non-SEE applicants. *Id.* §§ 10(17)(c), 87(1), 87(4).

The Board's regulations are similarly facially discriminatory. Applicants qualify for priority SEE status on the basis of race and/or sex. N.Y. Comp. Codes R. & Regs. tit. 9, § 121.1(a)(1)(ii)–(iii), (b), (f)–(g). "[S]ocial and economic equity factors" are considered when imposing "[l]imitations . . . on the acceptance of licensing applications." *Id.* § 120.1(c). "An applicant for an adult-use cannabis license shall be reviewed and evaluated in an order and manner determined by the Board, based on . . . social and economic equity status," *id.* § 120.7(b), and based on the discriminatory "selection criteria detailed in section 64 of the Cannabis Law." *Id.* § 120.7(b)(1). "The Board may prioritize application submission, review, selection and issuance by . . . social and economic equity status[.]" *Id.* § 120.7(c)(2). "Application submission, review, selection, and issuance may be prioritized by groupings consistent with section 87 of the Cannabis Law, such as: (i) A group consisting only of applications that demonstrate the applicants are eligible for extra priority as defined in section 121.1 of this Title provided the applicant is seeking to qualify as a social and economic equity applicant." *Id.* § 120.7(c)(3) (emphasis added). SEE applicants are afforded lessened burdens to reapply after an application has been denied. *Id.* § 120.13(d). And SEE applicants' fees are reduced by 50%, waived, or deferred. *Id.* § 120.4(c)(1).

It is beyond dispute that these laws categorize applicants—on the basis of race or sex alone—as being more important than others. From the opening of application windows to the

accepting of applications, the review of applications, and the granting of licenses, Defendants are always viewing and evaluating applicants on the basis of race and sex.[6]

1. **Valencia States a Claim That the Cannabis Law Unconstitutionally Discriminates on the Basis of Race**

The Cannabis Law asserts a remedial justification for its race-based classifications, stating that cannabis prohibition "disproportionately impacted African-American and Latinx communities" and that the law's intent is to end this disparate impact. N.Y. CANBS § 2. At the outset, this remedial interest is only asserted with regard to "African-American and Latinx communities," so the racial preferences given to Native Americans, Alaskan natives, and Asian and Pacific Islanders are plainly unconstitutional. *Compare* N.Y. CANBS § 87(5)(b)(iii)–(iv) (preferences given to a myriad of racial groups) *with Croson*, 488 U.S. at 505 ("the reasons for any [racial] classification [must] be clearly identified and unquestionably legitimate"); *Students for Fair Admissions*, 600 U.S. at 215–16 (racial classifications must be directed to remedy prior discriminatory harms and must not be "overbroad"); *see also* FAC ¶ 86 (detailing overbroad allegations).

Regarding the racial preferences given to African-American and Hispanic individuals, Valencia has adequately alleged that the preferences for these racial groups fail strict scrutiny in multiple ways. First, a remedial justification must be directed at "specific, identified instances" of

---

[6] At a minimum, Defendants concede that the text of the statute "make[s] it conceivable that defendants would have had statutory and regulatory authority to weigh applications differently" based on race and sex. MTD at 31. But broad discretion to consider race in applications cannot save the law; it further dooms it. It shows that the facially race- and sex-conscious classifications are poorly tailored. *See Students for Fair Admissions*, 600 U.S. at 214–17 (declining to extend deference to discretionary implementation of race-based classifications in university admissions that were not "sufficiently measurable" and did not "articulate a meaningful connection between the means they employ and the goals they pursue[d]"); *see also* David Crump, *The Narrow Tailoring Issue in the Affirmative Action Cases: Reconsidering the Supreme Court's Approval in* Gratz *and* Grutter *of Race-Based Decision-Making by Individualized Discretion*, 56 Fla. L. Rev. 483 (2004) (detailing the incompatibility between narrow tailoring and administrative discretion).

past unconstitutional or unlawful discrimination, *Students for Fair Admissions*, 600 U.S. at 207, but the Second Circuit has rejected that racially disparate impacts from drug prohibition are unconstitutional or otherwise unlawful. *See, e.g.*, *United States v. Moore*, 54 F.3d 92, 96–99 (2d Cir. 1995) (denying equal protection challenge against disparate sentences for crack vs. powder cocaine); *United States v. Teague*, 93 F.3d 81, 84–85 (2d Cir. 1996).

Second, racial preferences are extended without any requirement that individuals show they were harmed by cannabis prohibition laws or their disparate enforcement. *Students for Fair Admissions*, 600 U.S. at 215 (remedial discrimination must actually "make[] members of the discriminated class whole for the injuries they suffered"); N.Y. CANBS § 87; FAC ¶¶ 13, 23, 32, 81, 83–86.[7]

Third, for remedial discrimination in economic affairs such as business licensing, a meaningful connection between the means employed and the remedial goal pursued can only be demonstrated when there is evidence of prior unconstitutional discrimination in the specific industry to which the preferences apply. *See Croson*, 488 U.S. at 500, 505. The Cannabis Law does not even suggest that there has been prior discrimination <u>in New York's legal cannabis market</u>. Indeed, it could not, as this market is in its infancy, so there is necessarily no evidence of prior discrimination in it. FAC ¶¶ 81–84. Although the SEE Plan notes that other states "have been criticized for failing to provide adequate access to licensure and long-term support for those most adversely impacted by cannabis prohibition," FAC Ex. A at 13, the experiences of different

---

[7] Indeed, the "extra priority" given to applicants from disproportionately impacted communities who were or had a family member convicted of a marijuana-related offense, N.Y. CANBS § 87(3), shows that Defendants know how to tailor a law to those who actually suffered the harms they are attempting to remedy. The fact that most preferences in the law lack such tailoring is another reason they are unconstitutional. *Fisher*, 570 U.S. at 312; FAC ¶ 83–86.

jurisdictions cannot be invoked to support racial discrimination in New York's cannabis market. *Croson*, 488 U.S. at 505.

Fourth, the Cannabis Law's racial preferences necessarily treat non-priority applicants negatively based on race. Indeed, there can only be a finite number of cannabis licenses of all types issued, and the law's racial preferences are expressly intended to increase the number and proportion of licenses that go to minority applicants, and to set the number of available licenses in a manner that prioritizes minority applicants. N.Y. CANBS § 10(2)*; see Students for Fair Admissions*, 600 U.S. at 218–19; FAC ¶¶ 83, 85–87.

Fifth, the Cannabis Law's racial preferences operate on stereotypes. By providing preference based on race, the law assumes that applicants, because of their race and regardless of their individual life experiences such as where they are from or whether they or a family member has a prior marijuana-related conviction, are somehow comparably harmed or not harmed by prior cannabis prohibition laws. *Students for Fair Admissions*, 600 U.S. at 218, 220; FAC ¶¶ 81, 83–87.

Lastly, the law's racial classifications apply in perpetuity with no logical end point. *Grutter*, 539 U.S. at 342; *Croson*, 488 U.S. at 510 (plurality). The goal for 50% of licensees to be SEE applicants, N.Y. CANBS § 10(2), must be continually evaluated through demographic analysis of licensees. *Id.* § 88; FAC ¶¶ 11, 25, 54, 71, 88. The law does not erect, and does not mandate regulators to erect, any standard to determine when the race-based preferences have accomplished the goal of making individuals whole for prior discriminatory harms that they have demonstrably suffered. Indeed, "terminat[ion of] the[] use of race only when some rough percentage of various racial groups is [licensed] . . . 'effectively assure[s] that race will always be relevant . . . and that the ultimate goal of eliminating race as a criterion will never be achieved.'" *Students for Fair Admissions*, 600 U.S. at 223–24. A rough goal of awarding 50% of licenses to SEE applicants, a

pool of applicants the includes those favored due to their race, is not a sufficiently measurable goal to permit strict scrutiny judicial review. *Id.* at 214.

### 2. Valencia States a Claim That the Cannabis Law Unconstitutionally Discriminates on the Basis of Sex

The Cannabis Law does not assert that women have been disproportionately harmed by prior cannabis prohibition, rather asserting a generalized interest in promoting gender diversity when issuing licenses. N.Y. CANBS § 87(1). Neither does the law assert that women have been discriminated against in New York's legal cannabis industry—indeed, the law could not reasonably do so, as women have been granted priority licensing status under the very law that opened the state's legal cannabis market. Even if the law did assert such remedial interests, the burden is on Defendants to demonstrate that the law substantially furthers it. Valencia alleges that the law's facial discrimination in women applicants' favor does not further a remedial interest, FAC ¶ 95, but Defendants have made no attempt in their Motion to Dismiss to contradict this allegation. *See Hogan*, 458 U.S. at 728 (burden is on government that show that discrimination in favor of women is substantially related to actual disadvantage suffered by women).

Although fostering gender diversity here <u>might</u> be an important governmental objective, *Metro Broad., Inc. v. F.C.C.*, 497 U.S. 547, 566 (1990) (fostering racial programming diversity in mass communications); *Jones on Behalf of Michele v. Bd. of Educ. of City Sch. Dist. of City of New York*, 632 F. Supp. 1319, 1326 (E.D.N.Y. 1986) (providing educational environment that mirrors gender diversity of modern society), it is again Defendants' burden to show that the classification in furtherance of this goal does not rest on stereotypes. *Virginia*, 518 U.S. at 533. Valencia alleges such impermissible stereotyping underpins the Cannabis Law's facial favor for women, FAC ¶ 97, but Defendants again do not try to contradict this allegation.

## CONCLUSION

Defendants' Motion to Dismiss should be denied.

DATED: May 29, 2024.                    Respectfully submitted,

                                        /s/ David J. Hoffa
ROBERT E. PURCELL                       DAVID J. HOFFA*
N.Y.N.D. No. 510595                     Ariz. Bar No. 038052
The Law Office of Robert E. Purcell,    Pacific Legal Foundation
PLLC                                    3241 E. Shea Blvd., Suite 108
211 West Jefferson Street, Suite 24     Phoenix, AZ 85028
Syracuse, NY 13202                      Telephone: (916) 419-7111
Telephone: (315) 671-0710               dhoffa@pacificlegal.org
rpurcell@repurcelllaw.com
                                        JOSHUA P. THOMPSON*
                                        Cal. Bar No. 250955
                                        Pacific Legal Foundation
                                        555 Capitol Mall, Suite 1290
                                        Sacramento, CA 95814
                                        Telephone: (916) 419-7111
                                        jthompson@pacificlegal.org

                                        *Pro Hac Vice

                                    Counsel for Plaintiff

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 29, 2024, I electronically filed the foregoing Memorandum of Law in Opposition to Defendants' Motion to Dismiss (dated May 29, 2024), with the Clerk of the District Court using the CM/ECF system, which is understood to have sent notification of such filing electronically to the following:

**Aimee Cowan**
New York State Attorney General - Syracuse Regional Office
300 South State Street - Suite 300
Syracuse, NY 13202
315-448-4808
Fax: 315-448-4808
Email: aimee.cowan@ag.ny.gov
*Attorney for Defendants*

DATED: May 29, 2024.

<u>/s/ David J. Hoffa</u>
DAVID J. HOFFA*
Ariz. Bar No. 038052
Pacific Legal Foundation
3241 E. Shea Blvd., Suite 108
Phoenix, AZ 85028
Telephone: (916) 419-7111
dhoffa@pacificlegal.org
**Pro Hac Vice*

*Attorney for Plaintiff*