UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

VALENCIA AG, LLC,

          *Plaintiff*,

 -against-

                5:24-CV-116
                (GTS/TWD)

FELICIA REID, in her official capacity as Executive Director
of the New York Office of Cannabis Management;
TREMAINE WRIGHT, in her official capacity as
Chairperson of the New York Cannabis Control Board,

          *Defendants*.
_____


# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6).

              LETITIA JAMES
              Attorney General of the State of New York
              *Attorney for Defendants*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT……………………………………………………………..1

ARGUMENT…………………………………………………………………………………...2

POINT I:   PLAINTIFF LACKS STANDING……………………………………………..2

    A.   Plaintiff's Microbusiness License Will Be Reviewed in the November Queue Under a Recently Adopted Board Resolution……………………………………..3

    B.   Plaintiff Cannot Demonstrate Standing Because It Concedes That Defendants Have Implemented the Challenged Laws in a Constitutional Manner and Does Not Demonstrate that Defendants Will Abandon This Interpretation………………….4

    C.   Plaintiff Lacks Standing for Broad Declaratory and Injunctive Relief…………….8

POINT II:   PLAINTIFF HAS FAILED TO PLAUSIBLY ALLEGE A COGNIZABLE CLAIM………………………………………………………………………….9

CONCLUSION …………………………………………………………………….………13

## TABLE OF AUTHORITIES

**CASES**

Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 218 (1995)………………………………….10

Andryeyeva v. New York Health Care, Inc., 33 N.Y.3d 152 (2019)……………………………12

Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona, 915 F. Supp. 2d 574 (S.D.N.Y. 2013)……………………………………………………………………………...6

Copeland v. Vance, 893 F.3d 101 (2d Cir. 2018)…………………………………………………6

Cranley v. Nat'l Life Ins. Co. of Vt., 318 F.3d 105 (2d Cir. 2003)……………………………...11

Diaz v. Patterson, 547 F.3d 88 (2d Cir. 2008)……………………………………………………11

Doyle v. U.S. Dep't of Homeland Sec., 959 F.3d 72 (2d Cir. 2020)…………………………….13

Fisher v. Rome Ctr. LLC, No. 22-cv-0685, 2022 WL 16949603 (N.D.N.Y. Nov. 15, 2022)…...13

Global Reinsurance Corp. v. Century Indem. Co., 22 F.4th 83 (2d Cir. 2021)………………….12

Hammond v. Bank of New York Mellon Corp., 2010 WL 2643307 (S.D.N.Y. June 25, 2010)…7

Hayden v. County of Nassau, 180 F.3d 42 (2d Cir. 1999)……………………………………..10, 11

Lighthouse Pointe Property Assoc. LLC v. N.Y. State Dep't of Envt'l Conservation, 14 N.Y.3d 161 (2010)……………………………………………………………………………………..12

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992)…………………………………………….3, 7

Massachusetts v. EPA, 549 U.S. 497 (2007)……………………………………………………...7

Medina v. City of New York, No. 19-cv-9412 (AJN), 2020 WL 7028688 (S.D.N.Y. 2020)…….7

Ne. Fla. Chapter of Assoc. Gen. Contractors v. City of Jacksonville, 508 U.S. 656 (1993)……...6

Nordlinger v. Hahn, 505 U.S. 1 (1992)…………………………………………………………..10

N.Y. Immigration Coalition v. Rensselaer Cty. Bd. of Elec., No. 19-cv-920, 2019 WL 6330265 (N.D.N.Y. Nov. 25, 2019)………………………………………………………………………...7

N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo, 804 F.3d 242 (2d Cir. 2015)…………………..11

Platsky v. Nat'l Sec. Agency, 547 F. App'x 81 (2d Cir. 2013)………………………………...7

Raso v. Lago, 135 F.3d 11 (1st Cir. 1998)……………………………………………………………..10

Smith v. United States, 508 U.S. 223 (1993)…………………………………………………….12

United States v. Salerno, 481 U.S. 739 (1987)……………………………………………..6, 11


**STATUTES**

9 N.Y.C.R.R. § 120.13(d)…………………………………………………………………………8

Fed. R. Civ. P. 12(b)(1)…………………………………………………………………………1, 3

Fed. R. Civ. P. 12(b)(6)…………………………………………………………………………1, 9

Fed. R. Civ. P. 25(d)………………………………………………………………………………1

Canbs. Law § 8……………………………………………………………………………………..10

Canbs. Law § 10(2)…………………………………………………………………………………10

Canbs. Law § 10(9)…………………………………………………………………………………10

Canbs. Law §10(17)(c)…………………………………………………………………………….8

Canbs. Law § 13(2)…………………………………………………………………………………10

Canbs. Law § 64(1)(e)……………………………………………………………………………..8

Canbs. Law § 73(2)………………………………………………………………………………..4

Canbs. Law § 87(1)………………………………………………………………………………..8

Canbs. Law § 87(4)………………………………………………………………………………..8

**PRELIMINARY STATEMENT**

Defendants Felicia Reid[1] and Tremaine Wright ("Defendants") respectfully submit this reply memorandum of law in further support of their motion to dismiss plaintiff's amended complaint ("AC") pursuant to Fed. R. Civ. P. 12(b)(1) based on lack of standing and 12(b)(6) for failure to state a claim. See Motion to Dismiss ("MTD"), ECF No. 42.

There is no disagreement between the parties about how the Office of Cannabis Management ("Office") and Cannabis Control Board ("Board") are actually implementing the statutes and regulations at issue in this case. Namely, the Office and Board have interpreted undefined terms in the Cannabis Law like "prioritize" to mean ensuring that SEE applicants, including minority-owned businesses and women-owned businesses, are adequately represented in the applicant pool for cannabis licenses by eliminating obstacles to their applications. There is no dispute between the parties that front-end measures to eliminate barriers that would prevent certain groups from applying for a government benefit like a cannabis license do not violate the Fourteenth Amendment, even when those measures explicitly consider race or class, under binding Second Circuit precedent. Nor does either party dispute that the Office and Board did not give any extra weight to SEE applications in the ordering of the November Queue, which, due to a recent resolution passed by the Board, is the list on which plaintiff is now guaranteed to be considered for a microbusiness license. And there is no disagreement between the parties that the Office has publicly stated that, consistent with its interpretation of the Cannabis Law and regulations, all applications that are complete and correct will be awarded licenses.

The only dispute between the parties is whether, under the circumstances outlined above, plaintiff can nevertheless maintain a suit against defendants for alleged violation of the Equal

---

1 This Court granted Defendants' request to substitute newly appointed Office of Cannabis Management Executive Director Felicia Reid in place of Chris Alexander pursuant to Fed. R. Civ. P. 25(d). See ECF No. 49.

1

Protection Clause. The answer is no. As a matter of standing, plaintiff cannot demonstrate that it will suffer a concrete, actual injury that is imminent or even likely to occur. Because the undisputed evidence demonstrates that the Office and Board are implementing the Cannabis Law's licensing provisions in a way that treats applicants identically regardless of race or gender, plaintiff's alleged injury of being deprived equal consideration for a license is at best purely conjectural and, in reality, demonstrably false. And with respect to the merits of plaintiff's claim, plaintiff has failed to plausibly allege that the Office or Board will <u>actually</u> violate the Fourteenth Amendment in their review and approval of cannabis licenses. To the contrary, defendants have interpreted (and will continue to interpret) the Cannabis Law in a manner consistent with equal protection by treating all applications the same regardless of applicants' race or gender. Plaintiff's characterization of its claim as a purely facial challenge does not alter the outcome: to maintain any facial challenge, a plaintiff must demonstrate that there is <u>no</u> possible interpretation of a challenged law that is constitutional. In the present case, the Cannabis Law can be—and indeed, has been—interpreted to comport with the Constitution. And that interpretation is legitimate, particularly in light of the substantial deference given to a state agency's interpretation of its own authorizing statutes under state law and the canon of constitutional avoidance.

Accordingly, the Court should dismiss plaintiff's amended complaint in its entirety.

## ARGUMENT

**POINT I:     PLAINTIFF LACKS STANDING**

Plaintiff does not satisfy the "irreducible constitutional minimum of standing," which requires a) an injury that is "concrete and particularized" and "actual or imminent" rather than conjectural, b) a causal connection between the injury and defendants' alleged conduct, and c) likelihood that the injury will be redressed by a ruling in plaintiff's favor. <u>Lujan v. Defenders of</u>

2

Wildlife, 504 U.S. 555, 560 (1992) (citation omitted). Accordingly, the AC should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). Plaintiff lacks standing because it cannot demonstrate, and has not even alleged, that the Cannabis Law and regulations will actually be applied to it in a way that treats it less favorably than minority-owned and women-owned businesses. And because plaintiff's application is now guaranteed to be considered in the November Queue, plaintiff no longer has standing to challenge how the Cannabis Law might be applied in future application windows.

**A.   Plaintiff's Microbusiness License Will Be Reviewed in the November Queue Under a Recently Adopted Board Resolution**

As an initial matter, following an amendment to the Office's procedure for reviewing and approving applications in the November Queue, defendants concede that plaintiff's application will be reviewed in the November Queue for a microbusiness license and plaintiff will not need to reapply in future licensing windows so long as it meets the requirements for a license, which plaintiff alleges in its amended complaint that it does (see AC ¶ 3, ECF No. 33).

At its public meeting on May 10, 2024, the Board adopted a resolution instructing the Office to review all applicants for adult-use dispensary licenses and microbusiness licenses who applied in 2023 and whose applications are on the November Queue. See Cannabis Control Bd., No. 2024-75, Resolution to Adopt and Approve the Supplemental Policy Guidance for the Review of the Adult-Use Applications from the October 2023 Application Window (May 10, 2024)[2]. The Office will issue a license to all qualified applicants, updating the previously announced numbers of available licenses which were anticipated initially to be limited. See Office of Cannabis Management, Supplemental Policy Guidance: Application Review for the Adult-Use Cannabis

---

[2] https://cannabis.ny.gov/system/files/documents/2024/05/ccb-resolution-2024-75.pdf. A copy of this document is also attached as Exhibit "A" to Attorney Aimee Cowan's Reply Declaration.

October 2023 Application Window (May 10, 2024)[3]. The Office must review and process the November Queue applications before reviewing and processing applications on the December Queue or opening additional application windows for these license types. Id. Due to this update in procedure, plaintiff's currently pending microbusiness license application will be considered by the Office in due course.

Accordingly, defendants' prior argument (see MTD at 15-19) that plaintiff lacks standing because its application is too low in the November Queue to be considered for the licenses available is no longer true and is not a basis for dismissal. As a result of this change in procedure, it is also the case that plaintiff will not be required to reapply for a cannabis license in any other licensing window. Rather, plaintiff's application for a microbusiness license will be considered in its current position in the November Queue, and if plaintiff is otherwise qualified for a license as it alleges in its amended complaint (see AC ¶ 3, ECF No. 33), plaintiff will be granted a microbusiness license. The relevant question for standing is thus limited to whether plaintiff demonstrates it will suffer an actual, imminent injury as a result of how the November Queue was ordered and how the Office will review its currently pending application.[4]

**B.   Plaintiff Cannot Demonstrate Standing Because It Concedes That Defendants Have Implemented the Challenged Laws in a Constitutional Manner and Does Not Demonstrate that Defendants Will Abandon This Interpretation**

In their motion to dismiss, defendants marshal substantial evidence that the Office did not give greater weight to SEE applications (including minority-owned businesses and women-owned businesses) than non-SEE applications when the November Queue was randomly ordered. MTD

---

3 https://cannabis.ny.gov/system/files/documents/2024/05/ocm-supplemental-policy-guidance.pdf. A copy of this document is also attached as Exhibit "B" to Attorney Aimee Cowan's Reply Declaration.

4 Plaintiff suggests that it could apply for a processor license in the future. Opp. at 12. To be sure, if plaintiff intends to apply for such a license, it could file an amended complaint plausibly alleging such an intention and may then have standing to challenge how the Cannabis Law will be applied to applicants for processor licenses. However, because a microbusiness licensee may not own a direct or indirect interest in any other license, including a processor license, Canbs. Law § 73(2), plaintiff would be required to withdraw from the November Queue to maintain such a claim.

at 9-11, 22-30. Instead, the Board and Office have interpreted the Cannabis Law and implementing regulations to be satisfied by front-end measures to aid SEE applicants such as community outreach, low-burden applications, and assistance if an application is found to be defective. See MTD at 9-11. Defendants also cite to sworn affidavits and judicially noticeable documents stating that applications in the November Queue will be reviewed and approved in the randomized order, that all applications are being reviewed solely for completeness and correctness, and thus that the race and gender of an applicant will play no role in whether an application is approved. See MTD at 28.[5] Plaintiff offers no evidence to the contrary. Accordingly, plaintiff effectively concedes that its application has been treated identically to the application of a minority-owned business or a women-owned business in how it was weighted in the randomized queue and how it will be reviewed for receiving a license. In short, defendants have established that plaintiff will suffer no injury, given that its application <u>will</u> be reviewed in the November Queue without it having to reapply. This assertion is supported not only by specific evidence about how that Queue was ordered, but also by agency officers' statements about how applications in the November Queue will be reviewed and approved. Plaintiff's repeated and unsupported speculation that the Office *might* act differently in the future (see, e.g., Opp. at 9 n.2, 10) is insufficient to confer standing.

The uncontroverted evidence that plaintiff's application had identical chances of receiving a favorable position in the November Queue as a minority-owned business or women-owned business, as well as the uncontroverted evidence that the Office will review and approve all applications based on completeness and correctness of the application without consideration of race or gender, together deprive plaintiff of standing to bring this suit. Even accepting that plaintiff's alleged injury is "unequal treatment, not the ultimate inability to receive a license" (Opp.

---

5 These affidavits and judicially noticeable documents may be considered on a motion to dismiss for lack of subject matter jurisdiction. MTD at 12 (collecting cases); see also Opp. to MTD ("Opp.") at 2-3, ECF No. 45.

at 11), plaintiff has conceded that it has not been treated unequally and thus has not suffered a concrete injury and will not suffer one imminently. Rather, plaintiff had the same chances of being ranked early in the November Queue as a minority-owned business or women-owned business, and its application will be reviewed and processed using the same criteria—completeness and correctness—as a SEE application. But to establish standing for an equal protection claim alleging that the government has made it "more difficult for members of one group to obtain a benefit than it is for members of another group," the plaintiff must "demonstrate . . . that a discriminatory policy prevents it from [obtaining the benefit] on an equal basis." Ne. Fla. Chapter of Assoc. Gen. Contractors v. City of Jacksonville, 508 U.S. 656, 666 (1993) (collecting cases). Plaintiff fails to do so.

Plaintiff attempts to sidestep this jurisdictional deficiency by arguing that it is bringing a facial challenge, and thus this Court cannot consider how the law is being applied in practice. Opp. at 9-10. That is incorrect. A facial challenge concerns whether a law is allegedly unconstitutional in all applications and thus its unconstitutionality is plain on the face of the statute challenged. See e.g., Copeland v. Vance, 893 F.3d 101, 111 (2d Cir. 2018); United States v. Salerno, 481 U.S. 739, 745 (1987). But a plaintiff still must demonstrate that the plaintiff has an individualized stake sufficient to challenge the law because the statute will cause actual, concrete harm to plaintiff that is not merely speculative. See e.g., Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona, 915 F. Supp. 2d 574, 591-92 (S.D.N.Y. 2013). In other words, plaintiff must still demonstrate that it will actually be harmed by the allegedly unconstitutional law. And where, as here, undisputed evidence demonstrates that the agencies with sole authority to interpret and implement the Cannabis Law's licensing provisions have interpreted the laws and are implementing them in a way that treats plaintiff identically to businesses that are minority-owned

and women-owned, plaintiff cannot meet its burden to show standing.

Indeed, plaintiff's argument—that even if the Office and Board are implementing the Cannabis Law in a way that treats SEE applicants and non-SEE applicants alike, this Court should still strike down the statutes based on how the laws' text *might* violate the Constitution in theory (see Opp. at 8-10)—is exactly the type of purely theoretical dispute that this Court lacks jurisdiction to rule on because it does not present an actual case or controversy. See Massachusetts v. EPA, 549 U.S. 497, 517 (2007) (requirement of standing ensures that "the parties before the court have an actual, as opposed to professed, stake in the outcome, and that the legal questions presented . . . will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action") (alteration in original) (quoting Lujan, 504 U.S. at 581 (Kennedy, J., concurring))). In short, even if the statutes were susceptible to an interpretation that would raise constitutional issues, defendants have not adopted that interpretation.

And to the extent that plaintiff asserts without explanation that defendants will interpret and implement the Cannabis Law differently in the future in a way that puts a thumb on the scale in favor of applicants on the basis of race and gender (see Opp. at 9-10), this is the type of purely conjectural injury insufficient to confer standing. See e.g., Platsky v. Nat'l Sec. Agency, 547 F. App'x 81, 82 (2d Cir. 2013); N.Y. Immigration Coalition v. Rensselaer Cty. Bd. of Elec., No. 19-cv-920, 2019 WL 6330265, at *5 (N.D.N.Y. Nov. 25, 2019); Hammond v. Bank of New York Mellon Corp., 2010 WL 2643307, at *8 (S.D.N.Y. June 25, 2010). Indeed, even where a government agent has previously acted in an unconstitutional manner, a plaintiff is required to offer an objective basis to believe it is likely to recur in order to confer standing. See e.g., Medina v. City of New York, No. 19-cv-9412 (AJN), 2020 WL 7028688, at *6 (S.D.N.Y. 2020). Here,

where plaintiff concedes that government defendants have <u>not</u> acted unconstitutionally in their current interpretation and implementation of the Cannabis Law, and indeed where defendants have provided evidence about how officers intend to apply the law moving forward, plaintiff's failure to allege facts or offer an objective basis to believe defendants will radically shift course and act unconstitutionally in the future renders its injuries entirely speculative.

### C.     Plaintiff Lacks Standing for Broad Declaratory and Injunctive Relief

The amended complaint requests broad declaratory and injunctive relief invalidating the use of race or gender in all provisions of the Cannabis Law, as well as the Board and Office regulations, policies, and procedures. AC at 15. Plaintiff lacks standing for such relief. Plaintiff does not dispute that it can only demonstrate standing related to provisions of law that plaintiff "will be subjected to." Opp. at 14. Nor does plaintiff dispute that numerous provisions of the Cannabis Law that mention race or gender do not inflict injury on plaintiff. <u>See</u> MTD at 23-24 & n.36 (no cognizable constitutional injury from pre-application programs to eliminate barriers faced by SEE applicants); <u>id.</u> at 24-25 (discussing 9 N.Y.C.R.R. § 120.13(d), which relates to applicants whose applications are initially denied as incomplete); Opp. at 16 (citing Canbs. Law §§ 10(17)(c), 64(1)(e), 87(1), and 87(4)). Certainly, the amended complaint does not plausibly allege that any of these provisions resulted in similarly situated minority-owned businesses or women-owned businesses having an advantage in receiving a cannabis license over plaintiff. Plaintiff has thus failed to meet its burden of demonstrating standing to challenge those provisions.

Likewise, to the extent that plaintiff's application will now be considered and presumably approved as part of the November Queue (<u>see supra</u> pp. 3-4), plaintiff lacks standing to seek prospective relief related to statutory and regulatory provisions that it will not be subject to again and which plaintiff cannot allege will subject it to unequal treatment. This includes any provisions

related to pre-application programs or the application process. See AC ¶¶ 26, 34-35, 39, 43-44, 54, (challenging such provisions as unconstitutional).

**POINT II:   PLAINTIFF HAS FAILED TO PLAUSIBLY ALLEGE A COGNIZABLE CLAIM**

Dismissal pursuant to Rule 12(b)(6) is also warranted because plaintiff has not plausibly alleged that the Office or Board will interpret and implement the Cannabis Law or related regulations in a manner that violates the Equal Protection Clause. To the contrary, documents attached and incorporated by reference into the amended complaint and documents subject to judicial notice demonstrate that the Office and Board have interpreted the Cannabis Law in a manner that treats SEE applicants and non-SEE applicants the same with respect to the randomized ordering of queues in which applications are considered and with respect to the criteria used to review those applications and grant licenses. See MTD at 27-34.

In particular, defendants have interpreted the Cannabis Law's requirements that the Office "prioritize" and "promote" SEE applicants, see MTD at 31-32 (citing statutory provisions), to be satisfied by the Office devoting substantial time and resources to eliminating barriers that would prevent SEE applicants from completing cannabis license applications, thereby ensuring that SEE applicants are adequately represented in the applicant pool. MTD at 27-30; see also Decl. of Damian Fagon ("Fagon Decl.") ¶¶ 41-48, 67, ECF No. 30-10; Off. of Cannabis Mgmt., Post-Application Process & See Applicant Prioritization at 17:32-20:04 (Jan. 16, 2024)[6] (defining SEE applicant "prioritization" as front-end application support and wraparound services); Governor Hochul Announces Cannabis Control Board Approves More Than 100 Licenses and First Nonconditional Licensing Window (Feb. 16, 2024)[7] (outlining how SEE applicants were

---

6 https://www.youtube.com/watch?v=otbO2ktJvHY
7 https://www.governor.ny.gov/news/governor-hochul-announces-cannabis-control-board-approves-more-100-licenses-and-first

9

prioritized and indicating that similar procedures would be used in the future). The Office and its officers have explicitly disavowed an interpretation of the Cannabis Law or Board regulations that requires that SEE applicants be given a greater chance of obtaining a license than non-SEE applicants. Fagon Decl. ¶¶ 47-48. These statements represent an official interpretation of the Cannabis Law and Board regulations by the Board and Office, which are the agencies granted exclusive authority under state law to interpret and enforce the Cannabis Law's licensing provisions. See e.g., Canbs. Law §§ 8, 10(2), 10(9), 13(2). And the uncontroverted evidence demonstrates that the Office has enacted procedures to order and review license applications consistent with this interpretation. MTD at 8-11, 27-34.

In light of the uncontroverted evidence that the Office and Board have adopted an interpretation of the Cannabis Law that does not treat the applications of women-owned and minority-owned businesses different from other applications on the basis of race or gender, plaintiff fails to plausibly allege that the laws violate the Equal Protection Clause. As the Second Circuit has recognized, a racial classification that implicates the Equal Protection Clause requires a government standard "preferentially favorable to one race or another[] for the distribution of benefits." Hayden v. County of Nassau, 180 F.3d 42, 49 (2d Cir. 1999) (quoting Raso v. Lago, 135 F.3d 11, 16 (1st Cir. 1998)); Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 218, 223 (1995) (classifications that preference or burden members of a group subject to heightened scrutiny); see also Nordlinger v. Hahn, 505 U.S. 1, 10 (1992) ("The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike.") (emphasis added)). And to the extent that the Office gave "priority" to SEE applicants through front-end measures, plaintiff does not dispute that such measures do not implicate the Equal Protection Clause under binding Second Circuit precedent.

10

See Hayden, 180 F.3d at 49.

Plaintiff attempts to salvage its claim by framing it as a purely facial challenge based on the text of the Cannabis Law and its implementing regulations. Opp. at 14-15. But to sustain a facial challenge to a law, a plaintiff must demonstrate that "no set of circumstances exist under which the Act would be valid." N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo, 804 F.3d 242, 265 (2d Cir. 2015) (quoting Salerno, 481 U.S. at 745). "A plaintiff making a facial claim faces an 'uphill battle' because 'it is difficult to demonstrate that the mere enactment of a piece of legislation' violates the plaintiff's constitutional rights." Cranley v. Nat'l Life Ins. Co. of Vt., 318 F.3d 105, 110 (2d Cir. 2003); see also Salerno, 481 U.S. at 745 (describing facial challenge as "the most difficult challenge to mount successfully"). Accordingly, if a statute could be applied to plaintiff in a constitutional manner, plaintiff "necessarily fail[s] to state a facial challenge." Diaz v. Patterson, 547 F.3d 88, 101 (2d Cir. 2008).

In the present case, plaintiff cannot demonstrate that the Cannabis Law and related regulations would be unconstitutional in all possible applications. Namely, plaintiff fails to plausibly allege that the Office and Board cannot reasonably interpret the ambiguous language in the laws—especially undefined terms like "prioritize" and "preference"—to require only that the Office devote resources to ensuring that minority-owned and women-owned businesses are represented in the pool of cannabis license applicants by removing barriers that would impede such candidates from applying. MTD at 31-34. That is exactly how the Office and Board have interpreted the Cannabis Law and its regulations, and the evidence submitted with the amended complaint and judicially noticeable evidence cited by defendants demonstrate that the Office and Board have implemented the law consistent with this interpretation. MTD at 27-34. In other words, the Office and Board have legitimately interpreted the Cannabis Law and its implementing

11

regulations to not require SEE applications to be given advantage in the ordering and assessing of applications. And because the laws can be legitimately interpreted in this constitutionally compliant way, they are not facially invalid.

Plaintiff invites this Court to interpret the Cannabis Law and regulations in the first instance by giving words their "ordinary or natural meaning." Opp. at 15 (quoting Smith v. United States, 508 U.S. 223, 228 (1993)). Plaintiff does not identify what words the Court should interpret or what the ordinary meaning of those words would be. In any event, plaintiff is wrong that this Court is tasked with ruling on the proper meaning of the Cannabis Law and regulations. Rather, on a facial challenge, this Court is only tasked with deciding whether there is no conceivable interpretation of the challenged laws that satisfy Equal Protection. Here, the Cannabis Law can (and has been) interpreted to "prioritize" SEE applicants in a way that does not run afoul of the Fourteenth Amendment.

The Office and Board's interpretation of the Cannabis Law is particularly valid because New York's courts, which are the ultimate arbiters of the meaning of New York law, Global Reinsurance Corp. v. Century Indem. Co., 22 F.4th 83, 101 (2d Cir. 2021), grant substantial deference to state agencies' interpretations of their own regulations and authorizing statutes. Under New York law, the Office and Board's interpretation of the Cannabis Law and their own subsequent regulations will be upheld so long as their interpretation is not irrational or unreasonable. Andryeyeva v. New York Health Care, Inc., 33 N.Y.3d 152, 174 (2019); Lighthouse Pointe Property Assoc. LLC v. N.Y. State Dep't of Envt'l Conservation, 14 N.Y.3d 161, 176 (2010). Here, the agencies' decision to interpret provisions requiring that they "prioritize" SEE applicants by focusing on reducing barriers that might prevent those candidates from applying is, at a minimum, a reasonable and thus valid interpretation of the law. This Court should decline to

invalidate a swath of duly enacted laws as unconstitutional where such an interpretation is available. See Doyle v. U.S. Dep't of Homeland Sec., 959 F.3d 72, 77 (2d Cir. 2020) (cautioning that courts should decline to decide "difficult but avoidable constitutional question[s]"); Fisher v. Rome Ctr. LLC, No. 22-cv-0685, 2022 WL 16949603, at *8 (N.D.N.Y. Nov. 15, 2022); MTD at 23 n.34 (citing same).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss plaintiff's amended complaint in its entirety, with prejudice.

Dated: Syracuse, New York
June 20, 2024

        LETITIA JAMES
        Attorney General of the State of New York
        Attorney for Defendants
        300 S. State Street, Suite 300
        Syracuse, New York 13202
        By: ___/s_____
        Aimee Cowan, Esq.
        Assistant Attorney General
        Bar Roll No. 516178
        Telephone:    (315) 448-4800
        Fax: (315) 448-4853
        Email: aimee.cowan@ag.ny.gov

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 20, 2024, she filed Defendants' reply memorandum of law by electronically filing with the Clerk of the Court herein, using the CM/ECF system, which is understood to have sent notification of such filing electronically to the following:

David J. Hoffa, Esq.
Pacific Legal Foundation
3241 E. Shea Blvd. - Suite 108
Phoenix, AZ 85028

Joshua P. Thompson, Esq.
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, CA 95814

Robert E. Purcell, Esq.
The Law Office of Robert E. Purcell, PLLC
211 West Jefferson Street, Suite 24
Syracuse, New York 13202

Dated:      Syracuse, New York
            June 20, 2024

                                        LETITIA JAMES
                                        Attorney General of the State of New York
                                        Attorney for Defendants
                                        300 S. State Street, Suite 300
                                        Syracuse, New York 13202
                                        By:    /s
                                        Aimee Cowan, Esq.
                                        Assistant Attorney General
                                        Bar Roll No. 516178
                                        Telephone:    (315) 448-4800
                                        Fax: (315) 448-4853
                                        Email: aimee.cowan@ag.ny.gov