UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

VALENCIA AG, LLC,

                        Plaintiff,

v.                                                      5:24-CV-0116
                                                        (GTS/TWD)
FELICIA REID,[1] in her official capacity as
Executive Director of the New York Office of
Cannabis Management; and TREMAINE WRIGHT,
in her official capacity as Chairperson of the New
York Cannabis Control Board,

                        Defendants.
_____

APPEARANCES:                              OF COUNSEL:

PACIFIC LEGAL FOUNDATION                   DAVID J. HOFFA, ESQ.
   Counsel for Plaintiff                   JOSHUA P. THOMPSON, ESQ
3241 E. Shea Blvd., Suite 108
Phoenix, AZ 85028

OFFICE OF ROBERT E. PURCELL                ROBERT E. PURCELL, ESQ.
   Co-counsel for Plaintiff
211 West Jefferson Street, Suite 24
Syracuse, NY 13202

HON. LETITIA A. JAMES                      AIMEE COWAN, ESQ.
Attorney General for the State of New York Assistant Attorney General
   Counsel for Defendants
300 South State Street, Suite 300
Syracuse, NY 13202

GLENN T. SUDDABY, United States District Judge

## **DECISION and ORDER**

---

[1]      Because Defendant Reid succeeded Christopher Alexander as Executive Director of the
Office of Cannabis Management,  the Court granted Defendants' motion to substitute her as a
party in this matter pursuant to Fed. R. Civ. P 25(d) on June 18, 2024.  (Dkt. Nos. 48, 49.)

Currently before the Court, in this civil rights action filed by Valencia Ag, LLC ("Plaintiff") against Felicia Reid in her official capacity as Executive Director of the New York State Office of Cannabis Management, and Tremaine Wright in her official capacity as Chairperson of the New York State Cannabis Control Board ("Defendants"), is Defendants' motion to dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). (Dkt. Nos. 42, 51.) For the reasons set forth below, Defendants' motion is granted and Plaintiff's Amended Complaint is dismissed without prejudice.[2]

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Amended Complaint

Plaintiff filed its original Complaint on January 24, 2024. (Dkt. No. 1.) Plaintiff thereafter filed a motion for preliminary injunction, but subsequently requested to withdraw that motion; and that request was granted by the Court on March 8, 2024. (Dkt. Nos. 9, 31, 32.)

Plaintiff then filed an Amended Complaint on March 13, 2024. (Dkt. No. 33.) As a result of that filing, Plaintiff submitted a notice voluntarily dismissing all but two of the originally named Defendants, who remain in their official capacities only. (Dkt. No. 35.)

In the Amended Complaint, Plaintiff claims that New York's Cannabis Law and the regulations of the Cannabis Control Board with regard to the licensing process for cannabis-related businesses violate its rights under the Equal Protection Clause of the Fourteenth

---

[2]    On March 14, 2025, the Court held oral argument on this motion, at which counsel for both sides presented arguments to supplement their memoranda, including new factual information regarding the progress of Plaintiff's application. Those arguments have been considered and will be discussed in this Decision and Order if appropriate.

Amendment because they discriminate and grant preferential treatment to applicants for such licenses based on their race and/or sex.  (Dkt. No. 33.)

### B.    Parties' Briefing on Defendants' Motion to Dismiss

#### 1.    Defendants' Memorandum of Law

Generally, in their motion, Defendants make three arguments.  (Dkt. No. 42, Attach. 2.) First, Defendants argue that Plaintiff lacks standing to challenge New York's cannabis licensing requirements.  (*Id.* at 20-29.)  More specifically, Defendants argue that Plaintiff cannot show a connection between its alleged injury and the allegedly unconstitutional action because, based on its low position in the randomly generated queue of applicants, it is not likely Plaintiff's application would be considered for one of the 110 available licenses even if all of the minority- and woman-owned businesses in a higher position were to be removed from consideration.  (*Id.* at 20-25.)  Additionally, Defendants argue that Plaintiff lacks standing regarding future applications and future licensing windows because any injury therefrom is not actual or imminent at this time given that there is no reason to believe (a) that New York intends to open a new licensing window at any certain, near time, or (b) that the same rules would apply at such time.  (*Id.* at 25-29.)  In any event, Defendants argue, such claims are not ripe for consideration by this Court, because (a) New York's Cannabis Law itself has been subject to repeated amendments since it was first enacted, and (b) numerous other amendments to the Cannabis Law have been previously proposed by the Legislature or are currently being considered.  (*Id.*.)

Second, Defendants argue that Plaintiff also lacks standing to seek the broad declaratory and injunctive relief sought because it has not alleged that all consideration of race or gender in the statute in any form is unconstitutional or would cause it injury.  (*Id.* at 29-31.)

3

Third, Defendants argue that, should the Court find standing exists, Plaintiff's Amended Complaint must nonetheless be dismissed because it has failed to state a claim under the Equal Protection Clause as to either race or sex. (*Id.* at 32-40.) More specifically, Defendants argue that Plaintiff's allegations regarding favorable treatment for minority- or woman-owned businesses are inconsistent with documents attached to and incorporated by reference into the Amended Complaint, as well as documents of which the Court may take judicial notice, and all of this inconsistent information was known to Plaintiff at the time it filed the Amended Complaint. (*Id.*)

## 2.    Plaintiff's Opposition Memorandum of Law

Generally, in its response in opposition to Defendants' motion, Plaintiff makes two arguments. (Dkt. No. 45.) First, Plaintiff argues that it has standing to pursue its claims. (*Id.* at 9-16.) More specifically, Plaintiff argues that it is alleging injury based not on failure to receive a license, but rather on the fact of being placed at a competitive disadvantage both in the November round and in the future because of the law's differential treatment of applicants because of their race and sex (through New York's classification of applicants as "priority" or "non-priority"). (*Id.* at 9-12.) Plaintiff argues that any consideration about how Defendants have applied the law in the past is irrelevant because Plaintiff has mounted a facial challenge to the relevant laws, and that the fact that the statutes mandate discrimination on any current or future applications represents a concrete and particularized injury. (*Id.*) In response to Defendants' specific arguments, Plaintiff argues that (a) its position in the November queue has no bearing on its claims because it is asserting a future injury based on its status as a non-priority applicant under the challenged law, (b) the alleged future injury is sufficiently imminent because

4

Defendants have stated there will be further application periods, and (c) it has requested proper declaratory and injunctive relief. (*Id.* at 12-16.)

Second, Plaintiff argues that it has alleged facts to state a plausible claim that the New York Cannabis Law violates the Equal Protection Clause of the United States Constitution. (*Id.* at 16-22.) More specifically, Plaintiff argues that, because terms such as "actively promote" and "prioritize" as used in the statute must be afforded their ordinary meaning, statements in the statute to the effect that minority- and woman-owned businesses are given, for example, "priority consideration," are facially unconstitutional, and there is no sufficient government interest to justify such differences in treatment. (*Id.*)

### 3.     Defendants' Reply Memorandum of Law

Generally, in their reply memorandum, Defendants make three arguments. (Dkt. No. 50.) First, Defendants again argue that Plaintiff lacks standing. (*Id.* at 6-12.) More specifically, Defendants argue that Plaintiff cannot show a present or future injury because a subsequent change in the Office of Cannabis Management's procedures for reviewing and approving applications in the November queue guarantees that Plaintiff's application for a microbusiness license will be reviewed, and therefore Plaintiff will not be required to reapply in future licensing windows so long as its current application meets the requirements for a license. (*Id.* at 7-8.) Defendants argue that this change in policy requires not only the review of, but also the issuance of a license for, all qualified applications in the November queue, regardless of the previously announced limitations on the number of available licenses. (*Id.*) Further, Defendants argue that Plaintiff cannot demonstrate standing because the manner in which New York has interpreted and implemented the Cannabis Law and its regulations has not been unequal, and there is no

evidence to believe that will change in the future, and there is also no evidence to suggest that Plaintiff has been or will be treated unequally related to the consideration of its application. (*Id.* at 8-10.) Defendants also argue that Plaintiff's framing of its claim as a facial challenge does not suggest standing because it has not plausibly alleged that there could be no constitutional interpretation of the statute, and, regardless of whether it has, it is nevertheless still required to demonstrate that a concrete, non-speculative harm has been, or will be, caused by the statute, which it has not done here. (*Id.* at 10-11.)

Second, Defendants argue that Plaintiff lacks standing also for the broad scope of relief requested because Plaintiff can only challenge portions of the statute invoking race or gender that would inflict injury upon it, not all provisions that invoke race or gender, and can no longer challenge pre-application procedures to which it will not be subjected again in the future in light of the fact that its November queue application will be considered. (*Id.* at 12-13.)

Third, Defendants argue that Plaintiff has also failed to plausibly allege a claim for a violation of its equal protection rights because all of the evidence that the Court may consider on this motion shows that Defendants have in fact not treated, and will not treat, Plaintiff differently from any other applicant. (*Id.* at 13-17.) Defendants further argue that, again, on a facial challenge, Plaintiff must allege that there is no set of circumstances under which the statute could be constitutional, but has failed because the way in which New York has interpreted and implemented the statute and its regulations is constitutional. (*Id.* at 15-17.)

## II.    GOVERNING LEGAL STANDARD

Because the Court finds that the pending motion can be decided on the legal standard governing motions to dismiss under Fed. R. Civ. P. 12(b)(1), without consideration of the legal

standard governing motions to dismiss under Fed. R. Civ. P. 12(b)(6), the Court will recite only the former legal standard in this Decision and Order.

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Generally, a claim may be properly dismissed for lack of subject-matter jurisdiction where a district court lacks constitutional or statutory power to adjudicate it. *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). A district court may look to evidence outside of the pleadings when resolving a motion to dismiss for lack of subject-matter jurisdiction. *Makarova*, 201 F.3d at 113. The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]). When a court evaluates a motion to dismiss for lack of subject-matter jurisdiction, all ambiguities must be resolved and inferences drawn in favor of the plaintiff. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Makarova*, 201 F.3d at 113).

## III. ANALYSIS

After careful consideration, the Court finds that it lacks subject-matter jurisdiction over Plaintiff's claims for the reasons stated in Defendants' memoranda of law. *See, supra,* Parts I.B.1. and 3 of this Decision and Order. To those reasons, the Court adds the following analysis.[3]

---

[3] The Court has considered the supplemental authority submitted by Plaintiff and finds that it is not applicable to the current matter. (Dkt. No. 53.) Although the submitted case is related to the licensing application program and discusses the Cannabis Law's indication of "priority" as to SEE applicants, that case relates to the fact that CUARD applicants were permitted to apply one year earlier than other adult-use retail dispensary applicants despite the fact that the statute states that the initial period for licenses should be opened for all applicants at the same time. (Dkt. No. 53, Attach. 1.) However, Plaintiff does not allege here that SEE applicants were permitted to

A.    **Standing**

To establish Article III standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An injury in fact "must be concrete and particularized, as well as actual or imminent," rather than "conjectural or hypothetical." *Carney v. Adams*, 592 U.S. 53, 58 (2020). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo*, 578 U.S. at 338.

When challenging the existence of subject-matter jurisdiction, "a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the Pleading." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016). Where the evidence presented contradicts the plausible allegations in the pleading and raises a factual dispute, the plaintiff is required to "come forward with evidence of their own to controvert that presented by the defendant." *Carter*, 822 F.3d at 57.

Plaintiff has alleged that (a) the Cannabis Law and its associated regulations facially discriminate based on race and sex in the granting of cannabis licenses by creating "priority" in a number of ways in the application and licensing process for, among other groups, minority- and woman-owned businesses, (b) Plaintiff has applied for such a license, (c) Plaintiff is not a member of one of the "priority" groups, and (d) based on this fact, Plaintiff is being treated unequally compared to members of the "priority" group and thus has suffered a constitutional

---

apply before other non-SEE applicants. The fact that this case states in passing that the statute provides for "priority" for SEE applicants does not at all assist the Court in assessing what the term "priority" means under the circumstances here.

injury.  (*See generally* Dkt. No. 33, at ¶¶ 9-99.)  Plaintiff notably argues that, contrary to Defendants' characterization in their motion papers of Plaintiff's alleged injury, the injury alleged in the Amended Complaint for the purposes of standing is not the fact that it was ranked so low in the November application queue that it is unlikely to receive a license, but rather that it has been treated unequally in the application and licensing process.  (Dkt. No. 45, at 9-10 [attaching pages "7" and "8" of Plf.'s Opp'n Memo. of Law].)  Although Plaintiff's Amended Complaint does include many allegations related to its November application, the Amended Complaint also alleges facts related to unequal treatment based on race and gender.  (*Id.* [citing paragraphs of Amended Complaint].)  The question is therefore whether Plaintiff has alleged facts to plausibly suggest that any such unequal treatment rises to the level of a constitutional injury.

However, Plaintiff's allegations are not the only matter that must be assessed when deciding this issue.  Defendants have in this instance raised a factual challenge to Plaintiff's standing rather than a facial challenge that "accepts the jurisdictional facts pleaded and challenges only their sufficiency."  *Alliance for Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.7 (2d Cir. 2006).  Thus, the Court is not limited to merely accepting Plaintiff's pleaded jurisdictional facts as true, but rather must make factual findings based upon the evidence presented by both parties related to whether Plaintiff has suffered an injury sufficient to confer standing.

Moreover, at this threshold stage of assessing whether standing exists, the Court does not assess the merits of Plaintiff's claims regarding whether the statute facially discriminates against different groups as a general matter, but rather determines whether Plaintiff has specifically

suffered an injury as a result of the statute.  *See Soule v. Connecticut Ass'n of Schs., Inc.*, 90 F.4th 34, 45 (2d Cir. 2023) ("But courts must equally refrain from narrowing constitutional standing requirements beyond what Article III dictates, lest we needlessly bar plaintiffs with justiciable claims from having their day in court.  This is because standing is about who may access the courthouse, not about the merits of the claims to be heard once inside.  'The fundamental aspect of standing is its focus on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated,' and 'the standing issue must therefore be resolved irrespective of the merits of the substantive claims.'") (quoting *United States v. Vazquez*, 145 F.3d 74, 80-81 [2d Cir. 1998]).  Mere speculation that an injury has occurred or will occur is insufficient to establish standing.

The Second Circuit has recognized that "'unequal treatment on the basis of a protected characteristic' can be an injury in fact for standing purposes."  *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022) (quoting *MGM Resorts Int'l Glob. Gaming Dev., LLC v. Malloy*, 861 F.3d 40, 45 [2d Cir. 2017]).  In *MGM Resorts*, the Second Circuit found that the plaintiff had sufficiently alleged that it suffered a concrete harm in the state affording a "competitive advantage" to Native tribes in the casino bidding process because that alleged advantage represented a denial of equal protection and a denial of "the ability 'to compete on an equal footing in the bidding process'" for a state contract.  861 F.3d at 46-47 (quoting *Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. V. City of Jacksonville, Fla.*, 508 U.S. 656, 666 [1993]).

Here, Plaintiff alleges (1) that it has been placed at a competitive disadvantage by the New York Cannabis law and regulations because its owners are two white males who do not qualify for the "priority" afforded to applicants who are minorities or women, (2) that its

November application has been ranked so low in the review queue because the promises of favor and priority induced more minority- and woman-owned businesses to apply and therefore made it unlikely that Plaintiff will be granted a license on this round, and (3) that it intends to apply again in future application periods if it does not receive a license from the November period, but its future applications will be subjected to the same unequal treatment. (Dkt. No. 33, at ¶¶ 57, 63-70.) Of note, Plaintiff includes factual allegations related to the relevant law and regulations regarding both the "priority" afforded to applications during the application process and the possibility of reduced application and renewal fees for Social and Economic Equity ("SEE") applicants. (*Id.* at ¶¶ 9-35.)

These factual allegations, if accepted at face value, would appear to meet the requirements of the injury-in-fact analysis as demonstrated in *MGM Realty*. *See* 861 F.3d at 46-47 (noting that injury-in-fact would be met by the plaintiff alleging that it both was denied the ability to compete on an equal footing in the bidding process, and that it actually made a bid or very likely would have made a bid but for the alleged discrimination). However, as was discussed above, Defendants have made a *factual* challenge to Plaintiff's standing in this case, and thus the Court must also look to the evidence presented by Defendants in support of their argument that standing is lacking.

That evidence presented by Defendants indeed contradicts Plaintiff's factual allegations that the process of ranking and reviewing applications involves unequal treatment based on race or gender. The declaration of Jodi Bryon, Director of Data and Systems for the Office of Cannabis Management, describes the manner and method by which applications from the November application period (which was the first open application period offered) were sorted

11

and ranked into a queue, highlighting that the processing of sorting those applications was random and did not consider whether the applicant was or was not a SEE applicant.[4] (Dkt. No. 42, Attach. 3.)

Plaintiff argues that how the applications in the November queue were handled is of no relevance because it is not alleging injury based upon being denied an application in that application period, and because Defendants can change the way they consider these applications to a discriminatory method in any future rounds under the statute. However, the fact that Plaintiff has brought a facial challenge to the relevant statutes does not mean that the Court must ignore how Defendants have implemented that statute in practice in the past when determining whether standing exists.[5] Plaintiff has offered nothing other than speculation to support its argument that, even if Defendants' ranking of applications in the November queue was done in a neutral manner, they could change that process in any future rounds, and speculation is an

---

[4]    The Court need not address Plaintiff's contention that the filing of the Amended Complaint essentially reset the litigation (such that the Court should not consider anything presented related to the prior motion for preliminary injunction and should indeed proceed as if no such motion had ever been filed) because the relevant evidence on which the Court relies in this Decision and Order (such as the declaration of Ms. Bryon) was either attached to the Amended Complaint or submitted as an attachment to Defendants' papers on the motion to dismiss, and thus the Court may consider that evidence related to the issue of jurisdiction.

[5]    Notably, the case which Plaintiff cites for this point of law does not address facial challenges in the context of assessing the existence of standing, but rather the merits of the claim itself. (Dkt. No. 45, at 11 [citing *Congregation Rabbinical Coll. of Tartikov v. Village of Pomona*, 915 F. Supp. 2d 574, 611-12 (S.D.N.Y. 2013)]). Indeed, declining to engage in any assessment of what actions Defendants allegedly took against Plaintiff and focusing solely on the text of the statute itself in the assessment of standing would run counter to the requirement that the injury suffered by Plaintiff was particularized and personal. Plaintiff must show that the statute caused it a concrete and particularized injury, whether it brings a facial or as-applied challenge to that statute, and that assessment requires consideration of what consequences Plaintiff actually experienced or will experience. The standing inquiry cannot be conflated with the standards applicable when assessing Plaintiff's facial challenge on the merits of its claims.

insufficient basis on which to find standing.  Plaintiff therefore has not sufficiently countered

Defendants' evidence of equal treatment in the process of ranking applications.  Nor does

Plaintiff include any allegations to the effect that the actual consideration of whether to grant an

application under review is in anyway based on protected characteristics.

Plaintiff also alleges in the Amended Complaint that

> Even if the queue released on January 12, 2024, was randomized,
> Valencia's relatively low ranking in the queue, making access to
> one of the first 110 microbusiness licenses a virtual impossibility,
> is in part attributable to the high number of race- and gender-based
> SEE applicants who filed applications after receiving preferential
> treatment in the application process because of their race and sex.
> The presence of this high number of SEE applicants that received
> preferential treatment made it more likely that Valencia would
> receive a relatively low ranking in the unlawfully randomized
> queue, and thus this discrimination will cause Valencia to almost
> certainly not be reviewed in this application round and will thus be
> granted a license much later, if ever.

(Dkt. No. 33, at ¶ 65.)  Plaintiff similarly alleges that Defendants made "repeated announcements

promising favor, preference, and priority to SEE applicants," and that such promises induced and

incentivized more minority- and woman-owned businesses to apply, resulting in more applicants

and a higher chance that Plaintiff's application would be ranked lower in the queue (thus

"making access to one of the first 110 microbusiness licenses a virtual impossibility").  (*Id.* at ¶¶

65, 66.)  However, the Court has trouble seeing how the fact that Defendants might have

incentivized, or reduced barriers for, more individuals or businesses (specifically, those that meet

the criteria for a SEE group) to apply amounts to a constitutional injury under the circumstances.

*Cf. Hayden v. Cnty. of Nassau*, 180 F.3d 42, 48-49 (2d Cir. 1999) (finding that designing an

exam in a manner intended to diminish adverse impact on Black applicants where the exam was

administered and scored in a race-neutral fashion did not amount to an unconstitutional "racial

classification"); *Ricci v. DeStefano*, 530 F.3d 88, 120 (2d Cir. 2008) (finding that failing to certify the results of promotional tests that were deemed to have a statistically adverse impact on Black and Hispanic examinees was not indicative of discriminatory purpose because such action did not suggest that the defendants acted "because of" animus towards the plaintiffs or other non-minority applicants, but rather to remedy the disparate impact of the test). As Defendants argue, Plaintiff does not allege that various pre-application statements or programs to incentivize participation by SEE groups were, themselves, unconstitutional, or that those statements or programs themselves caused Plaintiff a constitutional harm. Moreover, the mere fact that Defendants' actions might have increased the number of persons meeting a SEE group classification who applied for the relevant application period and therefore increased the number of applications in the queue simply does not plausibly suggest any constitutional harm: "[e]ven if all . . . 127 [SEE] applications were removed [from the November Queue], Plaintiff would advance [from position 373] to position 246 only [still far short of the likely number of applications that will be reviewed before the anticipated 110 applications will be granted]." (Dkt. No. 42, Attach. 3, at ¶ 17 [Byron Decl.].)[6] Simply stated, in the context of a randomized queue, Plaintiff was injured by the fact that there is a large demand for the relevant cannabis industry licenses, not by any improper actions of Defendants.

Other allegations include that Defendants have expressed social equity goals, including a goal that fifty-percent of licenses be given to SEE applicants; but such generic allegations do not plausibly suggest a concrete and particularized harm to Plaintiff. Without any indication as to

---

[6]    In any event, even if the above-stated finding is in error, the Court finds that the increased number of applicants (caused by the incentivization of SEE applications) is immaterial for the reasons stated below in Part III.B. of this Decision and Order.

how Plaintiff was actually harmed by such policy, a mere aspirational goal to have a certain

percentage of licenses given to SEE applicants (a group that is not definitionally limited to only

minority- and woman-based businesses) does not plausibly suggest an injury-in-fact.  Plaintiff

does not allege, nor could it do so with any credibility, that this goal *requires* fifty-percent of

licenses to be granted to SEE applicants; there is no certain number of licenses reserved or set

aside for minority- or- women-owned businesses.  Indeed, Plaintiff has offered nothing but

conclusory allegations that Defendants consider race and sex at all as a criteria when reviewing

applications and granting licenses.  The evidence presented shows that the queue for the

November group was randomly generated and that the method of attempting to meet that goal

was not the direct consideration of race or sex when reviewing applications, but rather

encouraging more individuals from SEE groups to apply in the first place, an action which, as

already discussed, is not unconstitutional.

  Although there therefore does not appear to be a basis to find standing on the application

and review process, there is also the matter of application, licensing, and renewal fees.[7]  As

Plaintiff alleges, and as Defendants acknowledge, the Cannabis Law and its associated

regulations afford a 50-percent reduced application or license fee to SEE applicants, and also

leaves open the possibility of waived or deferred fees.  9 N.Y. ADC § 120.4(c)(1).  The only

other ways to qualify for a reduced, waived, or deferred fee are (a) if the applicant is determined

---

[7]  The Court notes that Plaintiff does not appear to specifically allege that the fact that SEE applicants are afforded a fee reduction itself constituted a concrete and particularized injury. (*See generally* Dkt. No. 33; Dkt. No. 45.)  However, because it does make reference to such fee reductions as an example of unequal treatment within the Cannabis Law (and because Plaintiff has at least summarily argued that point), the Court has construed such an argument to arguably be found within the Amended Complaint.

to demonstrate sufficient need for financial assistance, or (b) if the applicant contracts with a

qualified delivery licensee (in which case it can receive a 40-percent reduction in its license

renewal fees).[8]  9 N.Y. ADC § 120.4(c)(2), (3).  Thus, SEE applicants (which includes minority-

and women-owned businesses) are afforded a reduction in the application and license fees that

other applicants who do not qualify for that status are not permitted.[9]

       However, the fact that SEE applicants qualify to pay reduced fees does not constitute a

concrete and particularized injury to Plaintiff.  Plaintiff notably does not allege any facts

plausibly suggesting the amount of fee it paid related to its application, only that it filed an

application and does not qualify for SEE applicant status under any of the permitted categories.

(Dkt. No. 33, at ¶¶ 58-59.)  The Court therefore assumes that Plaintiff paid the standard

application fee of $1,000 outlined in 9 N.Y. ADC § 120.4.  It is not clear how Plaintiff being

required to pay the normal fee that all applicants who are not subject to one of the bases for

reduction must pay represents a monetary injury, much less one that rises to the level of

constitutional significance; Plaintiff would have been required to pay the same amount to apply

for a license whether Defendants offered fee reductions for SEE applicants or not.[10]  Because

Plaintiff would incur the same monetary expenditure in terms of the application, licensing, and

---

[8]     Defendants expressly acknowledge all of these facts regarding reduced fees in their initial
memorandum of law.  (Dkt. No. 42, Attach. 2, at 11, 14.)

[9]     Although the definition of SEE applicants includes more than just categories related to
race and gender, Plaintiff's Complaint and the documents attached to it suggest that
approximately 80% of applications received from SEE applicants during the November period
were from minority- and women-owned businesses.  (Dkt. No. 33, at ¶ 50; Dkt. No. 33, Attach.
4, at 4.)

[10]     Although it is conceivable that the subsidized applications raised the price of the
unsubsidized applications (e.g., to cover the cost of processing all such applications), this
argument does not appear to have been made; nor does the record evidence support it.

renewal fees regardless of Defendants' allegedly unconstitutional conduct, the Court finds that it has failed to allege facts to sufficiently suggest an injury-in-fact related to the payment of such fees. *See Food and Drug Admin. V. Alliance for Hippocratic Medicine*, 602 U.S. 367, 381 (2024) (noting that an injury must be particularized in the sense that it "affect[s] plaintiff in a personal and individual way and not be a generalized grievance") (internal quotation marks omitted). Moreover, having paid the enumerated fee, Plaintiff would not clearly obtain a favorable outcome that would redress any injury related to the application or other fees, because the result would merely be that SEE applicants would be required to pay the enumerated fee without a reduction – Plaintiff would not obtain any monetary redress in this respect.

Similarly, to the extent that Plaintiff argues that the fact of unequal treatment – i.e., that it is required to pay a higher fee than SEE applicants and licensees – represents a constitutional injury, that argument fails because Plaintiff has not alleged facts plausibly suggesting that being required to pay the enumerated application fee (or to pay enumerated license and renewal fees in the future) constitutes an unequal barrier to its being able to seek and/or obtain a microbusiness license. *See Ne. Fla. Chapter of Assoc. Gen. Contractors of Am.*, 508 U.S. at 666 (noting that "[w]hen the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group," the injury-in-fact "is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit"). Indeed, Plaintiff did pay the fee, and does not include any allegations even suggesting that not being afforded a fee reduction imposed any type of hardship that made it more difficult for it to apply; having to pay the default statutory fee does not constitute a hardship or a barrier of constitutional significance. Simply stated, the fact that SEE applicants and other groups not

17

involving suspect classifications could qualify for reductions in the statutorily set fees does not render those fees a barrier that makes it more difficult for those other than SEE applicants to apply for or receive a cannabis license.

For all of the above reasons, the Court finds that Plaintiff has not sufficiently alleged an injury-in-fact, and therefore has not shown that it has standing to bring the relevant claims.

### B.    Mootness

Although the Court has already found that Plaintiff has not sufficiently alleged the existence of standing, it finds in the alternative that it lacks subject-matter jurisdiction to consider the merits of Plaintiff's claims because, even if standing were found to exist related to Plaintiff's claims that Defendants improperly prioritize the consideration of applications based on race and gender, they have been rendered moot by intervening circumstances.  Although standing is determined "based on the facts that exist when a complaint is filed," a court cannot ignore subsequent developments that bear upon its jurisdiction to hear a plaintiff's claims. *Gallagher v. New York State Bd. of Elections*, 496 F. Supp. 3d 842, 849 (S.D.N.Y. 2020) (citing *Lower E. Side People's Fed. Credit Union v. Trump*, 289 F. Supp. 568, 579-80 [S.D.N.Y. 2018]; *Carter*, 822 F.3d at 56).  Indeed, it is a fundamental precept that "at all times, the dispute before the court must be real and live, not feigned, academic, or conjectural." *Russman v. Bd. of Educ.*, 260 F.3d 114, 118 (2d Cir. 2001).  Where "standing doctrine evaluates a litigant's personal stake as of the outset of litigation," the doctrine of mootness "determines what to do '[i]f an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation.'" *Klein o/b/o Qlik Techs., Inc. v. Qlik Techs., Inc.*, 906 F.3d 215, 221 (2d Cir. 2018) (*quoting Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 70 [2d Cir. 2001];

*Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 [2013]).  The Supreme Court has suggested that courts are not entitled to retain jurisdiction over cases "in which one or both of the parties plainly lack a continuing interest."  *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 191-92 (2000).

During the pendency of the briefing on Defendants' motion, the Cannabis Control Board adopted a resolution that revised the previously stated limitations on the number of relevant licenses that were to be issued from the November queue, stating that the Office of Cannabis Management instead "will review all retail dispensary and microbusiness applications in the November queue in the order of the queue," and that "[a]pplications that meet all necessary requirements for full operational licensure will be recommended to the Cannabis Control Board [] to be approved for a license at Board meetings."  (Dkt. No. 50, Attach. 2; Dkt. No. 50, Attach. 3.)  This change in policy therefore assures that Plaintiff's application (which was for a microbusiness license) will be reviewed, and that it will be granted a license if it meets the stated requirements for full operational licensure, none of which have anything to do with race or sex.  As a result, Plaintiff's current application will be considered to the same extent and on the same criteria as those applicants to whom it alleges Defendants afforded "priority."  Indeed, at the oral argument, Plaintiff's counsel stated that it has now been granted a provisional license on its application, which it represented can be converted to a final license after the procurement of suitable premises.[11]  Indeed, the Board's relevant Supplemental Policy Guidance from May 10,

_____

[11]     The cannabis regulations indicate that the Board may grant a provisional license "if the applicant submits all the same materials required to be submitted for a final operational license for the same adult-use license type," but does not follow at the time of application "(1) requirements for information regarding a premises . . .; and (2) information relating to evaluation of applicants based on premises information, if applicable."  9 N.Y. ADC § 120.2(b).  "A

2024, indicates the situations in which a provisional license will be granted, all of which are related to the location of an applicant's premises.  (Dkt. No. 50, Attach. 3.)  The Supplementary Policy Guidance also indicates that "[n]o provisional license will be issued unless an applicant has met all other application and licensing requirements," and therefore the fact that Plaintiff was granted a provisional license suggests that the only requirement it has not met is sufficient information about suitable premises  (*Id.*)  Defendant's counsel also acknowledged that Plaintiff's application had been considered, and that a letter had been sent to it the day before oral argument to notify Plaintiff of a deficiency in its application and provide instructions for remedying that deficiency.

Because in this case it is Defendants' own conduct (through the Cannabis Control Board and Office of Cannabis Management) that has brought about this change in circumstances, the Court must consider whether the circumstances fall under one of the exceptions to the ordinary mootness doctrine.  "An alleged wrongdoer's voluntary cessation of a disputed action will still render a case moot if the wrongdoer can show that (1) there is no 'reasonable expectation' the action will recur, and (2) 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'"  *Srour v. New York City, New York*, 117 F.4th 72, 82 (2d Cir. 2024) (quoting *Granite State Outdoor Advert., Inc. v. Town of Orange*, 303 F.3d 450, 451 [2d Cir. 2002]).  The Supreme Court has described this as a "formidable burden" on the party asserting mootness to show "that it is absolutely clear the allegedly wrongful behavior could not

---

provisional license shall convert into a final operational license upon the Board's receipt, to its satisfaction, of all outstanding information required for final approval prior to the deadline for submission of such outstanding information," which deadline is within twelve months of receiving a provisional license.  9 N.Y. ADC § 120.9(c).

reasonably be expected to recur." *Friends of the Earth, Inc.*, 528 U.S. at 190 (citing *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 [1968]).  As the Second Circuit highlighted recently, this analysis is as to the plaintiff's particular legal rights (i.e., whether there is no reasonable expectation that the action will recur *as to him or her*, and whether the change in circumstances has completely and irrevocably eradicated the effects of the alleged violation as to *him or her*).  *Srour*, 117 F.4th at 81-82 (finding voluntary cessation exception to mootness did not apply where the plaintiff was granted the firearms license he had previously been denied and there was no reasonable likelihood that he would again be subjected to the allegedly unconstitutional character requirement related to keeping that license).

Here, because Plaintiff's counsel represented at oral argument that its application was considered and it has now been granted a provisional license, Plaintiff's claims are moot to the extent they are based on the assertion that it would suffer an injury either by not having its current application considered, or by needing to file a new application subject to discriminatory rules (as an alternative to the Court's finding that it lacks standing as to these aspects of its claims).  In particular, to the extent that the intervening circumstances mean that Plaintiff's application has been considered and it now holds a provisional license with the potential for that to turn into a final license when it meets the relevant criteria of obtaining compliant premises, Plaintiff would not need to file any application in future rounds: as Defendants highlight, while Plaintiff holds the microbusiness license for which it has applied, Plaintiff will be legally unable to hold interest in any other type of adult-use cannabis license, and thus there would be no reason for Plaintiff to be applying.  *See* N.Y. Canbs. § 73(2) (stating that "[a] microbusiness licensee may not hold any direct or indirect interest in any other license in this chapter and may only

21

distribute its own cannabis and cannabis products to dispensaries"). There is also no evidence to suggest that, once Plaintiff is granted a final microbusiness license (which, based on the current record, it will be, as long as it meets the requirements to turn the provisional license to a final license, none of which have been alleged or shown to involve the consideration of inappropriate factors or unequal treatment), there is any requirement for it to go through the same or similar review process that it alleges is unconstitutional here (*i.e.*, where certain applicants are given "priority" based on race or sex) in order to renew that license. N.Y. Canbs. L. § 66; 9 N.Y. Adc. § 120.11.

Based on the above reasons, the Court finds that Plaintiff lacks standing to assert its claims. *See Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 304 (2d Cir. 2024) (acknowledging that "'a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought'") (quoting *Town of Chester v. Laroe Ests. Inc.*, 581 U.S. 433, 439 [2017]). Moreover, in the alternative, the Court finds that the change in policy regarding application in the November queue has rendered Plaintiff's claims regarding the application process moot. As a result, Plaintiff's Amended Complaint is dismissed without prejudice for lack of subject-matter jurisdiction. *See Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017) ("One other wrinkle: when a case is dismissed for lack of federal subject matter jurisdiction, Article III deprives federal courts of the power to dismiss the case with prejudice. . . . As a result, where a case is dismissed for lack of Article III standing, as here, that disposition cannot be entered with prejudice, and instead must be dismissed *without prejudice*.") (internal quotation marks and citation omitted).

Lastly, although the Court has found that Plaintiff does not have standing in this case, and passes no judgment on the merits of Plaintiff's claims of unequal treatment beyond what was required to make an assessment of standing, it notes that the language used in the Cannabis Law and its regulations is less than conducive to clear understanding. Indeed, if words such as "priority" were intended by the State to mean what Defendants assert here, or if the application and review process is being implemented in a specific way, the State could avoid litigation like this by using better language and clearer explanations that more accurately express what it intends so that applicants can better understand the nature of the State's framework for receiving, assessing, and granting cannabis business license applications.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) (Dkt. No. 42) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 33) is **DISMISSED without prejudice** for a lack of subject-matter jurisdiction.

Dated: March 25, 2025
       Syracuse, New York

Glenn T. Suddaby
U.S. District Judge